IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

RoadSync, Inc.,

          Plaintiff,

                                    Case No. 1:21-cv-3420-MLB

v.

Relay Payments, Inc., Spencer
Barkoff, and James Ryan Droege,

          Defendants.

_____/

# ORDER

This is a trade secret case. Plaintiff claims Defendants misappropriated the source code for one of its software products—a logistics payment platform called "Checkout"—in violation of the Federal Defend Trade Secrets Act ("DTSA") and the Georgia Trade Secrets Act ("GTSA"). Defendants now move for an order "(1) requiring Plaintiff . . . to identify its alleged source code trade secret(s) with reasonable particularity within fourteen days; and (2) confirming that, after that identification, [Plaintiff] may not further amend its identification absent a showing of good cause." (Dkt. 90-1 at 1.) Plaintiff also asks the Court

to seal information the parties filed in connection with Defendants' motion. (Dkts. 92; 95; 102.) The Court grants Defendants' motion in part and denies Plaintiff's sealing requests without prejudice.

## I. Defendants' Motion

### A. Particularized Identification

Defendants first move to compel Plaintiff to "provide a particularized identification of its alleged source code trade secrets." (Dkt. 90-1 at 1.) A DTSA plaintiff must "identify with 'reasonable particularity' those trade secrets it believes to be at issue. . . . so that: (1) [defendants] are put on notice of the nature of [plaintiff's] claims; and (2) [defendants] can discern the relevancy of any requested discovery." *DeRubeis v. Witten Techs., Inc.*, 244 F.R.D. 676, 681 (N.D. Ga. 2007). Defendants say Plaintiff has not done this here. The Court agrees.[1]

When discovery kicked off in this case, Defendants asked Plaintiff in an interrogatory to "[i]dentify . . . the precise portions of RoadSync's source code that [Plaintiff] contend[s] is a trade secret." (Dkt. 89-2 at 7; *see also* Dkt. 89-2 at 3 (asking Plaintiff in another interrogatory to

---

[1] Although *DeRubeis* may not apply in every DTSA case, the Court concludes it sets the appropriate standard here. The parties proceed on the same assumption. (*See* Dkts. 90-1 at 8; 94-1 at 9–10, 16–17)

2

"[d]escribe with particularity and individually [its] alleged trade secret[s]").) In response, Plaintiff (1) sent Defendants a list of 1,630 source code files; (2) made those files available for Defendants' inspection; (3) explained that Plaintiff's trade secrets are the "source code in the files . . . (*i.e.*, the lines of code in each file), and the methods and algorithms reflected in such code"; and (4) further explained that the protected elements of the source code include (a) "RoadSync's Check Authorizer API automating the process of authorizing a fleet check via an interactive voice response (IVR) system and allowing a support person to take over the process and navigate the IVR system"; (b) "RoadSync's Checkout™ API implementing the business logic of the RoadSync software"; (c) "[a]ll front-end code for RoadSync's Checkout™ to allow users to access the functionalities of the software as implemented in the APIs in a way that is user-friendly and industry appropriate"; and (d) "[c]ode for Check Printer Desktop Application used to print information onto logistic industry standard checks based on data in RoadSync's Checkout™ system." (*See* Dkts. 70-2 at 781–821; 83-1 at 7–8; 89-2 at 6–8.)

This identification—essentially a source code dump and a few generalized one-sentence descriptions—does not meet the "reasonable particularity" standard set forth in *DeRubeis*. Within the 1,630 source code files at issue, the Court has no idea where Plaintiff's trade secrets are supposed to be or what they are supposed to look like. Defendants' computer expert (Michael Fenn) has also submitted two declarations explaining he spent a week reviewing Plaintiff's source code and related submissions, he "still do[es] not know what [Plaintiff] is actually alleging to be trade secret," and "it is not possible" for *anyone* to know given Plaintiff's "volume of code" and "lack of description." (Dkts. 90-5 at 2, 5, 9; 99-1 at 2.)

To be sure, Plaintiff's expert (Geoff Mottram) has submitted an opposing declaration claiming "a full understanding of [Plaintiff's] alleged trade secrets is clear to a skilled programmer based on a review of [Plaintiff's] source code." (Dkt. 94-3 at 8.) But, tellingly, Mr. Mottram never even tries to identify what Plaintiff's trade secrets actually are. Nor does he explain how "a skilled programmer" could do so. Instead, he simply muses that "[a] review of [Plaintiff's] source code reveals programming and design choices at each and every level of features,

4

functionalities, and structure." (Dkt. 94-3 at 8.) This vague assertion adds nothing to the analysis because what matters is not *whether* Plaintiff's source code includes "programming and design choices," but rather *which* of those choices constitute the alleged trade secrets at issue in this case. Indeed, if Plaintiff's programming and design choices really do "permeate the source code . . . . at each and every level" (as Mr. Mottram claims), that only underscores the need for Plaintiff to come forward and identify which specific choices matter here. (Dkt. 94-3 at 8.)

Given the totality of the circumstances, the Court agrees with Defendants that Plaintiff has not identified its alleged source code trade secrets with reasonable particularity. The Court orders the parties to meet and confer in a serious, good faith effort to determine what additional identification is necessary to meet the *DeRubeis* standard on the facts here. At least some of these discussions must be in person and must include lead counsel. If the parties cannot reach an agreement, each party must file, within the next fourteen days, (1) a statement "describ[ing] its position on what [additional] information would constitute a reasonably particular disclosure" and (2) a proposed order requiring such disclosure. *DeRubeis*, 244 F.R.D. at 681 n.4. "The Court

will adopt without modification the position of the party it considers more reasonable." *Id.*

## B. Amendment

Defendants next ask the Court to bar Plaintiff from amending its trade secret identification absent a showing of good cause. (Dkt. 90-1 at 28–29.) The Court denies this request. Plaintiff's trade secret identification appears in an interrogatory response. And, under Rule 26(e), a party "*must* supplement or correct its [interrogatory] response . . . in a timely manner if the party learns that in some material respect the . . . response is incomplete or incorrect." Fed. R. Civ. P. 26(e)(1)(A) (emphasis added). By its plain language, this rule does not require—or even contemplate—a showing of good cause before a party can amend. All it requires is an "incomplete or incorrect" response. If that exists, amendment is not only permitted but required. That being so, the Court denies Defendants' request to inject a good cause requirement into the analysis.

## II. Plaintiff's Sealing Requests

Finally, Plaintiff seeks permission to seal (in whole or in part) several documents filed in connection with Defendants' motion, including

the parties' briefs, the parties' declarations, and a list of the folder paths and file names of Plaintiff's source code. (Dkts. 92; 95; 102.) The Court has reviewed Plaintiff's sealing requests. They are overbroad, generalized, superficial, and insufficiently justified by reference to authority. So the Court denies them without prejudice.[2]

If Plaintiff wants to renew its sealing requests, it may do so by motion no later than fourteen days after the entry date of this Order. Any such motion must "(i) identify, with specificity, the document(s) or portion(s) thereof for which sealing is requested; (ii) explain (for each document or group of documents) the reasons sealing is necessary; (iii) explain (for each document or group of documents) why less drastic alternatives than sealing will not provide adequate protection; and

---

[2] To take just one example, Plaintiff wants to seal any reference to "the number of . . . files of source code that contain [Plaintiff's] trade secret source code." (Dkt. 92 at 4.) But this information is already public. (*See* Dkt. 89-10 at 10 (referring to "the 1,630 source code files" containing Plaintiff's alleged trade secrets).) So there is no basis for sealing it. Plaintiff's motion also seeks to seal more information than Plaintiff's briefing actually addresses. Plaintiff's briefing generally argues the Court should seal references to "the number of lines and files," the "file names and folder paths," and the "architecture" of Plaintiff's source code. (Dkt. 92 at 3.) But, as Defendants point out, "[l]arge portions of the Provisionally Sealed Documents . . . do not fit any of those descriptions." (Dkt. 96 at 8.)

(iv) address the factors governing sealing of documents reflected in controlling case law." Local Rules, NDGA, App. H, Pt. II(J)(2)(d)–(e). Plaintiff must do all of this with specificity, include a robust discussion of relevant authority, and meaningfully address the constitutional right of access to judicial proceedings, the common law right of access, Rule 26(c) of the Federal Rules of Civil Procedure, Appendix H to the Local Rules of this Court, and any other rule or standard governing public access to judicial proceedings. Plaintiff must also attach a proposed order containing everything necessary to effectuate the sealing Plaintiff seeks (and everything necessary to ensure the docket otherwise remains accessible to the public).

## III. Conclusion

Defendants' Motion to Compel (Dkt. 89) is **GRANTED IN PART** and **DENIED IN PART**. The parties' Motions for Leave to File Under Seal (Dkts. 91; 95; 100) are **DENIED WITHOUT PREJUDICE**. Documents 90, 94, and 99 (and all attachments thereto) shall remain provisionally sealed until further order of the Court.

**SO ORDERED** this 19th day of May, 2023.

_____
MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE