# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

ROADSYNC, INC.,

       Plaintiff,

RELAY PAYMENTS, INC.,
SPENCER BARKOFF,
JAMES RYAN DROEGE,
and DOES 1-10,

       Defendants.

Case No.: 1:21-CV-03420-MLB

# DEFENDANTS' MEMORANDUM OF LAW
## IN SUPPORT OF MOTION TO STRIKE PORTIONS
## OF ROADSYNC'S TRADE SECRET IDENTIFICATION

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT .................................................................1

BACKGROUND ...................................................................................2

    A.    RoadSync's Allegations Of Trade Secret Misappropriation...............2

    B.    The Narrowing Of RoadSync's Trade Secret Claim ...........................4

    C.    RoadSync's Refusal To Identify With Specificity Its Alleged Source Code Trade Secrets ........................................................5

    D.    RoadSync's Amended Trade Secret Identification..............................7

    E.    The Instant Motion ..........................................................................8

LEGAL STANDARD ..........................................................................10

ARGUMENT ......................................................................................11

I.    ANY REFERENCE TO "FEATURES AND FUNCTIONS" SHOULD BE STRICKEN FROM ROADSYNC'S TRADE SECRET ID.................11

    A.    RoadSync Is Judicially Estopped From Asserting "Features and Functions" Trade Secrets ...................................................11

    B.    RoadSync's Identification of Features and Functions Exceeds the Scope of the Court's Orders ................................................14

    C.    RoadSync's Features And Functions Identification Fails To Satisfy This Court's Orders ..................................................16

    D.    RoadSync's Last-Minute Switch Prejudices Defendants...................17

II.    REFERENCES TO "COMPILATION" TRADE SECRETS SHOULD BE STRICKEN FROM ROADSYNC'S TRADE SECRET ID..................21

III.    ROADSYNC'S CATCH-ALL "███████" CATEGORY SHOULD BE STRICKEN FROM ROADSYNC'S TRADE SECRET ID .........................23

CONCLUSION ...................................................................................25

# <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

## <u>Cases</u>

*AirWatch LLC v. Mobile Iron, Inc.*,
   2013 WL 4757491 (N.D. Ga. Sept. 4, 2013) (Carnes, J.) ...................................14

*Alta Devices, Inc. v. LG Elecs., Inc.*,
   2019 WL 176261 (N.D. Cal. Jan. 10, 2019)........................................................24

*Arconic Inc. v. Novelis Inc.*,
   2018 WL 5660173 (W.D. Pa. Aug. 3, 2018)........................................................10

*Bongino v. The Daily Beast Co.*,
   2021 WL 4316099 (S.D. Fla. Sept. 23, 2021) ....................................................14

*Charter House Ins. Brokers, Ltd. v. New Hampshire Ins. Co.*,
   667 F.2d 600 (7th Cir. 1981) ..............................................................................13

*Cisco Sys., Inc. v. Chung*,
   2020 WL 7495085 (N.D. Cal. Dec. 21, 2020)..............................10, 11, 15, 16

*DeRubeis v. Witten Techs., Inc.*,
   244 F.R.D. 676 (N.D. Ga. 2007) ...........................................................................6

*Fin. Info. Techs., LLC v. iControl Sys., USA, LLC*,
   21 F.4th 1267 (11th Cir. 2021) ............................................................................14

*IDX Sys. Corp. v. Epic Sys. Corp.*,
   285 F.3d 581 (7th Cir. 2002) ...............................................................................19

*Imax Corp. v. Cinema Techs., Inc.*,
   152 F.3d 1161 (9th Cir. 1998) .......................................................................23, 24

*JDS Ther., LLC v. Pfizer Inc.*,
   2013 WL 5548932 (S.D.N.Y. Sept. 30, 2013) ....................................................10

*Leslie v. BBVA USA (Inc.)*,
   2021 WL 8268218 (N.D. Ga. Dec. 21, 2021) ................................................11, 12

*Morley v. Square, Inc.*,
  2016 WL 374186 (E.D. Mo. Feb. 1, 2016) ........................................................10

*New Hampshire v. Maine*,
  532 U.S. 742 (2001) ..........................................................................................12

*NuVasive, Inc. v. Miles*,
  2020 WL 5106554 (Del. Ch. Aug. 31, 2020) ....................................................21

*One on One Basketball, Inc. v. Glob. Payments Direct, Inc.*,
  2015 WL 11257486 (N.D. Ga. Mar. 19, 2015) ..................................................14

*Smith v. Haynes & Haynes P.C.*,
  940 F.3d 635 (11th Cir. 2019) ..........................................................................11

*TK Elevator Corp. v. Abels*,
  2022 WL 17551765 (D. Neb. Dec. 9, 2022) ......................................................19

*Univ. of Tenn. Rsch. Found. v. Caelum Biosciences, Inc.*,
  2022 WL 19403695 (E.D. Tenn. July 13, 2022) ................................................23

*Vesta Corp. v. Amdocs Mgmt. Ltd.*,
  2018 WL 830141 (D. Or. Feb. 12, 2018) ..........................................................10

*VIG, Inc. v. Alvarez*,
  2019 WL 5063441 (S.D. Fla. Oct. 9, 2019) ......................................................24

*Warehouse Sols., Inc. v. Integrated Logistics, LLC*,
  2014 WL 12647878 (N.D. Ga. July 7, 2014) ....................................................14

*Warehouse Sols., Inc. v. Integrated Logistics, LLC*,
  610 F. App'x 881 (11th Cir. 2015) ....................................................................19

## **Statutes**

Georgia Computer Systems Protection Act ....................................................................4

Georgia Trade Secrets Act ..............................................................................................4

244 F.R.D at 681 ........................................................................................................6, 16

Fed. R. Civ. P. 37(b) ....................................................................................................10

iii

**<u>Rules</u>**

Rule 30(b)(6)..................................................................................8, 18, 24

## PRELIMINARY STATEMENT

At the last minute, Plaintiff RoadSync has attempted to change and expand the trade secrets it contends are at issue in this litigation, in violation of the Court's orders and much to Defendants' prejudice. Defendants raised this ***exact*** concern back in January when RoadSync refused to identify its alleged trade secrets with particularity. The Court agreed, expressing a concern that RoadSync would "pivot" to different trade secrets after it was too late for Defendants to take discovery and prepare their defense on the "actual" trade secrets.

This is exactly what has come to pass. When RoadSync filed its complaint, it alleged that Defendants took RoadSync's Checkout source code and alleged several other broad and sweeping claims. In the face of Defendants' motion to dismiss these nebulous and tenuous claims, RoadSync made numerous representations about what its claims actually entailed—which the Court accepted in denying some parts of Defendants' motion to dismiss and granting others. The Court's motion to dismiss order in September 2022 made clear the contours of RoadSync's surviving trade secret misappropriation claim—what was in and what was out. If there was any doubt, RoadSync's interrogatory responses and the parties' months-long discovery negotiations made clear that this case was about source code, customer lists, and a supposedly stolen laptop—*not* "features and functions" of software.

Defendants moved to compel RoadSync in January 2023 to define ***specifically***

1

its alleged trade secrets, because RoadSync's identification to date was hopelessly vague. The Court ordered RoadSync to be more specific, but RoadSync responded by asserting both even more vague "compilations" and a catch-all "█████" category, along with the "features and functions" that the Court already had ruled out of the case (a ruling RoadSync never challenged)—all in violation of the Court's orders.

Discovery dispelled RoadSync's claims that the parties actually litigated. So RoadSync has done exactly what Defendants and the Court feared: it purported to make a last-minute switch by rewriting its alleged trade secrets—indeed, its entire "trade secret misappropriation" cause of action. Unfortunately for RoadSync, the Court's prior orders compelling discovery prohibit this gambit. Defendants now move for relief.

## BACKGROUND

### A.    RoadSync's Allegations Of Trade Secret Misappropriation

In August 2018, Defendant Ryan Droege—future co-founder of Defendant Relay Payments Inc.—learned he was going to be fired from his job at RoadSync. *See* Ex. A (2021.11.15 Droege Dep. Tr.) at 79:7-17. At the time, Droege considered going to RoadSync's board for relief, so he kept a copy of his RoadSync emails to show how the company was being mismanaged. *Id*. That email export, and a similar export by Defendant Spencer Barkoff, forms the basis of RoadSync's trade secret claims. Dkt. 1 (Compl.) ¶¶47-48. But that export did ***not*** include the source code

for RoadSync's "Checkout" program (the "Checkout Code").

When filing this litigation, RoadSync knew Defendants' downloads did not contain the Checkout Code. Before filing suit, RoadSync asked Marcy Schwab, a consultant not subject to any confidentiality obligations (Ex. B (Schwab Depo. Tr.) at 106:8-14), to review Droege's emails and files to determine whether he had taken source code. Schwab did not locate any such evidence. *See id*. at 113:8-13 ("█████

████████████████████████████████████████████

████████████████████████████").

After Schwab came up empty, RoadSync asked its Vice President of Architecture & Technology, Jack Roberts, to review the logs of RoadSync's source code repositories for evidence that Droege took source code. Roberts also found nothing. In May 2021, Roberts reported the logs showed that the ████████

████████████████████████████████████████ *See* Ex. C. A "merge" refers to authorizing code to be ***committed*** to the repository, not downloading code. *See* Decl. of Michael Fenn ("Fenn Decl.") ¶¶31-32.

RoadSync nonetheless alleged in its August 2021 complaint that "Droege maintained a copy of RoadSync's source code, including Checkout™, on his company-issued laptop" and "Droege did not delete or return the source code." Dkt. 1 ¶ 51. That unsupported allegation has given rise to multiple discovery disputes. *See* Dkts. 69, 89, 169, 175.

### B.    The Narrowing Of RoadSync's Trade Secret Claim

Defendants moved to dismiss the complaint, arguing *inter alia* that the Checkout software features identified in RoadSync's Complaint were demonstrably public, and thus could not be trade secrets. Dkt. 31 at 18 ("[T]his feature is part of the customer-facing … interface available to any user of RoadSync"). RoadSync opposed, arguing that its claims were premised on source code, not software functions. Dkt. 33 at 11. The Court credited RoadSync's argument and denied that portion of Defendants' motion, holding RoadSync "does not claim its 'outward-facing features' are trade secrets … [it] claims the source code *underlying* those features." (emphasis in original).

The Court explained exactly which parts of RoadSync's complaint survived the motion to dismiss, drawing clear and sharp lines in dismissing or cabining parts of RoadSync's various claims. The Court found parts of RoadSync's Georgia Computer Systems Protection Act and fiduciary duty claims preempted by the Georgia Trade Secrets Act. *See* Dkt. 56 at 27, 34. The Court also held the fiduciary duty claim could not be based on "solicitation" that occurred after RoadSync fired Defendants (*id*. at 35), leaving just three permissible bases for the fiduciary duty claim based on conduct while at RoadSync. *Id*. And the Court identified four categories of trade secrets alleged in the Complaint, then dismissed two of those categories, leaving only source code and tangible customer lists. *Id*. at 8-16.

At the very start of the case, Defendants served basic discovery requests seeking the metes and bounds of RoadSync's claims, including an interrogatory asking RoadSync to identify its trade secrets with particularity.  Consistent with RoadSync's motion to dismiss arguments and the Court's order, RoadSync served verified interrogatory responses on December 21, 2022 that identified only four categories of trade secrets: (1) customer lists, (2) customer data compilations, (3) prospective customer lists, and (4) Checkout's **source code**.  *See, e.g.* Ex. D (RoadSync's Second Amended Interrogatory Responses) at 4-5 ("(4) Source Code. RoadSync's source code for RoadSync's Checkout™").  A claim as to "features and functions" distinct from the alleged trade secret source code did not appear in *any* of RoadSync's responses, even responses that were not limited to trade secret issues.

## C.    RoadSync's Refusal To Identify With Specificity Its Alleged Source Code Trade Secrets

Unable to point to any Checkout Code Defendants actually took (because they did not take any), RoadSync argued that it could not identify its source code trade secrets with particularity until ***after*** it gained access to Defendants' source code.  *See* Ex. E (January 11, 2023 Hg. Tr.) at 49:5-16 ("Mr. Fox: [W]e're going to be presenting our case as to why it is a trade secret… The Court: How are you going to do that? … Mr. Fox: Well, we're – we had asked for access to their code set and we're going to see what in each code set matches up.  The Court: Because you want to see if their code set mirrors your code set?  Mr. Fox: That is correct.").

As the Court later held, RoadSync's proposal contravened established trade secret law requiring a plaintiff to specify its trade secrets *before* seeing a defendant's files; otherwise the plaintiff could "mold its cause of action around the discovery it receives." *DeRubeis v. Witten Techs., Inc.*, 244 F.R.D. 676, 681 (N.D. Ga. 2007).

On May 19, the Court ordered RoadSync to produce a more particularized trade secret identification. Dkt. 133. The Court applied the standard from *DeRubeis*, and required RoadSync to "identify with 'reasonable particularity' those trade secrets it believes to be at issue. . . . so that: (1) [Defendants] are put on notice of the nature of [RoadSync's] claims; and (2) [Defendants] can discern the relevancy of any requested discovery.'" *Id*. at 2 (quoting *DeRubeis*, 244 F.R.D at 681).

On June 5, the Court so-ordered the parties' stipulation regarding the level of specificity required in the trade secret identification. *See* Dkt. 141. That order is organized into two paragraphs, and requires each trade secret identified in RoadSync's Trade Secret ID to comply with both paragraphs. *Id*. at 1 ("For *each* alleged source code trade secret individually, RoadSync shall provide *both* of the following ….") (emphasis added). The order further held that any combination or compilation trade secret must comply with both paragraphs, stating (at 3):

> To the extent RoadSync claims that the combination of multiple alleged trade secrets constitutes its own distinct combination trade secret, RoadSync must provide the disclosures in Paragraphs (1) and (2) for both the combination trade secret, and for its constituent parts that are their own alleged trade secrets.

The two orders reflect the concerns the Court identified at the January 11 hearing—that RoadSync's trade secrets would "pivot" after fact discovery closed, such that Defendants would have no chance to target the "real trade secrets." *See* Ex. E (January 11, 2023 Hg. Tr.) at 63:8-22; *id*. at 51:21-52:1 ("The Court: … But what they're afraid you're going to do is you're going to pivot and say, oh, even though the source code is not the same … you've got these similar functionality.").

## D.    RoadSync's Amended Trade Secret Identification

RoadSync finally served its source code trade secret identification (the "Trade Secret ID") on June 23, 2023 (Ex. F)—10 days *after* the June 13 deadline to serve discovery requests and to substantially complete document productions.  Dkt. 118.

RoadSync's June 23 Trade Secret ID had multiple shortcomings, both technical and substantive, which Defendants promptly raised in meet and confer. *See* Ex. G (June 28 Landes Ltr. to Chally).  Chief among the substantive issues was RoadSync's expansion of its trade secrets to identify "features and functionalities" "in addition to" source code as a trade secret.  *Id*. at 3.

Following a meet and confer, RoadSync served another amended Trade Secret ID on July 3 (*see* Ex. H), which cured the technical errors but did not address the substantive errors.  The parties further met and conferred on July 5, and RoadSync agreed to consider further amendments.  *See* Ex. I (July 7 Ltr.) at 4 ("RoadSync will consider amending…").  RoadSync served another amended Trade Secret ID on

August 1 (Ex. J), but it still did not address the substantive deficiencies, including the rewrite introducing "features and functionalities."  *See* Dkt. 175; *see also* Ex. J at 3 ("████████████████████████████████████████████ ███████████████████████████████") (emphasis added).

As of July 13, RoadSync's verified responses to the interrogatories Defendants served at the ***beginning*** of discovery still contained no mention of "features and functions," and no evidence that Defendants took source code.  This was further confirmed at the August 3 deposition of RoadSync's CEO and Rule 30(b)(6) designee.  *See* Ex. K (Gregg 30(b)(6) Depo. Tr.) at 197:22-198:5 (██████ ██████████████████████████████); Ex. U (Roberts 30(b)(6) Depo. Tr.) at 45:5-14.  After that deposition, on August 7, RoadSync served amended interrogatory responses that, for the first time, included features and functions, by incorporating the August 1 Trade Secret ID.  *See* Ex. L (RoadSync's August 7 Amended Interrogatory Responses).

### E.    The Instant Motion

Following RoadSync's introduction of "features and functions" as an alleged trade secret, RoadSync and Defendants filed cross-discovery disputes regarding the new identification.  RoadSync argued that it was entitled to new discovery regarding "features and functions" since it was identified as a trade secret.  Dkt. 169. Defendants requested leave to file the present motion to strike.  Dkt. 175.

The Court set an August 29 hearing on the disputes. Dkt. 179. Before the hearing, RoadSync's current counsel claimed that software "functionality" had always been part of its trade secret claims. *E.g.* Dkt. 169 at 2 (arguing "this case has always encompassed Plaintiff's source code and 'related software' functionality"). Defendants disputed that argument as inconsistent with representations made by RoadSync's prior counsel; and the Court offered to hold a further evidentiary hearing where RoadSync's prior counsel could testify as to their previous representations. *See* Ex. M (August 29 Hg. Tr.) at 59:14-17. Only then did RoadSync backtrack and admit that their new counsel "came onto this case with fresh eyes." *Id.* at 64:4. The Court then left the question of whether there would be a further evidentiary hearing up to the parties, depending on the positions RoadSync would take. *Id.* at 66:1-16.

Following the August 29 hearing, Defendants asked RoadSync whether it would admit that "features and functions" were a last-minute addition by new counsel, or if it would submit to an evidentiary hearing with prior counsel. RoadSync finally conceded the undeniable, that "features and functions" were an entirely new category of trade secrets; but RoadSync simultaneously claimed "prior counsel believed 'features and functions' to be a part of the fiduciary duty claim." Ex. N (September 6 Email from Chally) at 3. Defendants pointed out that could not be correct either, because the Court's Motion to Dismiss Order had limited the fiduciary duty claim to four allegations, none of which was "features and functions."

*See* Dkt. 56 at 38. But RoadSync continued to claim that its prior counsel believed "features and functions" were part of this litigation all along, while simultaneously opposing any request for an evidentiary hearing. *See* Ex. O (Sept. 8 M&C Tr.) at 11:4-12:21.

## LEGAL STANDARD

When a party "fails to obey an order to provide or permit discovery," the Court "may issue further just orders" as a remedy. Fed. R. Civ. P. 37(b). Where, as here, a plaintiff has disobeyed a Court order compelling a particularized identification of trade secrets at issue, the Court may strike all, or portions of, Plaintiff's trade secret identification. *See, e.g.*, *Vesta Corp. v. Amdocs Mgmt. Ltd.*, 2018 WL 830141, at *6-7 (D. Or. Feb. 12, 2018) (striking portions of trade secret identification pursuant to Rule 37(b)); *Arconic Inc. v. Novelis Inc*., 2018 WL 5660173, at *1 (W.D. Pa. Aug. 3, 2018) (striking portions of trade secret identification for failure to comply with prior court orders); *Morley v. Square, Inc*., 2016 WL 374186, at *3 (E.D. Mo. Feb. 1, 2016) (similar); *JDS Ther., LLC v. Pfizer Inc*., 2013 WL 5548932, at *1 (S.D.N.Y. Sept. 30, 2013) (similar). A court may also strike portions of a trade secret identification that are inconsistent with prior orders pursuant to the court's inherent authority to manage its own docket. *See, e.g. Cisco Sys., Inc. v. Chung*, 2020 WL 7495085, at *4 (N.D. Cal. Dec. 21, 2020) (granting, in part, motion to strike portions of trade secret identification pursuant to the court's inherent authority).

## **ARGUMENT**

I.  **ANY REFERENCE TO "FEATURES AND FUNCTIONS" SHOULD BE STRICKEN FROM ROADSYNC'S TRADE SECRET ID**

As set forth above, ***one year ago*** the Court defined and limited the precise contours of this case in its Opinion and Order granting in part and denying in part Defendants' motion to dismiss.  Dkt. 56.  In the following year and throughout the discovery period, the parties have acted consistent with that Order—until RoadSync filed its amended Trade Secret ID on June 23, 2023.  RoadSync's amended Trade Secret ID belatedly attempts to insert ***new*** alleged trade secrets into the case.  RoadSync's new purported "features and functions" trade secrets should be stricken.

A.  **RoadSync Is Judicially Estopped From Asserting "Features and Functions" Trade Secrets**

The Court should strike all references to features and functions from RoadSync's Trade Secret ID because RoadSync is judicially estopped from asserting such trade secrets.  Judicial estoppel "is an equitable defense … 'intended to protect courts against parties who seek to manipulate the judicial process by changing their positions to suit the exigencies of the moment.'"  *Leslie v. BBVA USA (Inc.)*, 2021 WL 8268218, at \*4 (N.D. Ga. Dec. 21, 2021) (quoting *Smith v. Haynes & Haynes P.C.*, 940 F.3d 635, 643 (11th Cir. 2019)).  Judicial estoppel applies if: "(1) [] the position is clearly inconsistent with the earlier position; (2) [] the party succeeded in persuading a court to accept its earlier position such that it 'would create the perception that either the first or the second court was misled'; and (3) [] the party,

11

if not estopped, would 'derive an unfair advantage or impose an unfair detriment on the opposing party.'" *Id.* at \*5 (quoting *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001)). Each of these elements is met here.

***First***, RoadSync's belated attempt to insert features and functions into the case is clearly inconsistent with its earlier positions. RoadSync represented, in its motion to dismiss briefing, that the Checkout Code claim was premised "on theft of source code." Dkt. 33 at 11; *see* Ex. M (Aug. 29 Hg. Tr.) at 44:16-21. RoadSync repeated this in its interrogatory responses, which it filed with the Court. Dkt. 69-1 at 5 (identifying "(4) Source Code. RoadSync's source code for RoadSync's Checkout™"). And RoadSync now admits that "the first instance in which RoadSync claimed features/functions to be part of its claimed trade secrets was [its] 6/23 disclosure." Ex. P (Sept. 11 Email from Chally). RoadSync repeatedly told the Court and Defendants that features and functions were not trade secrets.

***Second***, RoadSync succeeded in persuading the Court to adopt those representations. In ruling on Defendants' motion to dismiss, the Court declined to dismiss RoadSync's trade secret claim on the grounds Defendants' urged, reasoning that "Plaintiff does not claim its 'outward-facing features' are trade Secrets … [i]t claims the source code ***underlying*** those features." *Id.* at 11-12 (emphasis in original); *see also id.* at 8-16 (listing categories of trade secrets, including source code but not "features and functions" of RoadSync's software).

Then, at the January 11 hearing on Defendants' motion to compel a more particularized identification, RoadSync's counsel stated "we have said the source code is the information within these lines of code, right? ***That's our trade secret***." Ex. E (Jan. 11 Hr'g Tr.) at 52:6-8 (emphasis added); *see also Charter House Ins. Brokers, Ltd. v. New Hampshire Ins. Co.*, 667 F.2d 600, 604 (7th Cir. 1981) (attorney's "promise in open court … could be treated as the equivalent of an order"). The Court again accepted that representation, stating: "[RoadSync] claims Defendants misappropriated ***the source code*** for one of its software products." Dkt. 133 at 1 (emphasis added). RoadSync repeatedly convinced the Court that its software trade secrets were limited to source code, and the Court repeatedly adopted these representations in ruling on Defendants' motions.

***Third***, RoadSync's belated switch to assert features and functions trade secrets would prejudice Defendants (especially Relay, against which RoadSync has asserted only the trade secret misappropriation claim). As RoadSync now concedes, it did not identify any alleged trade secrets in "features and functions" until ***after*** the time for Defendants to serve discovery requests. *See* Ex. E (Jan. 11 Hr'g Tr.) at 63:8-22 (Court explaining desire to avoid this exact situation). Inserting brand-new trade secret claims into the case, when it is too late for Defendants to engage in discovery related to them and when Defendants have lost a year of time in preparing a defense to such a claim, would undeniably be prejudicial. *See infra* Part I.D.

**B.    RoadSync's Identification of Features and Functions Exceeds the Scope of the Court's Orders**

Even if RoadSync is not judicially estopped from asserting its new purported features and functions trade secrets, those purported trade secrets are barred by the law of the case doctrine and exceed the scope of the Courts' prior order.

To start, the Court's ruling on the motion to dismiss bars RoadSync from asserting features and functions.  "The law of the case doctrine states that an issue decided at one stage of a case is binding at later stages of the same case."  *One on One Basketball, Inc. v. Glob. Payments Direct, Inc.*, 2015 WL 11257486, at *3 (N.D. Ga. Mar. 19, 2015).  "Absent a prevailing motion for reconsideration," the court's prior order are the law of the case.  *Bongino v. The Daily Beast Co.*, 2021 WL 4316099, at *1 (S.D. Fla. Sept. 23, 2021).

The Court's motion to dismiss ruling unequivocally held that, while source code generally might be considered a protectible trade secret, outward-facing features cannot constitute trade secrets.  Specifically, the Court held that:

> The "distinction between source code and ***the visible output of [a] software program***" is well established.  *AirWatch LLC v. Mobile Iron, Inc.*, 2013 WL 4757491, at *4 (N.D. Ga. Sept. 4, 2013) (Carnes, J.).  The latter ***includes "[t]hings that any user or passer-by [can] see[],"*** ***which precludes trade-secret protection.*** *Fin. Info. Techs., LLC v. iControl Sys., USA, LLC*, 21 F.4th 1267, 1273 (11th Cir. 2021).  But the former is "*not* accessible" to a program user, "is not readily ascertainable," and is "generally considered to be a trade secret."  *Warehouse Sols., Inc. v. Integrated Logistics, LLC*, 2014 WL 12647878, at *6 (N.D. Ga. July 7, 2014); *see Fin. Info.*, 21 F.4th at 1273 ("As a general matter, software ***source code*** is not readily ascertainable

14

and, accordingly, qualifies for trade-secret protection.").

Dkt. No. 56 at 12 (emphasis added). If RoadSync thought there was any vagueness in the Court's order—which is explicit in its reference to "source code," and mentions software functions only when explaining what is *not* trade secret—RoadSync could have moved for reconsideration or clarification. It never did. The Court's order thus is law of the case, and any reference to features and functions should be stricken from the Trade Secret ID because they are not part of the case.

In such a situation, a court may strike portions of a trade secret identification that seeks to "designate trade secrets outside the scope of that information determined actionable by the court in its prior orders." *Cisco Sys., Inc. v. Chung*, 2020 WL 7495085, at *3 (N.D. Cal. Dec. 21, 2020). In *Cisco*, the court issued two motion to dismiss orders that limited the subject matter of the trade secrets in the case, but the plaintiff then served a trade secret disclosure attempting to include more trade secrets. *Id*. at *1. The court rejected that tactic, striking several trade secrets because "[t]he court has settled the pleadings" such that the "[p]laintiff may not now import" trade secrets that fall outside the scope of the pleadings. *Id*. at *6.

RoadSync's belated attempt to assert features and functions as trade secrets faces the same problem. The Court's motion to dismiss order detailed what the alleged trade secrets did and did not include and limited the subject matter of the trade secrets to source code. None of the permitted categories comprised software

"features and functions." Consistent with that ruling, the Court's later order on trade secret identification required RoadSync to "specify the alleged trade secret itself, rather than the end results of, or the functions performed by, the alleged trade secret." Dkt. 141 at 2. Again, the trade secrets to be identified were not the "functions performed," but rather the code underlying those functions. RoadSync's attempt to expand its trade secret identification into features and functions thus goes beyond the scope of the Court's orders on the Motion to Dismiss and Motion to Compel, and should be stricken for this additional reason. *See Cisco*, 2020 WL 7495085, at *6.

## C.    RoadSync's Features And Functions Identification Fails To Satisfy This Court's Orders

Independently, RoadSync's belated identification of "features and functions" is still too vague to comply with the Court's prior orders. The Court ordered RoadSync to "identify with 'reasonable particularity' those trade secrets it believes to be at issue. . . . so that: (1) [Defendants] are put on notice of the nature of [RoadSync's] claims; and (2) [Defendants] can discern the relevancy of any requested discovery.'" *Id.* at 2 (quoting *DeRubeis*, 244 F.R.D at 681). But the features and functions identified in the Trade Secret ID fall below those standards. *See* Fenn Decl. ¶¶8(a), 9-19.

For example, RoadSync claims a trade secret in "███████" functionality, which it describes as "█████████████████████████████████ ███████" which can be done "████████████" so that the "█████████████

16

████████████████████████." *See* Ex. J at 5. ████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████ *See* Fenn Decl. ¶11.

Similarly, RoadSync claims a trade secret in "██████████████████"

functionality, which it describes as "███████████████████████████

████████████████████████████████████," further

stating ███████████████████████████████████████

████████████████████████████ Ex. J at 16. ████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████ *See* Fenn Decl. ¶14. This description does not

even identify what is "unique and novel" despite using that descriptor, nor does it

explain the "other capabilities" alluded to in the description. *Id*. As set forth in the

Fenn Declaration, this example and other runs afoul of the Court's order. Dkt. 141

**D.    RoadSync's Last-Minute Switch Prejudices Defendants.**

Finally, Defendants are prejudiced because the parties operated throughout

almost the entirety of discovery based on this Court's rulings that RoadSync claimed

only source code as a trade secret, and not features and functions.

RoadSync did not claim the features and functions of its software as a trade secret until it served its amended Trade Secret ID on June 23—expanding beyond, instead of clarifying, its purported source code trade secrets. And RoadSync did not amend its responses to the Defendants' first interrogatories to add features and functions until August 7—after the RoadSync Rule 30(b)(6) deposition.

Defendants conducted the entirety of discovery on the premise that—as RoadSync had represented and as the Court had held—"features and functions" were not part of the trade secret claim.

Throughout the nine months following the Court's motion to dismiss order, the parties engaged in discovery based on the alleged trade secrets identified in that order. This remained the case through Defendants' final written discovery requests, which they served on June 2, 2023 in order to obtain responses in advance of depositions before the July 13 fact discovery cutoff. None of Defendants' interrogatories, including Defendants' last set of interrogatories, asked about "features and functions"—because RoadSync and the Court had confirmed they were not at issue. *See* Ex. Q. Likewise, Defendants' 30(b)(6) deposition notice, served on June 2, identifies 35 deposition topics, none of which are about "features and functions"—because they were unequivocally not part of the case. *See* Ex. R. Nor did Defendants' last set of document requests (or any of Defendants' document requests) seek any discovery tied to features and functions, for the same reason. *See*

Ex. S. And, even earlier in the case, over the course of a months-long negotiation, Defendants chose ESI search terms without any knowledge that "features and functions" were at issue.

Defendants also could have subpoenaed RoadSync's customers to learn which "features and functions" of Checkout cannot be trade secrets because the functions can be observed by users. *See Warehouse Sols., Inc. v. Integrated Logistics, LLC*, 610 F. App'x 881, 885 (11th Cir. 2015) ("dissemination of [software] to users necessarily revealed the information [plaintiff] alleges to be secret"); *IDX Sys. Corp. v. Epic Sys. Corp.*, 285 F.3d 581 (7th Cir. 2002) ("Details that ordinary users of the software could observe without reverse engineering" are not trade secrets.).

Now, "[t]o allow the addition of the 'new' trade secrets at this point would broaden the scope of the existing claims and associated discovery." *TK Elevator Corp. v. Abels*, 2022 WL 17551765, at *5 (D. Neb. Dec. 9, 2022) (granting motion to strike portions of trade secret identification served at close of fact discovery). This is the same concern, and prejudice, the Court recognized at the January 11 hearing. *See* Ex. E (Jan. 11 Hg. Tr.) at 51:22-52:1.

Indeed, RoadSync may have intentionally delayed trying to add "features and functions" in order to ambush—and prejudice—Defendants. RoadSync served a final set of document requests on June 13 (*see* Ex. T), the last day the parties were permitted to serve discovery responses yet ten days ***before*** RoadSync first identified

19

features and functions as trade secrets on June 23. RoadSync's final set of document requests contains just two requests (*see* Ex. T), both of which seek discovery into software features and functions—as RoadSync admitted in briefing. Dkt. 169 at 1 ("Request No. 94 seeks, essentially, the ability to log into Relay's software so that Plaintiff's expert can review the features and functions."). In other words, RoadSync invented these new claims in time to submit its own related discovery requests, but did not disclose them to Defendants until it was too late for Defendants to do so.

In an effort to brush aside Defendants' prejudice, RoadSync asserted for the first time on September 6 that "features and functions" may not have been alleged as trade secrets, but they were always part of RoadSync's fiduciary duty claim. *See* Ex. N (Sept. 6 Email from Chally). This argument is frivolous, and it is no surprise that RoadSync has refused an evidentiary hearing prior to the filing of this brief to allow Defendants to test it. *See* Ex. O (Sept. 8 M&C Tr.) at 11:4-12:21. The Court's Motion to Dismiss Order identified three bases on which RoadSync's fiduciary duty claim could proceed—none of which was "features and functions—and held that the fiduciary duty claim was "otherwise dismissed." Dkt. 56 at 37-38. RoadSync never sought reconsideration or clarification of that order.

And RoadSync could never raise "features and functions" in the context of a fiduciary duty claim, because it would fail on the merits. As the Court recognized in the Motion to Dismiss Order, "a breach of duty claim predicated on acts after [an

employee's] resignation must necessarily fail."  Dkt. 56 at 35 n.13 (citing *NuVasive, Inc. v. Miles*, 2020 WL 5106554, at *14 (Del. Ch. Aug. 31, 2020)).  RoadSync's Complaint alleges that Defendants built software that "mimics key features of RoadSync's Checkout" only "***after*** leaving RoadSync."  Dkt. 1 ¶ 4.  Since Defendants only built their product *after* leaving RoadSync, building that product cannot be a breach of any fiduciary duty owed to RoadSync.  *NuVasive*, 2020 WL 5106554, at *14.  The claim would have been preempted (had it been raised), because the Court held that the GTSA preempts fiduciary duty claims regarding the same subject matter.  Dkt. 56 at 34-35.

Contrary to RoadSync's ever-shifting arguments, the record is clear that RoadSync attempted to insert "features and functions" into this case on June 23, and Defendants were severely prejudiced as a result.

## II.   REFERENCES TO "COMPILATION" TRADE SECRETS SHOULD BE STRICKEN FROM ROADSYNC'S TRADE SECRET ID

RoadSync's references to "compilation" trade secrets also fail to comply with the Court's order regarding combination trade secrets.  The Court's June 5 Order states that if "RoadSync claims that the combination of multiple alleged trade secrets constitutes its own distinct combination trade secret," then RoadSync must "provide the disclosures in Paragraphs (1) and (2) [of Docket 141] for both the combination trade secret, and for its constituent parts that are their own alleged trade secrets."

RoadSync's amended trade secret identification does not identify ***any*** specific

21

combination trade secrets, much less provide the required information from Paragraphs (1) and (2) of the Court's June 5 Order. *Id.* Instead, RoadSync included eight alleged trade secrets categories, and inserted the following two sentences into the Trade Secret ID more than a dozen times:



*See* Ex. J at 2, 3, 5, 8, 9, 10, 11, 12, 13, 15, 16, 17, 18, 20, 22, 23.

This boilerplate catch-all not identify ***any*** specific combinations (or "compilations"). Instead, it leaves Defendants to guess which "other features" each individual alleged trade secret may be "compiled with" in order to come up with RoadSync's compilation trade secrets. *See* Fenn Decl. ¶¶20-25.

Even worse, RoadSync lists "subcomponents" of certain alleged trade secrets and includes its "compilation" sentence there too. For example, RoadSync's alleged trade secret number 2, "████," inserts this sentence into five different subcomponents: ██████████████████████████████████████

████████████████  *See* Ex. J at 7-13. Does that mean that a *subcomponent* of

████  may be "compiled" with a completely different trade secret (or "subcomponent" of another trade secret), to form a separate, undefined trade secret? The Trade Secret ID does not say, and Defendants and the Court cannot know.

This concern, too, was raised at the January 11 hearing—that when RoadSync's evidence came up short, RoadSync would assert previously unidentified combinations of source code files. *See* Ex. E at 50:1-6 ("Mr. Landes: … So they'll say, well, yeah … you didn't actually copy any of this code. But what our trade secret is, is putting these three steps together from these separate files . . . ."). That is why the Court ordered RoadSync to identify *each* combination trade secret separately, and in full compliance with the detailed requirements in the June 5 Order. RoadSync did not do so, and the Court should strike references to vague and unspecified potential "compilation" trade secrets.

## III.   ROADSYNC'S CATCH-ALL "███████" CATEGORY SHOULD BE STRICKEN FROM ROADSYNC'S TRADE SECRET ID

The Court should also strike RoadSync's Trade Secret No. 8, named "█████," because it is a "catch all" designed to evade the Court's prior orders compelling RoadSync to identify its actual trade secrets. Courts have long held that "catchall phrases" are impermissible "because they do 'not clearly refer to tangible trade secret material.'" *Univ. of Tenn. Rsch. Found. v. Caelum Biosciences, Inc.*, 2022 WL 19403695, at *6 (E.D. Tenn. July 13, 2022) (quoting *Imax Corp. v. Cinema Techs., Inc*., 152 F.3d 1161, 1167 (9th Cir. 1998)). In *Imax*, the plaintiff argued it had identified its trade secrets with particularity by producing projectors that embodied the trade secrets and then providing one-sentence descriptions, such as "the design of the cam unit, including every dimension and tolerance that defines or

reflects that design." *Id*. at 1166.  But the court rejected that argument, holding that the defendant was entitled to know, *e.g.*, **which** dimensions and tolerances were actually trade secrets.  *Id*.

The Court's Order granting Defendants' Motion to Compel and its subsequent June 5 Order closely track *Imax*.  During the January 11 hearing, RoadSync argued it had adequately identified its trade secrets by "producing the entire code in each of the key functions that compromise the program, the Checkout program."  Ex. E at 48:17-19.  The Court rejected that argument, explaining that "a source code dump and a few generalized one-sentence descriptions" "does not meet the 'reasonable particularity' standard set forth in *DeRubeis*."  Dkt. 133 at 4; *compare Imax*, 152 F.3d at 1166 (one-sentence descriptions insufficient to identify trade secrets).

Yet that is all RoadSync has offered when identifying its "████" trade secret: an impermissible catch-all for any and all Checkout source code.[1]  RoadSync's Rule 30(b)(6) witness readily acknowledged as much.  Ex. U at 28:25-29:5 ("██████

████████████████████████████████████████████

██████").  In fact, he admitted that RoadSync continues to claim **all** of the Checkout Code as a trade secret, regardless what the code actually does.  *See* Ex. U (Roberts

---

[1]    *See Alta Devices, Inc. v. LG Elecs., Inc.*, 2019 WL 176261, at *3 (N.D. Cal. Jan. 10, 2019) ("[g]eneric, catch-all disclosures ... do not describe the claimed trade secrets with reasonable particularity"); *VIG, Inc. v. Alvarez*, 2019 WL 5063441, at *4 (S.D. Fla. Oct. 9, 2019) (similar).

30(b)(6) Depo. Tr.) at 12:25-13:3 (" 

██████████████████████████████████████████████████ ").  RoadSync has

admittedly taken any and all leftover code, put it in the "██████" category, and

provided one-sentence descriptions, such as: ████████████████████████████

███████████████████████████████████████████████████

    In addition to being part of an improper "catch-all," these one-sentence

descriptions do not meet the standard from *DeRubeis* detailed in the Court's June 5

Order, because they fail to identify precisely ***what*** the claimed trade secrets are.  For

example, RoadSync's minimal description of the "████████████" subcategory only

describes the function or end result of running the ████████████ source code.  Fenn

Decl. ¶28.  It does not describe ***how*** the ████████████ source code performs that

function in a unique or novel manner not generally known in the industry.  Fenn

Decl. ¶28.  Source code that "█████████████████████████████████████" is

universal in any software.  *Id*.  All of the other subcategories are similar, as Mr. Fenn

explains with additional examples in his declaration.  *See* Fenn Decl. ¶¶26-30.

    The Court should strike RoadSync's "██████" alleged trade secret.

<h2 align="center"><u>CONCLUSION</u></h2>

    For the foregoing reasons, the Court should strike the following from

RoadSync's TS ID: (i) any reference to "features" or "functions," (ii) any reference

to "compilation" trade secrets, and (iii) the catch-all "██████" trade secret.

/s/ Ryan Landes

Ryan Landes (admitted *pro hac vice* )
**QUINN EMANUEL URQUHART**
**& SULLIVAN, LLP**
865 S. Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
ryanlandes@quinnemanuel.com

Andrew J. Rossman (admitted *pro hac vice*)
Ellyde R. Thompson (admitted *pro hac vice*)
**QUINN EMANUEL URQUHART**
**& SULLIVAN, LLP**
51 Madison Avenue, 22nd Floor
New York, New York 10010
Tel: 212-849-7000
Fax: 212-849-7100
andrewrossman@quinnemanuel.com
ellydethompson@quinnemanuel.com
*Counsel for Defendants Relay Payments,*
*Inc., Spencer Barkoff, and James Ryan Droege*

Michael A. Caplan
Georgia Bar No. 601039
Jessica A. Caleb
Georgia Bar No. 141507
Jarred A. Klorfein
Georgia Bar No. 562965
**CAPLAN COBB LLC**
75 Fourteenth Street, NE, Suite 2700
Atlanta, Georgia 30309
Tel: (404) 596-5600
Fax: (404) 596-5604
mcaplan@caplancobb.com
jcaleb@caplancobb.com
jklorfein@caplancobb.com

26

## <u>LOCAL RULE 7.1(D) CERTIFICATION</u>

The undersigned counsel certifies that the foregoing document has been prepared with one of the font and point selections approved by the Court in LR 5.1(B).

This 12th day of September, 2023.

/s/ Ryan Landes

Ryan Landes (admitted *pro hac vice* )
**QUINN EMANUEL URQUHART
& SULLIVAN, LLP**
865 S. Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
ryanlandes@quinnemanuel.com

## **CERTIFICATE OF SERVICE**

I hereby certify that, on this day, I caused a true and correct copy of the foregoing document to be filed with the clerk's office using this Court's CM/ECF system, which will automatically send notice of such filing to all counsel of record.

This 12th day of September, 2023.

*/s/ Ryan Landes*

Ryan Landes (admitted *pro hac vice* )
**QUINN EMANUEL URQUHART**
**& SULLIVAN, LLP**
865 S. Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
ryanlandes@quinnemanuel.com