# Exhibit M

```
 1              IN THE UNITED STATES DISTRICT COURT
                FOR THE NORTHERN DISTRICT OF GEORGIA
 2                       ATLANTA DIVISION

 3   ROADSYNC, INC.,                )
                                    )
 4                Plaintiff,        )
                       v.           )   CIVIL ACTION
 5                                  )   FILE NO. 1:21-CV-03420-MLB
                                    )
 6   RELAY PAYMENTS, INC. ET AL,    )
                                    )
 7                Defendants.       )
     _____)
 8

 9

10   -------------------------------------------------------------

11          BEFORE THE HONORABLE MICHAEL L. BROWN
                 TRANSCRIPT OF PROCEEDINGS
12                   AUGUST 29, 2023

13   -------------------------------------------------------------

14

15

16

            Proceedings recorded by mechanical stenography
17          and computer-aided transcript produced by

18

            JANA B. COLTER, FAPR, RDR, CRR, CRC
19                  Official Court Reporter
                    1949 U.S. Courthouse
20                  75 Ted Turner Drive, SW
                    Atlanta, Georgia  30303
21                     (404) 215-1456

22

23

24

25
```

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA

2

```
 1   APPEARANCES:

 2   For the Plaintiff:        JONATHAN CHALLY
                               JOSHUA GUNNEMANN
 3                             KATHERINE D'AMBROSIO
                               Attorneys at Law
 4
     For the Defendants:       RYAN LANDES
 5                             JULIA BLACKBURN STONE
                               Attorneys at Law
 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA

```
 1        (Atlanta, Fulton County, Georgia, August 29, 2023, in open

 2   court.)

 3                            —  —  —

 4                       P R O C E E D I N G S

 5                            —  —  —

 6        THE COURT:  All right.  We are here for another

 7   discovery dispute in RoadSync v. Relay Payments.

 8        May I have appearances, starting with counsel for the

 9   employee.

10        MR. CHALLY:  Good afternoon, Your Honor.

11        I'm Jon Chally.  With me is Josh Gunneman and

12   Kadie D'Ambrosio, and we represent the plaintiffs in this

13   case.

14        THE COURT:  Great.  And for the defendants?

15        MR. LANDES:  Good afternoon, Your Honor.

16        Ryan Landes for the defendants from Quinn Emanuel.

17        MS. STONE:  And Julia Stone from Caplan Cobb as well.

18        THE COURT:  Are y'all lead counsel?  Everybody here

19   is lead counsel?

20        MR. CHALLY:  Yes, sir.

21        MR. LANDES:  Yes, Your Honor.

22        THE COURT:  Okay.  I think from now on, unless I tell

23   you otherwise, the next time that -- if we have to have a

24   dispute, I'd like your clients here with you.

25        I cannot think of another case -- now, I haven't been
```

1  on the bench all that long.  But I can't think of another case

2  that I have had that has been quite so difficult in the

3  discovery process, apart from I think anything to do with the

4  substance.

5       From purely having to do with lawyers wanting to

6  fight and obfuscate and be difficult.  And I say that because

7  not only have I spent so much time on these things, but just

8  sitting last week, I was thinking about y'all last week when I

9  was having conferences in other cases, at the beginning of

10 cases.  And I was trying to talk to them about discovery.

11      And I kept thinking about how I was going to make all

12 of the lawyers in those cases do better than y'all.  But I

13 think it's an embarrassment to the practice of law how poorly

14 you-all have been able to get through the discovery process.

15      I'm not going to make any decisions based upon that.

16 But I would like clients here from now on.  And I'm not going

17 to mince words in front of clients.  I think clients are

18 paying more money and probably themselves being run around in

19 circles or fed to believe that something is going to succeed

20 that's not.  But it is really, really amazing how poorly I

21 think y'all have performed in getting this case moving along.

22      It's a pretty simple case.  I know lawyers want to

23 act like all of their cases are horribly complex and oh so

24 difficult.  I don't think it is.  This is a case that began

25 about customer lists and trade secrets.  And we've had to have

1  so many things.

2          So unless you hear from me otherwise, if we have to

3  have any more of these, I want clients here.  And I want

4  senior clients here.  I want somebody who reviews bills and

5  gives instructions here to see what he or she has been paying

6  for.  Okay?

7          Does everybody understand?

8          Does anybody want to make a comment about that?

9          MR. CHALLY:  No, sir.  Understood.

10          THE COURT:  Understand?

11          MR. LANDES:  Understood, Your Honor.

12          THE COURT:  Okay.  All right.  We are here on a

13  number of things.  We are here, I think, to finish up on your

14  last discovery issue that was in the letters to me 156, and

15  then some additional briefing at 159 and 160.

16          The plaintiff asked me to compel the defendants to

17  produce post complaint and investor materials.  We've already

18  talked about this.  I'm going to grant that request for the

19  reasons I said in my July 19th teleconference with the

20  parties.

21          I think plaintiff could have been more diligent in

22  pursuing this timely.  I've already said that I don't think

23  diligence has been a factor in the prosecution of this case

24  with prior counsel or current counsel.

25          But the record is not so clear or egregious enough to

1  say that the plaintiffs have waived their rights to discovery.

2  I've looked through and one of the reasons I'm so disappointed

3  in this is I've spent a lot of time looking at the

4  correspondence that you-all have given me.

5       And the correspondence, I think it's 159-3 is one of

6  the series of back and forths that were going on that I think

7  defendant said was the -- included the plaintiff's

8  acquiescence to not going to pursue those requests.

9       But it was very clear to me that in one of the

10  emails, I think it's at Page 2, the defendant said that they

11  were entitled to discovery of the post complaint documents and

12  the investor documents.

13       As I said, that stands in contrast to the defendant's

14  contention in one of them, but I've said enough on that.  I'm

15  going to allow that discovery to go forward.

16       I don't think, contrary to what the defendant said,

17  that the plaintiff did acquiesce.  I don't think there is

18  really even an argument that a Judge ought to have to go back

19  and re-read emails.  I think it should never have been

20  represented to me that way.

21       Plaintiff also wants the defendant to produce

22  documents that hit on the party's search terms, even if

23  they're -- the documents don't concern one of the 16 priority

24  customers identified by the plaintiff.  This has to do, I

25  think, with request 1, 3, 5, 10, 13, 19, 21, 24, 26 through 29

1  and 34.  I think all of those have the same limitation.

2          First of all, I agree with plaintiff's contention

3  that I never limited discovery to those 16 customers.  Maybe

4  in a bit of foreshadowing, the parties were unable to even

5  really begin substantive discovery because they were disputing

6  that.

7          So I think I said something about let's pick 16 of

8  the most important customers, just to get things moving.  It's

9  hard for me to believe that anybody could interpret that as me

10  limiting discovery to just 16 customers.

11          Again, I'm not sure that's even a plausible argument

12  that somebody ought to make or that a Court ought to have to

13  come back and explain that it was not a limitation on the

14  outer bounds of discovery.

15          I also think that the defendant's use of the notion

16  that documents had to be responsive to those requests, and in

17  addition, hit on one of the customers, that's, I think, the

18  heart of the defense position.

19          Is that right?

20          MR. CHALLY:  As I understand it, Your Honor, yes.

21          MR. LANDES:  That's what we put in the meet and

22  confer after discussions and what we put in our responses,

23  limited certain responses.

24          THE COURT:  Okay.  It's hard to imagine that that is

25  a realistic limitation.  It's hard for me to imagine.  And

1    let's just look at a couple of them.

2          I have a lot of the documents opened on my computer

3    because you-all have cited so many things.  It's going to take

4    me a minute to get there.  Let me find it again.

5          I'm looking at the defendant's second amended

6    responses to the plaintiff's first set of requests for

7    production.

8          The request for production is all documents

9    concerning RoadSync's confidential and proprietary

10   information, including their trade secrets.

11         Why would you limit that to also including a

12   discussion of one of the 16 customers?

13         MR. LANDES:  I don't -- I don't think we did,

14   Your Honor.

15         THE COURT:  Oh, well, it's just part of your

16   objection.  Your objection is that you will produce it,

17   limited to the 16 entities.

18         MR. LANDES:  Let me bring that up, because I think --

19   I'm almost certain it was broader than that.  Because we

20   agreed to produce everything that was retained by the

21   defendants on that mentioned anything that was retained.  And

22   in addition to that, because we didn't know at this point what

23   they were claiming as their confidential information --

24         THE COURT:  But then why are we arguing about it?  Is

25   this not part of the discovery dispute that we're here on?

```
1   Are you telling me that I've wasted my time looking at this,
2   because it's not part of the dispute.
3           Is it part of the dispute?
4           MR. CHALLY:  We believe it is, Your Honor.  If I --
5   the only assistance I can provide is I think that Mr. Landes
6   is trying to draw a distinction between documents and
7   information that mention RoadSync on the one hand and
8   documents and information that were retained by the
9   defendants.
10          And from our perspective, that distinction is one
11  without a difference.  To fairly uncover what they may have
12  still accessed following their departure from RoadSync, we
13  then need to know -- mentioned -- received documents that
14  reference RoadSync.
15          And there is, as I understand it, a further
16  limitation that the defendants have imposed on those sorts of
17  documents, limiting to these 16 key customers.
18          THE COURT:  I think that's how I read the response.
19          No?
20          MR. LANDES:  So I do want to be clear that it's
21  broader than just materials that reference the 16 customers.
22  Because anything that was retained or that mentions anything
23  was redacted --
24          And, I'm sorry, Your Honor, would you prefer that I
25  stand?
```

```
 1              THE COURT:  No.  No.  You can sit down.

 2              MR. LANDES:  Anything that mentions or consists of

 3    the material that was retained was produced.  There are tens

 4    of thousands, dozens of thousands of documents that were

 5    produced from the hard drives, from emails and from other

 6    sources.

 7              But when we get beyond that, it is not clear what is

 8    meant by RoadSync confidential information.  It just is not

 9    something that's clear to us.

10              And the notion that, well, if a document has the word

11    RoadSync in it, it therefore is RoadSync confidential

12    information, that just -- it's not true.  And we've seen

13    examples of materials like that, like marketing, marketing

14    materials.  Or an email from an individual defendant's medical

15    provider that goes to his personal email and his RoadSync

16    email.

17              And so it has the word RoadSync, but it is not

18    RoadSync confidential information.

19              THE COURT:  So you're telling me that in response to

20    Number 1, which wanted all document concerning confidential

21    proprietary information, including their trade secrets --

22              MR. LANDES:  Um-hmm.

23              THE COURT:  -- that when you say subject to a series

24    of objections, including that you don't know what that

25    means --
```

```
 1              MR. LANDES:  Um-hmm.
 2              THE COURT:  -- what confidential means, that you'll
 3    produce documents responsive to that request and limited to
 4    the 16 entities identified in the letter.
 5              That that's not really what you were doing?
 6              MR. LANDES:  We -- we produced -- I'm sorry.  Yeah.
 7    So here we go.  This is -- if you -- if you continue to read
 8    down that response, it says:
 9              Defendants will also produce the files in Appendices
10    A through C of RoadSync's amended responses and objections to
11    defendant's interrogatories and any documents or
12    communications that reference these files.
13              So that -- that appendix that we were referencing
14    there, we asked RoadSync in an interrogatory that said what is
15    your confidential information and trade secrets.
16              And they provide this description.  And so we'll say:
17    We'll produce any of those documents and anything that
18    mentions any of those documents.
19              But it's beyond that, we don't know what it is that
20    they're saying is RoadSync confidential information.  And it's
21    not the case that any document that has the word RoadSync in
22    it is RoadSync confidential information.
23              I mean, Mr. Droege, who is one of the individuals --
24              THE COURT:  I don't understand that.  Now I'm looking
25    at your response.
```

1          MR. LANDES:  Um-hmm.

2          THE COURT:  To this discovery dispute at 153.

3          Defendants told RoadSync's former counsel, on

4   March 3rd, that production for certain RFPs would be limited

5   to the 16 priority customers.

6          MR. LANDES:  Um-hmm.

7          THE COURT:  And RoadSync has never identified or

8   requested discovery about any other particular customers.

9          I think that the RFP objections that you pose were

10  limiting the ones that I've already read to certain -- to

11  responsive and certain customers.

12         MR. LANDES:  For -- for certain of them.  Now, there

13  were some RFPs --

14         THE COURT:  Okay.

15         MR. LANDES:  -- that said -- I'm sorry.  I don't mean

16  to interrupt.

17         THE COURT:  No.  Let me ask you this.

18         Number 3:  All documents that Barkoff or Droege

19  created or obtained from RoadSync, including emails or

20  electronic-stored information that they copied from a RoadSync

21  network computer server or electronic storage.  And you have a

22  series of objections.  And then you say you'll produce

23  documents responsive to that limited to the 16 entities

24  identified subject to a series of limitations.

25         Are you telling me that you did not limit your

1  production to it also has to be relevant to those 16 entities?

2          MR. LANDES:  Sorry.  I'm just reviewing this now.

3          So I think -- so part of the objection here is that

4  it is duplicative.  I can tell you any emails or documents

5  that they retained from RoadSync have been produced.

6          I think some of those are captured in 1 or 2, RFP 1

7  or 2.  But we were not withholding there based on individual

8  customers.

9          THE COURT:  Okay.  Well, that's great.  Then it

10 doesn't matter to you, and I don't know why we're fighting

11 over it.

12         Then do you agree that I should grant their

13 request -- that your response to Request 1, 3, 10, 13, 19, 21,

14 24, 26 through 29 and 34, that any response to that cannot be

15 limited by the notion that it ought to also relate or refer to

16 one of the 16 identified customers.

17         MR. LANDES:  So let -- let me give an example, which

18 is RFP --

19         THE COURT:  No, no.  Do you agree?  So I've asked you

20 about two specifics and I think --

21         MR. LANDES:  Sure.

22         THE COURT:  -- I think, although you haven't answered

23 very clearly, I think what you've told me in response to the

24 two requests that I've asked you is that you are not limiting

25 your responsiveness based upon whether or not the documents

1  also refer to or name the 16 customers; is that right?

2        MR. LANDES:  Correct.

3        THE COURT:  Okay.

4        MR. LANDES:  For the ones that we discussed, yes.

5        THE COURT:  So for those, 1 and 3, I ought to grant

6  those.  And I ought to say you didn't do it --

7        MR. LANDES:  Well --

8        THE COURT:  -- and therefore, why wouldn't I just

9  order apparently what you've already done, which is you have

10 objections to those requests that have not been brought to me

11 so far.

12       The only objection that you've made is your reference

13 to the language that I've quoted a couple of times.  That your

14 responses will be limited to the 16 entities identified in

15 RoadSync's list.

16       I think you agree with me that I ought to sustain

17 their objection to that limitation; is that right?

18       MR. LANDES:  Well, so I -- I want to make sure that

19 there is an important distinction here.

20       If we're removing the limitation for those RFPs as to

21 the 16 customers, I don't think it will have a significant

22 difference on what we will produce.

23       But what defendants are asking for -- or, I'm sorry,

24 what RoadSync is asking for is something different, which is

25 if it has this word in the document, it is therefore a

1  confidential or trade secret document that you have to turn

2  over.

3        And so there's an element here where there still

4  needs to be some form of responsiveness review.  And it's not

5  just, well, if it has a word in it, like the word checkout,

6  you have to produce that document.

7        THE COURT:  That's not the issue that's in front of

8  me.

9        MR. LANDES:  Well, I think that is some of the relief

10 that RoadSync is seeking, Your Honor.

11       THE COURT:  Okay.  If that's the case, I haven't

12 found that in the bowl of spaghetti that's been given to me.

13       MR. LANDES:  Okay.

14       THE COURT:  What I have found in there is that they

15 object to you having documents that are responsive to the

16 requests and not being produced because they do not refer or

17 relate to one of the 16 entities.

18        Is that one of your requests?

19       MR. CHALLY:  Yes, Your Honor, it is.

20       THE COURT:  Okay.  And you agree that that ought not

21 be a limitation?

22       MR. LANDES:  For certain RFPs, I don't think it was

23 the complete limitation.

24       THE COURT:  Okay.  Well, I have not -- I've gone

25 through two of them.  And I am sustaining their objection to

1  those two.

2       Do we need to look at more?

3       MR. LANDES:  Could we look at one more just to give

4  you an example of what our issue is?

5       THE COURT:  Sure.

6       MR. LANDES:  So let's go to RFP 34.

7       THE COURT:  So does that mean you think I ought to

8  grant it as to all of the other ones?  That's the last one at

9  issue.

10       MR. LANDES:  I wasn't able to write down fast enough.

11  That was the last one on your list, so I just -- that's the

12  one I went to.  But I think it's emblematic of certain others.

13       THE COURT:  Yes.

14       MR. LANDES:  So the request here is:  All documents

15  concerning revenue and profits relating to any Relay customers

16  who are current or former RoadSync customers.

17       Okay?

18       So I don't know who the current or former RoadSync

19  customers are.

20       THE COURT:  You know 16 of them.

21       MR. LANDES:  Well, Your Honor, even those 16 are not

22  customers.  Those are just entities.

23       THE COURT:  Okay.

24       MR. LANDES:  In fact, I think only a very small

25  number of those are customers.

1              THE COURT:  Okay.

2              MR. LANDES:  But regardless, that's a list that we

3    have.  And for seven months, since Your Honor said why don't

4    you start with a list of 20 or 25, bite off part of the

5    elephant, Your Honor said, so we can get started.  We have

6    been asking in meet and confer who else do you want on your

7    list for us to look for.  And we never get an answer.

8              THE COURT:  Did you get it by June 13th?

9              MR. LANDES:  We -- I don't have an answer sitting --

10             THE COURT:  I'm sorry.  Did you get it by July 13?

11             MR. LANDES:  I don't have an answer sitting here

12   today, Your Honor.

13             THE COURT:  So the only ones that they've given you

14   are the 16?

15             MR. LANDES:  Yes.  And not even --

16             THE COURT:  Well, that's all we're dealing with,

17   isn't it.

18             MR. LANDES:  Yes, but not even all of those 16 are

19   customers, Your Honor.

20             THE COURT:  Well, my only point is you're picking one

21   in which the only way you can respond is to the ones that

22   they've identified.  Okay.

23             MR. LANDES:  But, Your Honor, so --

24             THE COURT:  Sure.

25             MR. LANDES:  I'm sorry.

```
1              THE COURT:  Please, I want this to be -- I want this
2    to be as informal as we can.
3              MR. LANDES:  RFP 28, which was also on your list,
4    same issue.  RFP 29, also on your list, same issue.  We don't
5    know who these customers are.  Relay has 80,000 customers,
6    Your Honor.  80,000.
7              THE COURT:  Yes.
8              MR. LANDES:  What are we supposed to do when they
9    say, well, you haven't been at this company for five years.
10   When you left, we had, I'll say, far fewer than 16 customers.
11   But we want you to go through your 80,000 customers and
12   produce all the documents related to those customers that have
13   to do with -- well, any of those who at some point were one of
14   our customers or were one of our perspective customers.  We
15   don't know who we're supposed to be looking for.
16             So what we said in these responses was we'll take the
17   16 -- for seven months we've been saying if you have more,
18   tell us who they are and we can talk about them.
19             But that's the issue we face with a lot of these
20   RFPs.
21             THE COURT:  Okay.  So why should I let you, the
22   plaintiff, how can now you ask for anything more than the 16
23   customers?
24             MR. CHALLY:  Simply put, Your Honor, because that's
25   not the scope of our requests.  Those that we've looked at, I
```

1  agree.  They do mention --

2          THE COURT:  But how do they know who are actual -- or

3  former customers or are you traveling under the word

4  prospective?

5          MR. CHALLY:  I think there are two things.  First --

6  and I know you have this perspective, but these were our --

7  the founders of RoadSync.

8          THE COURT:  I understand.

9          MR. CHALLY:  And they were familiar with customers

10 and prospective customers at the time that they left RoadSync.

11         So it is not true to indicate that they had no

12 awareness of who those customers might be.

13         But I will acknowledge, freely, that those specific

14 requests that relate to customers specifically do have a

15 natural limitation.  It is more complicated to identify

16 documents responsive to these requests than it is to identify

17 documents that are responsive to still other requests.

18         The question here, from our perspective, is more

19 prominently displayed if you look at Request For Production

20 Number 10.

21         Request For Production Number 10 seeks all

22 communications concerning RoadSync, RoadSync's trade secrets

23 or RoadSync's products and services.

24         And in response to that particular request, we have

25 this key customer limitation.

```
 1              THE COURT:  Which is, in my opinion, silly and kind
 2    of indefensible.
 3              And what do you say about that?
 4              MR. LANDES:  Which -- RFP 10, Your Honor?
 5              THE COURT:  10.
 6              MR. LANDES:  So I'll say, again, all communications
 7    concerning RoadSync, if Mr. Droege receives an email with --
 8              THE COURT:  No, it's --
 9              MR. LANDES:  -- with benefits information, medical
10    insurance information.
11              THE COURT:  No, I -- okay.  Okay.
12              MR. LANDES:  Pay information.
13              THE COURT:  Then it ought to be RoadSync's trade
14    secrets or product of.
15              MR. LANDES:  That -- but that's what we agreed to
16    produce in response to 1 and 2, right?
17              THE COURT:  I will tell you, I mean, I think two
18    lawyers who want to move this case forward could get in a room
19    and could read this one and could say, yes, what you're
20    entitled to is all communications regarding RoadSync's trade
21    secrets.  And there may be RoadSync's products and services.
22    We could talk about that.
23              I don't know why that hasn't happened.  I can't for
24    the life of me understand it.  I can't.  But now I'm sitting
25    here, maybe it becomes a little clearer.  Because we have a
```

```
 1  series of disputes and you're talking about the ones where
 2  they're utterly -- with them pushing a limit beyond the 16 is
 3  utterly indefensible.
 4          And then I ask them a question about that one, and
 5  the plaintiff then gives me ones where the defendant is
 6  utterly indefensible.  And you are so both utterly
 7  indefensible on your own parts that you now can't resolve a
 8  dispute.
 9          So let's go through each one of them.  Okay?
10          1 and 3, I'm removing all of the limitations.
11          I think I'm going to get the ones that are at issue,
12  if I'm reading the list right.
13          MR. LANDES:  Well, what -- I think we'd spoken about
14  2 before.  I do have, again, a concern about Number 3, and
15  this is --
16          THE COURT:  I'm talking about 1.
17          MR. LANDES:  Um-hmm.
18          THE COURT:  I'm talking about 3.
19          MR. LANDES:  Yeah.
20          THE COURT:  I don't think 2 was on the list.
21          MR. LANDES:  I'm sorry.  Then I misunderstood.
22  Because I do have a concern with 3.
23          THE COURT:  I'm not talking about 3.  I don't think
24  it's on the list.  I think --
25          MR. LANDES:  I thought you had just said 3.
```

```
 1              THE COURT:  I'm sorry.  I don't think 2 is on the

 2    list.

 3              MR. LANDES:  Oh, okay.  Yeah.

 4              THE COURT:  You have a concern about 3?

 5              MR. LANDES:  I have a concern about 3.  All documents

 6    that Barkoff and Droege created at dot, dot, dot RoadSync.

 7    They were at RoadSync for four years, Your Honor.

 8              THE COURT:  Yes.

 9              MR. LANDES:  Every single thing that they created in

10    that four-year period?  All their personal emails?  All their

11    side projects?  This is -- these are the sorts of limitations

12    that we're imposing.

13              THE COURT:  Listen to me.  I'm not arguing about

14    those.  Okay?

15              MR. LANDES:  Okay.

16              THE COURT:  The only objection that's been raised is

17    an objection as to whether you can limit responsiveness based

18    upon a list of the 16 customers, that referenced the 16

19    customers.  I want to be clear about that.

20              MR. LANDES:  I see.

21              THE COURT:  If you have other objections that

22    everything that they ever created when they were there for

23    years is not relevant, so be it.

24              MR. LANDES:  Okay.

25              THE COURT:  I am simply saying that amongst the
```

```
 1  reasons to withhold something cannot be whether or not it
 2  includes or refers or relates to one of the 16 customers.
 3          Do you understand?
 4          MR. LANDES:  Yes.  I appreciate that clarification,
 5  Your Honor.
 6          THE COURT:  All communications concerning RoadSync,
 7  their trade secrets or their products and services.
 8          MR. LANDES:  Which -- I'm sorry, which one was that?
 9          THE COURT:  Number 10.
10          MR. LANDES:  10, okay.
11          THE COURT:  I think, I think two earnest lawyers
12  could resolve this one.  It ought not be limited.  But the
13  only thing in front of me, the only thing in front of me on
14  this that was brought to me even arguably within time is
15  whether the limitation by referring to one of the 13 customers
16  or 16 customers is a legitimate basis for holding.  It is not
17  for this one.
18          This one, Number 13, same thing.  This one should not
19  be limited in production by having it also relate to one of
20  the 16 customers.
21          MR. LANDES:  So for 13, Your Honor, I'm sorry, but
22  I'm going to need some clarification here.
23          Because otherwise, this -- I mean, these are five
24  people who know each other personally.  I don't know what I'm
25  supposed to be looking for other than just handing over their
```

1  cellphone.

2        THE COURT:  I think -- well, have you raised other

3  arguments?  All I'm doing is striking your reference to -- you

4  have to produce responsive to this documents, but not the part

5  and limited to the 16 entities.

6        MR. LANDES:  So we objected on a number of grounds,

7  right?

8        THE COURT:  Right.  But then you agree to do

9  something.

10       MR. LANDES:  So, right.  What we agreed to, because

11  this was the best that we could come up with, was to the

12  extent these people were talking about the 16 customers that

13  you've said are relevant, we'll produce those.

14       But otherwise, again, this is five people.  They're

15  asking for every single communication between these five

16  people who were friends and coworkers for a year-long period,

17  every single thing.  Lunch plans.

18       MR. CHALLY:  Your Honor, if I may.

19       MR. LANDES:  Their kids at school.

20       MR. CHALLY:  I don't believe that's accurate.  The

21  request, for sure, is broad, but it's also true that the

22  parties negotiated search terms.  And the search terms are

23  intended to focus the search.

24       THE COURT:  Right.

25       MR. CHALLY:  What we are then asking is that they

1  produce the documents that then hit those search terms.

2          THE COURT:  And that's all I'm -- all I'm doing is

3  saying the basis for withholding cannot be that it has to also

4  relate to one of the 16 entities.

5          MR. LANDES:  But does it even have to relate to

6  RoadSync, Your Honor?

7          THE COURT:  I don't know the answer to that.  All I'm

8  saying is it does not have to relate to the 16 entities

9  identified in the list.

10          I don't know how close or well done your search terms

11  are.  But if you negotiated search terms intended to target

12  Number 13, which is not a very broad one.

13          I mean, is it really broad?

14          MR. LANDES:  Yes, Your Honor.  It's every single

15  communication between five people --

16          THE COURT:  In a year.

17          MR. LANDES:  -- for a year.

18          THE COURT:  In a year.

19          MR. LANDES:  Every single -- these are coworkers and

20  friends, Your Honor.

21          THE COURT:  Okay.

22          MR. LANDES:  Every single communication in any form

23  between any of five people in a year.  That's a lot,

24  Your Honor.

25          THE COURT:  Okay.

1          MR. CHALLY:  In a year in which they all --

2          THE COURT:  Hold on.

3          MR. CHALLY:  Sorry.

4          THE COURT:  And did you-all have search terms that

5    were intended to find relevant documents to this?

6          MR. LANDES:  Yes, Your Honor.  And it was limited to

7    the 16 customers.

8          THE COURT:  What were the other search terms?

9          MR. LANDES:  There were other search times we had.

10   RoadSync was a search term.  Right?  There were other search

11   terms.

12         THE COURT:  Perfect.

13         MR. LANDES:  But, Your Honor, to the extent that they

14   were responsive on other issues, they were already produced.

15         THE COURT:  Well, hold on.  Then it doesn't matter.

16         MR. LANDES:  Well, again, Your Honor --

17         THE COURT:  If you're telling me -- you're asking me

18   does it also have to relate to RoadSync.  And you have it as a

19   search term.

20         MR. LANDES:  But again, Your Honor, there was a pivot

21   here.  Which was if it hits on a search term, it has to be

22   produced.

23         One of the search terms was checkout, right?

24   Checkout.  Which is used ubiquitously in every single -- every

25   single commerce system in the world, right?

```
 1              And so any email --

 2              THE COURT:  You mean like I was at the checkout in

 3   the grocery store.

 4              MR. LANDES:  Sure.

 5              THE COURT:  Okay.

 6              MR. LANDES:  Or Amazon.

 7              THE COURT:  I think you're crossing into the absurd.

 8   Isn't checkout one of the systems at issue in this case?

 9              MR. CHALLY:  Yes, for both RoadSync and Relay.

10              THE COURT:  Okay.  So I suspect, I suspect that if

11   these people in the one-year period were talking about

12   checkout, I don't know, but I suspect there were very few at

13   like, hey, I was thinking about this in the checkout line at

14   Publix.  I doubt that.

15              MR. LANDES:  No.  I'm telling, you, Your Honor --

16   Your Honor, the overwhelming majority, the term that is the

17   biggest problem term is checkout.

18              THE COURT:  Okay.

19              MR. LANDES:  Which we agreed to run as part of a

20   compromise.  But when we look through these, there are,

21   indeed, Your Honor, tens of thousands, maybe hundreds of

22   thousands of emails, automated emails that just have the word

23   checkout in some footer.

24              THE COURT:  Okay.  Well, you-all can decide whether

25   those need to be produced.  But for this one, you have search
```

1    terms.  It's limited to five people in one year with search

2    terms.  So it's not going to get everything they talk about.

3          My only ruling is to then require that they're

4    talking about one of the 16 customers is unreasonable, given

5    the allegations in this complaint.

6          This is a theft of trade secrets case.  It's not from

7    the very start, we were focused on these 16 customers.  That's

8    not what they allege.

9          The 16 customers was a limitation on discovery that

10   was put in place in a moment by you-all to get moving.

11         To then say that it has to be now a limit on

12   everything else is, in my opinion, unreasonable.  If you

13   didn't negotiate good search terms on the front end, I'm

14   sorry.

15         MR. LANDES:  Well --

16         THE COURT:  You-all can talk more about that.

17         MR. LANDES:  So, I'm sorry --

18         THE COURT:  I read through the discovery or the items

19   that were filed at 160 -- no, attached to 160.  It was 160-9,

20   160-10, 161-1, 161-2.  All of this had a series of back and

21   forths about this issue.

22         I think that this limitation to the 16 customers was

23   an interim position posed by the defendant to a number of

24   requests, some of which were backed off.

25         If you look at I think it's -- it's either 161 at 7,

1  161-7 or 161-2 at 5.  The defendant, you-all were objecting to

2  a number of other ones, 4, 5 and 30.  But they were not

3  asserted later.  And I read the defendant's response there in

4  the communications back and forth.

5         Because I do believe that the discovery responses are

6  pretty clear.  Although the way you're now describing it to me

7  makes me think I'm adding clarity that doesn't exist.

8         But at any rate, in the internal back and forth

9  between the parties, I thought that the defendant's

10  explanation of what they would and would not produce was, to

11  say the least, confusing and, frankly, very hard to

12  understand.

13         There was a lot of we'll produce this with this and

14  that, but not this and not that, particularly in response to

15  very straightforward discovery responses.

16         I think because of that, it would be very unfair to

17  hold plaintiff to this, and it must relate or refer to one of

18  the 16 customers as an additional limitation on all of their

19  discovery responses or this series.

20         I do think that the plaintiff should have raised this

21  sooner, probably when they first got the written discovery

22  responses.  I think that's at 161-3.

23         But plaintiff did raise it, albeit on the last day of

24  written discovery, I think is the record; isn't that right?

25             MR. CHALLY:  I think, Your Honor, there was -- to be

1  clear, the responses were what they were served in March.  And

2  we did not -- our predecessor counsel did not raise that with

3  you pursuant to the Court's procedures.  There were,

4  nevertheless, discussions beginning in March through May as to

5  the search terms.

6        THE COURT:  It didn't come to me until the last day,

7  is my question.  It's a simple question.

8        MR. CHALLY:  I'm sorry.

9        THE COURT:  I think the answer to my simple question

10  is it was brought to me the last day.  I think the answer is

11  yes.

12        MR. CHALLY:  Sorry.

13        THE COURT:  Is that right?

14        MR. CHALLY:  Correct, yes.

15        THE COURT:  Okay.  So they got it in right under the

16  wire.  So I'll continue to go through these.

17        But I can't help if the other search terms are not

18  very good.  But to add this additional one is what I'm saying

19  is too much.

20        MR. LANDES:  So you -- Your Honor, just -- just to

21  put a little bit of context here.  I mean, this was all part

22  of a six-month long discussion -- not six months -- four-month

23  long discussion that we were having about discovery responses,

24  search terms, the scope of review, the scope of production,

25  and everything was negotiated holistically where the parties

1  made tradeoffs and compromises and horse trades that say,

2  well, we'll have a broader search term, but that's in exchange

3  for limiting what we're going to produce in response to --

4          THE COURT:  So are you suggesting to me that -- are

5  you suggesting to me that counsel -- that the defendant agreed

6  to this knowing this would be the limitation?

7          I don't want you to show me emails on this.

8          You're suggesting to me that prior counsel agreed to

9  something that this lawyer's not agreeing to?

10         MR. LANDES:  Absolutely agreed to these search terms

11 with our RFP responses in hand.

12         THE COURT:  Okay.  Then let's have a hearing on that.

13 And if a lawyer for them comes and says that that was agreed

14 to -- because I'm not letting them change positions.  If it

15 was an agreement that was in place, and you want to call --

16 who was the lawyer?

17         MR. CHALLY:  We submitted a declaration from --

18         THE COURT:  Was it Ben Fox?

19         MR. CHALLY:  It was Kyle Mooney.  We submitted a

20 declaration from Kyle Mooney.

21         THE COURT:  He agreed to it?

22         MR. CHALLY:  No, sir.

23         THE COURT:  Okay.  Do you want to call him as a

24 witness?  If you want to call him, I'll have a hearing on it.

25         MR. LANDES:  Your Honor, I might be getting a little

1  confused about what we're talking about, but the search terms

2  were absolutely agreed to, absolutely agreed to.  And they

3  were agreed to when they had our RFP responses in hand.

4          And the discussions about what the search terms would

5  be were in the context of these discussions about what our

6  responses were.  So did they reserve the right to come and

7  challenge something later, I guess potentially.

8          THE COURT:  Okay.

9          MR. LANDES:  But we -- I -- we didn't hear about it

10 until the very end, after we had negotiated search terms.

11         And if we had known that different issues were in

12 play, we would have negotiated different search terms, right?

13 This is -- this is work that was done five, six months ago.

14         THE COURT:  I'm giving you your choice.  If you think

15 that prior counsel agreed to something, and said when if

16 you-all run search terms and produce it, if it leads -- if it

17 also involves one of these 16 customers, I'll hold the

18 plaintiff to that position.

19         And if what you want to do is you want to have a

20 hearing and you want to confront him with evidence and you

21 want to ask him those questions, I'll judge credibility.

22         MR. LANDES:  So, Your Honor --

23         THE COURT:  I mean, that's fine with me.  But I'm

24 sitting here and I'm not able to do that without that.

25         MR. LANDES:  So here's -- here's what I'm able to

1  say, Your Honor.  And I -- I don't want to unnecessarily

2  extend proceedings.  Our goal is to bring this to a close.  On

3  February 2nd, we sent a letter with the 16 customers

4  distinction.  We never received a response.

5          On March 3rd, we reiterated that.  We never received

6  a response.

7          On March 23rd, we served amended RFP responses with

8  these limitations.  Never received a response.

9          In the shadow of all of this, we are negotiating

10  search terms that have the 16 customers in them, limiting

11  certain search terms, as requiring a hit on the 16 customers.

12          Those I can say and I don't -- I don't think

13  Mr. Mooney denies this.  And if he does, I would like to

14  cross-examine him.  We absolutely agreed on those search

15  terms.  That I can say without a -- without a shadow of a

16  doubt.

17          THE COURT:  They're not trying to expand search

18  terms.

19          MR. LANDES:  Well, they are.  They say that -- okay.

20  Well, if they're not, they're not.

21          THE COURT:  We're not adding more than 16 customers.

22  It's too late for that.

23          MR. LANDES:  Okay.  But the -- the -- then -- so all

24  of those negotiations happened.  We -- we have silence from

25  RoadSync on this limitation that we are not hiding.  It's in

1   every letter we send that gets ignored.  It's in written

2   responses that get ignored.  We have meet and confers that

3   Your Honor orders, where you order the parties to resolve

4   discovery disputes.  It's never brought up.

5        And then like Your Honor said, the first time it

6   comes before Your Honor is the very last day of discovery,

7   when depositions are supposed to be finished.  When we've

8   already done our entire document review.

9        That's when this issue comes up.  That's -- that's a

10  problem for us.  Right?  Because it -- it is rewarding the

11  plaintiff for their own negligence in addressing this issue.

12  They're -- it almost feels like some sort of estoppel issue.

13       THE COURT:  Sure.  Well, if you want to do that, I'll

14  do that, too.

15       But you're suggesting that it was -- well, I thought

16  at first you were suggesting that he agreed to it.

17       Now I think you're suggesting that he didn't

18  necessarily agree to it, but he, by silence acquiesced to it.

19       MR. LANDES:  I can't say what was in his head,

20  Your Honor.

21       THE COURT:  Well, if you want to have him here as a

22  witness, I'm happy to listen to it.

23       MR. LANDES:  I'm -- I'm --

24       THE COURT:  If your client is prejudiced by having

25  agreed, for example, to these search terms because we're also

1  going to have this limitation, then I will listen to that.

2        But otherwise, I think adding this additional request

3  or condition of the 16 customers for some of these is a bridge

4  too far.  But I'll give it to you.

5        Do you think you can put on evidence that will show,

6  that will make me conclude that they acquiesced to something

7  that has hurt your client?  Not hurt your client in terms of

8  they've got to produce something they don't want to produce,

9  but that your client would not have agreed to search terms if

10 this additional thing had not been agreed to?

11        MR. LANDES:  That's -- and it's hard -- I don't know

12 that Mr. Mooney would have that in his head.  And it would be

13 hard to go back and retrace, as Your Honor has seen, it's

14 difficult to retrace five months of meet and confer emails.

15        But I can tell you from being on these calls that

16 this was center stage, this issue.  This was not something

17 that we were sneaking in through the backdoor.  This was

18 absolutely -- you can see, it's in the responses.

19        Your Honor is -- is seeing them.  And it was because

20 we felt that these RFPs were overbroad and they were unclear.

21        And so we said, okay, here's what we'll do.  We'll

22 produce to the extent they relate to the 16.  And if you have

23 others, tell us who they are.  By all means, we want to know

24 what this case is about.

25        And so that is what -- that was the -- that is what

1   we were discussing throughout this entire process.

2           THE COURT:  Okay.  Well, I'm going to rule on the

3   fact that the plaintiff brought it, albeit it on the last day

4   to me.  And I don't have evidence that there was any reliance,

5   detrimental reliance, on it by the defense.

6           So I'm going to, again, for Number 10, I'm going to

7   strike the requirement or grant the motion by the plaintiff

8   that this response cannot be limited by the requirement that

9   it also identify the 16 entities.

10          MR. LANDES:  Understood.

11          THE COURT:  13.  The same thing for 13.

12          MR. LANDES:  So 13, Your Honor, again, this is one

13  where it -- this one I can say is a detrimental reliance

14  issue.  Right?

15          Unequivocally, on our part, because what we said was

16  the compromise here was we'll do the 16 customers.  That will

17  be our limitation instead of producing every single email

18  between these people that might hit on any random search term.

19          THE COURT:  And you think that they acquiesced to

20  that?

21          MR. LANDES:  Your Honor, we didn't hear about it

22  until the last day.  We would have given a different response

23  to this RFP otherwise.  We would have said, okay, we won't --

24  we won't do the 16 customers.  We'll do RoadSync's products

25  and services, but not an undefined set of customers.  We would

1  have done something different here.

2      MR. CHALLY:  Your Honor, I --

3      MR. LANDES:  Or we would have said about their exit

4  from RoadSync or about their creation from Relay, right?  We

5  would have said something different here.

6      THE COURT:  Okay.

7      MR. LANDES:  But the 16 customers is what we thought

8  was a reasonable compromise.  And then we never hear anything

9  about it.

10     THE COURT:  Yes.  I don't think you can put that much

11 on silence, and so I'm not going to do that, either.

12     19, all documents concerning the solicitation of any

13 investment in or funding for Relay including communications

14 and documents shared with potential investors or funders.

15     Anything anybody wants to say about that?

16     I'm assuming there were search terms that hit on

17 that?

18     MR. LANDES:  I don't know if they're limiting this to

19 search terms.

20     MR. CHALLY:  Of course we are.  We --

21     THE COURT:  I thought all of this was limited to

22 search terms.

23     MR. CHALLY:  It is.

24     THE COURT:  I'm going to have the same ruling on 19.

25     MR. LANDES:  So I just want to be clear, Your Honor.

1  We'll look for this, but if -- but if a document was shared

2  with an investor that doesn't hit on a search term, that's not

3  something that we have to go out and find and produce?

4          THE COURT:  I think y'all have agreed on that, right?

5          MR. CHALLY:  That's correct.

6          MR. LANDES:  Okay.  That's good.  That's different

7  from what we were hearing in the meet and confer.

8          THE COURT:  Same on 21.

9          MR. LANDES:  And so, I mean, again, Your Honor, this

10  is -- this is where I -- where I have a challenge, right?

11  Because the word -- the word checkout is ubiquitous,

12  ubiquitous.  It is not a trade secret term.  And it is used

13  frequently without any relation to RoadSync, any relation,

14  whatsoever.

15          THE COURT:  Again, that's fine.  I just don't think

16  limiting it to the 16 is a legitimate limitation.

17          MR. LANDES:  But here's -- again, this is -- this is

18  another place, Your Honor, where we -- we only

19  included -- this was one of the -- and Mrs. Stone can testify

20  to this.  The last term that we agreed to include, the one

21  that was hardest fought was checkout.  That was the hardest

22  fought term.  Because it was returning enormous volumes of

23  false positives.

24          THE COURT:  So if I think that former counsel will

25  say that they insisted on checkout, but gave way, but as a

```
 1   concession agreed to the customer list, then I'll hear that.
 2        MR. LANDES:  But, Your Honor, it didn't even come up
 3   for them, right?  It didn't even come up -- we didn't -- it
 4   had been on the table for four months.  And we said, okay.
 5   And they -- for four months, they had had this 16-customer
 6   limitation.  And they never said, well, if you include -- you
 7   need to include RoadSync and also, by the way, we agree to
 8   this thing that you put on the table and we never mentioned
 9   for four months.  Did they say that?  No.  That's not in an
10   email, Your Honor.
11        THE COURT:  I don't think for four months they said
12   if you -- if you think he'll say for four months, we knew all
13   the production would be limited to something that also
14   discusses these customers, I'll listen to it.
15        MR. LANDES:  Your Honor, it's in the
16   February 2nd letter.
17        THE COURT:  All right.  Let me see it.
18        MR. LANDES:  It's at Docket 164-1.  We go request by
19   request to say here are the 16-customer limitations.
20   February 2nd.  And that was -- that was memorializing meet and
21   confers that we had in December and January.
22        THE COURT:  164-1?
23        MR. LANDES:  Yes.
24        THE COURT:  Which page do you want me to look at?
25        MR. LANDES:  Page --
```

1          THE COURT:  This is who to who?

2          MR. LANDES:  This is from Quinn Emanuel to former

3   counsel.

4          THE COURT:  Right.  And you're saying they didn't

5   respond?

6          MR. LANDES:  Oh, I'm sorry.  I'm sorry.  I was

7   looking at the wrong -- the page I had was wrong.

8          Am I looking at the wrong item?  Sorry.

9          I might have been looking at my notes and they are

10  wrong.

11         THE COURT:  Yes.  But where's their response?

12         MR. LANDES:  There was no response.  No response.

13  We -- we asked -- are you going to respond to this letter?

14  Never received a response.

15         THE COURT:  Okay.  I'm going to continue with this

16  same --

17         MR. LANDES:  Oh, yes.  Here we go.  Page 7.  It

18  begins at Page 7 of 164-1.  We lay out the 16-customer

19  limitation and then we go through, we're all -- on the

20  following pages request by request saying we're going to limit

21  it as described above.

22         And here's the requests that we're going to do that

23  for.  Never received a response to this letter.

24         And we say it again in our March 3rd letter.  And

25  never received a response to that.

```
 1          And then we say it again in our March 23rd letter.
 2   Never receive a response to that.
 3          THE COURT:  Well, you see, this is the one I was
 4   referring to.  I reviewed this letter.  So this one, you're
 5   referring to 164-1 at Page 6 of the PDF, 6 of the letter?
 6          MR. LANDES:  I think it begins -- no.  Well, that's
 7   where the discussion sort of starts.  But yeah, the actual
 8   limitation is on Page 7 of the letter and 6 of the PDF.
 9          THE COURT:  Right.  I've mentioned this before as
10   sort of the interim position.  Because this is not your
11   ultimate position.  Because you don't ultimately interpose
12   this objection for 2, Request 2, or request -- I think there's
13   one other request that's not included down the road.  And then
14   you do impose it for 21 and 19.
15          MR. LANDES:  So --
16          THE COURT:  So this is what I was referring to later
17   when I said it was an interim.
18          And in addition, what you have blacked out here is --
19   I mean, frankly, it's hard for me to understand what all is
20   being said here.
21          This does not move the needle on my position, and so
22   I'm going to keep the same position for 24.
23          MR. LANDES:  I'm sorry.  Let me go back to -- woops.
24   Sorry.  We also have a lot of windows open, Your Honor.  I'm
25   trying to go to 24.  Oh, okay.  Um-hmm.
```

1          THE COURT:  I'm not going to do it for 26.  I'm going
2    to leave 26 as is.
3          27.  27, it doesn't matter, because my understanding
4    is they've only identified 16 actual prospective or former
5    customers.
6          28, same thing.
7          29, same thing.
8          And 34, I think we've already discussed.  Same thing.
9          Okay.  Does everybody understand?
10         MR. LANDES:  Yes, Your Honor, understood.
11         THE COURT:  Okay.  I'm not going to expand beyond the
12   list of 16.  That was not raised timely.  And I'm not going to
13   do that.
14         That is certainly something that -- maybe I shouldn't
15   say it wasn't raised timely.  It wasn't raised completely and
16   timely.  It still hasn't been.  There's the 16 customers.
17   There's been no attempt to do more than that, that I can see.
18         MR. CHALLY:  We're not trying to expand the 16 key
19   customers.  We're just trying to remove that limitation.
20         THE COURT:  Okay.  All right.  Good.
21         All right.  The next one to discuss is 169, which is
22   also 170 docket entry.  That's the most, one of the most
23   recent.
24         But the most recent is 176, which is the 176-1 is the
25   filed unredacted version of your most recent one.  And this is

1　a bigger issue, I think.

2　　　　And here is where, in 176, the defendant asks for the

3　opportunity to file a pleading to strike a portion of the

4　defendant's -- I'm sorry, the plaintiff's identification of

5　trade secrets.

6　　　　And I'm trying to figure out, it seems like these are

7　somewhat related.  And so I'd like to talk about the best way

8　to address them.  But give me a second.  I want to try to

9　close some of these windows that I have up here.

10　　　　Okay.  All right.  There's in 169, one of the issues

11　is about Request 22, which seeks a complete version of Relay

12　Payment's source code.  The defendant says that they have

13　produced all of the previously identified source code.

14　　　　Is that right?

15　　　　MR. LANDES:  So any -- just to describe what

16　happened.  We took their trade secret ID, which is this

17　document that has a number of categories and a number of

18　specifics.

19　　　　For anything -- any category that's on that list, we

20　found the corresponding source code in Relay's system and

21　produced all of it, all versions of it.

22　　　　So take, for example, there's a category in

23　RoadSync's trade secret ID called invoicing, another one

24　called user management that relates to user names and

25　passwords.  We went into Relay's system and took all of the

```
 1  source code related to those things and all the other
 2  categories and produced all of it and all historical versions
 3  of it and all system logs related to it.  That's all been
 4  available for two months.
 5         THE COURT:  Okay.  So if they've done that, why
 6  should you get all of their source code?
 7         MR. CHALLY:  Two reasons, Your Honor.
 8         First, I don't know what they didn't give us.
 9         THE COURT:  But isn't that always the case in
10  discovery.  You ask them for documents, you ask them for
11  communications.  They give you what they have.  But you're not
12  allowed to have everything else to compare, right?
13         MR. CHALLY:  I agree.
14         THE COURT:  Okay.  So the fact that you don't know
15  what they haven't given you is not a basis to get their code.
16         MR. CHALLY:  The code is unique.  The code is unique
17  because, again, the contentions in this case are that the
18  people who were responsible for developing this business,
19  ultimately the people who were responsible for developing this
20  system then took all of that information and knowledge and
21  went to Relay and did the same thing there.
22         THE COURT:  No.  It's not that they took the code.
23  It's that they took the source code and used it.
24         MR. CHALLY:  I think to be -- and I don't -- I
25  understand your point, Your Honor.  And the very last thing
```

1    that I want to do is argue with you on those details.  I do

2    believe, though, that the complaint is broader than just the

3    source code.

4              THE COURT:  Okay.

5              MR. CHALLY:  And that's something that's addressed in

6    this discovery dispute statement and in others.

7              THE COURT:  All right.  So that's my question, is I

8    want to see where the requests that you have got, you've got a

9    dispute in what's been filed as 169 as to Request 22.

10             MR. CHALLY:  Yes, sir.

11             THE COURT:  Request 93 and --

12             MR. CHALLY:  94.

13             THE COURT:  -- 94.

14             And I want to figure out where resolution of that

15   turns on the bigger issue that I think has now come up in 176,

16   which is whether or not the plaintiff's claim is limited to

17   source code in addition to customer list.

18             MR. CHALLY:  Understood.  From my perspective, first

19   focus on Request 22.  Request 22 is for their source code.

20   The contention that I asserted to you, that we believe -- even

21   if you want to limit that contention to the source code, the

22   idea here is that the very same person who wrote the RoadSync

23   source code is now employed by Relay and he's responsible for

24   writing the Relay source code.

25             And so we simply want the opportunity to review that

1   system.  Not -- of course not for our client to review that

2   system.  Solely for our expert to be able to have access to

3   the full set of the source code.

4        I appreciate some of the information that Mr. Landes

5   has described to us in the last few days, only the last few

6   days, but I appreciate the information he's described to us

7   then as to how they had their expert go about trying to

8   identify the source code that they gave to us.

9        I'm happy, particularly given the Court's comments at

10  the outset of this hearing, I'm happy to have our expert

11  review what they can produce in light of what they told us, to

12  then understand better what it is their expert did.  And then

13  engage in good faith discussion as to whether our expert

14  requires something more.

15       But what I can't be in the situation of having

16  been -- of them producing what they have selected, selected in

17  circumstances that I don't fully appreciate how they went

18  about selecting it and I have no ability to ask for something

19  further.

20       To me, the simplest way to do this is we -- our

21  expert is reviewing their source code.  We will have an

22  opportunity to depose their expert, who I understood was

23  responsible for deciding what portions of the Relay source

24  code they wanted to give to us and what they didn't want to

25  give to us.

1          Let that process then answer this question.  Let that

2    process determine whether there are components of their code

3    that either our expert needs or their -- or were based on the

4    deposition of their expert that we believe we're entitled to.

5          I think that's simplest.  Now, I believe we're

6    entitled to the entirety of the code.  And I believe that

7    we're entitled to the entirety of the code because of the

8    sweeping nature of our claims.

9          And frankly, the support that exists for those

10   claims, that these are the same people who wrote the system at

11   both places.  But I'm happy to streamline this process to get

12   through, because we -- we hear you.

13         THE COURT:  Is there something wrong with a guy if he

14   wrote it at one place going to another place and writing it

15   there?  A man or woman doing that, rewriting it from scratch,

16   not taking it with them?

17         MR. CHALLY:  If he --

18         THE COURT:  But just having in his or her mind what

19   to do and, you know, the person did it once, the person can do

20   it again.  Is that wrong?

21         MR. CHALLY:  Absolutely.  We believe it could be

22   wrong under these circumstances.  Circumstances that include

23   obligations that any creation that this particular individual

24   made while he was at RoadSync, were RoadSync's.  That was not

25   his information to take.  That was RoadSync's information to

1  take.

2      And further, we believe that is, in fact,

3  confidential.  That it is, in fact, a trade secret.  This

4  isn't just I'm figuring out how to walk down the street.  It

5  is -- it is a very bespoke product that other than RoadSync

6  and Relay doesn't exist much in the market.

7      And that's our contention.  So we're simply trying to

8  uncover that.  And of course they can raise this position that

9  they don't believe that these particular components of the

10 code are confidential or -- that's all fine.

11     We're simply trying to understand what we have, what

12 the facts are.  And we need to know what their system does

13 through the code.  We also need to know what their systems

14 does through the design specifications, whether this -- this

15 is where we're bleeding then into 93 and 94.

16     THE COURT:  Which you think -- okay.  All right.  I

17 don't think you are entitled to a complete version of their

18 source code.

19     MR. CHALLY:  Okay.

20     THE COURT:  But if you think going through the

21 interim steps that you're trying to go to will get you to

22 where you can make a more focused request, that's fine.

23     MR. CHALLY:  Thank you.

24     THE COURT:  Okay.

25     MR. LANDES:  Your Honor, can I -- can I respond

 1  briefly?

 2          THE COURT:  Yes.

 3          MR. LANDES:  And here's my concern, which is that

 4  this is just more needless delay of the process.  And let me

 5  explain.  RFP 22, that's a low number.  That was in the very

 6  first set of RFPs.  And we said before I cited you to 164-1,

 7  the February 2nd letter, we said at 164-1, at Page 11, we are

 8  not producing all of our code.

 9          Tell us what parts are relevant in a trade secret ID,

10  and we will produce the corresponding code.  We said that on

11  February 2nd.

12          Your Honor might recall there was quite a bit of

13  briefing and discussion.  I was here in front of Your Honor on

14  January 11th, and we were talking about this, understanding

15  what's at issue so we could produce it.

16          Your Honor issued an order on May 19th saying that

17  their trade secret ID wasn't good enough.  They needed a new

18  one.

19          We said give us the new trade secret ID, and as soon

20  as you do, we'll produce our corresponding code.  It took five

21  weeks to get a trade secret ID.

22          June 23rd is when we finally got it.  It was still

23  deficient, they served amendments even recently, as soon as --

24  as soon as they provided us that ID, we made the code

25  available.  Now, I think this piece right now, Your Honor, is

1  critical.

2           By late June, late June, we had that code available

3  for their review, all of the code that corresponded to their

4  trade secret ID, all prior versions, all logs.

5           It is now the end of August, two months later.  The

6  total amount of time that their expert has spent looking at

7  the code that we produced -- are you ready, Your Honor?  31

8  minutes.  31 minutes in two months.  Looking at all of the

9  code we produced.

10          THE COURT:  Okay.

11          MR. LANDES:  So he's talking about a process -- well,

12  let's go into expert discovery.  Let's take more time.  Let's

13  figure this out.  Let's serve a supplemental request.

14  Your Honor, this --

15          THE COURT:  I'm not.

16          MR. LANDES:  Yeah.

17          THE COURT:  I'm not.

18          MR. LANDES:  Okay.  But --

19          THE COURT:  I'm not talking about more time.

20  Everything we're doing is going to depend, in the first

21  instance, about what happened before the close of discovery.

22  Discovery is going to continue on.  I've already said that.

23          But the decisions that were made and the things that

24  were asserted before July 13th, when I think discovery was

25  supposed to close, is going to be a guide in this.

1          I think what I have ruled on already could have gone
2     the other way.
3          I think that the plaintiff, particularly in regards
4     to the objection for the limitation of the 16 customers, I
5     think it was raised on the very last day.  I don't think
6     that's consistent with discovery closing on that day.
7          I think when you have something as early as they had
8     it, which I think was March, when they had the RFP responses,
9     I think a lawyer ought to respond and raise issues more
10    expeditiously.
11         But I'm using my discretion because of the things
12    I've already said, that I don't think the defendant's
13    responses were very clear.  And because of my knowledge of how
14    discovery has gone and the difficulty that it's been under in
15    this case, I'm using my discretion to allow that to continue.
16         That should not be confused with the notion that I'm
17    going to throw out the idea that we all have to do things on a
18    certain timeline.
19         And so when he comes -- what he's telling me right
20    now is he's not ripe to tell me what he thinks he's ready to
21    do.
22         And when he comes back to it, the first thing you
23    ought to say is whether he ever raised this issue prior to
24    June 15th.
25              MR. LANDES:  Very good, Your Honor.  I will -- I will

1   hold that.

2          And if I could make one other point for the record

3   that I think is important, that relates back to 176, a comment

4   on what Mr. Chally said, which was he said -- and I thought

5   this was quite remarkable.  He said the reason we need to look

6   at the code is because we know the same person, who is not

7   even a defendant in this case, by the way, worked on the code

8   at RoadSync and he worked on it on Relay.

9          What you did not hear and which is contrary to the

10  allegations in the complaint, what you did not hear was we

11  need to do this because we know they took the code with them.

12  And I think there's discovery --

13          THE COURT:  I understand.

14          MR. LANDES:  Discovery, I think, Your Honor, has

15  fairly conclusively disproven that.

16          And so now we are in a situation, as I predicted, I

17  can say you and I both predicted, Your Honor, that once they

18  found that the code hadn't been taken, the -- they would try

19  to change the case at the last minute.

20          And that was -- that's exactly what we discussed on

21  January 11th.  I'm looking at the transcript starting at

22  Page 51.

23          This is Your Honor speaking.

24          You said:  I think it's great you've said your source

25  code.  But if you don't find their source code, if you don't

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA

1   find the source code in their system, meaning if plaintiff

2   does not find the source code in defendant's system, then

3   you're out of luck.

4           But what they, defendants, are afraid you're going to

5   do is you're going to pivot and say, oh, even though the

6   source code is not the same, what it is, is the way it's been

7   arranged, or you might have modified it in this way to make it

8   look different.  But really, you've got this similar

9   functionality.

10          And then you go and you say:

11          Recognizing the defendant's argument, what the

12  defendants are saying is it would be fundamentally unfair for

13  them not to know what to target during discovery.  If you can

14  just come in later and identify something different.

15          And that's exactly where we are right now,

16  Your Honor.

17          THE COURT:  And where are they doing that?

18          MR. LANDES:  Where -- they are doing that by saying,

19  well, Your Honor --

20          THE COURT:  In which filing?

21          MR. LANDES:  What do you mean, which filing?

22          THE COURT:  Where are they doing -- they're fighting

23  about Request Number 22 is not doing that.

24          MR. LANDES:  Oh, well, yeah, it's part of the

25  arguments we've heard about 22.  It's certainly in Requests 93

1  and 94.  And it's in their trade secret identification that

2  you brought up that we're looking to strike at 176.

3       THE COURT:  I think you're right about that.  I

4  think, I think -- can I see a copy of the first trade secret

5  identification?  I've got --

6       MR. CHALLY:  I don't have a physical copy of it.

7       THE COURT:  Okay.  I've got here, if y'all look at

8  176, it says on the top of Page 3, fact discovery, plaintiff

9  claimed only code is a trade secret not features and

10 functions.  Plaintiff stated as much in opposing the motions

11 to dismiss and the Court accepted that argument.

12       Likewise, until August, plaintiff's interrogatory

13 responses identified only code, not features and functions.

14       Only on June 23rd, after the deadline to serve

15 discovery requests did plaintiff claim in its trade secrets

16 features and functions in addition to the source code.

17       What's been cited, though, is the August 1st filing.

18 And that's the second supplemental.

19       Can I assume, then, that the first supplemental, on

20 June 23rd, included that information?

21       MR. CHALLY:  It did.

22       MR. LANDES:  Yes.

23       THE COURT:  And so is that the language -- I'm

24 looking at 176-2, which is the second amended supplemental

25 identification.  It has on Page 3 a statement:

1          In addition to the features and functions of the

2  system, the compiled source code is an independent trade

3  secret.  Was that added in the first supplemental?  Is that

4  where that gets added in?

5          MR. CHALLY:  In the June 23, yes.

6          MR. LANDES:  June 23rd.

7          THE COURT:  Okay.  I mean, what argument is there

8  that functions and features are part of it and not source

9  code?  I mean, isn't it pretty clear that this is a source

10  code, at least since the motion to dismiss stage?

11          Isn't that true?

12          MR. CHALLY:  Your Honor, no, I don't think that this

13  case is exclusively limited to source occurred.

14          THE COURT:  Have you read my order on the motion to

15  dismiss?

16          MR. CHALLY:  Yes, sir.  And I believe in that order,

17  you indicate that you are ordering -- suggesting that we

18  should reference the trade secret as source code and related

19  software.  And that's what we understand that to mean.

20          Now, I further would say that in the discussion that

21  Mr. Landes is referring to from January of this year, in which

22  there was a discussion of the trade secret identification, I

23  think you said there that -- Page 58 of that transcript, I

24  think you said that we should identify the source code files

25  and the functionality, which is what we then did.

```
 1            THE COURT:  Well, that's because -- hold on.  I have
 2    to look at that than in context.
 3            But I went back and I looked at your response in
 4    opposition to the motion to dismiss.
 5            Do you have that in front of you or the ability to
 6    get it?  It's Document 33.
 7            MR. CHALLY:  Yes, sir, I can pull it up.
 8            THE COURT:  I mean, you say, you identify the trade
 9    secrets.  And you say at Page 17, the complaint identified
10    specific categories of information in these downloads that
11    constitute trade secrets.  Customer list is Number One.
12    Prospective customer list is Number Two.  Financial analysis
13    is Number Three.  Product roadmap, work flows and confidential
14    user guides is Number Four.  Source code is Number Five.
15            I don't see how the complaint specifically identifies
16    as a trade secret the source code for RoadSync's proprietary
17    checkout software, which was saved on Droege's company-issued
18    laptop.
19            It does not rely on mere customer-facing software.
20    And that's the plaintiff's -- the defendant's argument was
21    that that's not a secret.  But on theft of source code.
22            So how today, or in June, do you -- and I said that
23    in mine, in my order.  I say the plaintiff does not claim
24    outward facing features are trade secrets.  It claims the
25    source code underlying those features is protected.  The
```

1  distinction between source code and the visible output of a

2  program is well established.

3      Defense never identified any information in

4  plaintiff's source code as opposed to plaintiff's outward

5  facing software that is even arguably public.

6      It seems to me as though I'm not leaving much room in

7  my order for anything beyond source code.

8      MR. CHALLY:  From our perspective, Your Honor, you

9  left -- made very clear that outward facing functionality was

10 not something you thought could be a trade secret in this

11 case.

12     We're not claiming that outward facing functionality

13 is what we are claiming to be a trade secret.  That's not what

14 we are attempting to identify in our trade secret disclosure.

15     What we are identifying in our trade secret

16 disclosure is that the source code is the way in which a

17 system does certain things.  And what we are contending is

18 that, of course, that source code can be a trade secret.

19     But also, the way in which that system does it, even

20 if the language of the code is slightly different from one to

21 the other, can nevertheless be a trade secret.

22     We understand we have a burden on that.  We

23 acknowledge a burden to prove confidentiality, that we have

24 reasonable -- employed reasonable measures to maintain the

25 confidentiality of those things, those features and functions,

1  and we, through discovery, will be prepared to meet that

2  burden.

3          But that can be a trade secret.  There are cases

4  suggesting as much.  Numerous cases that I could cite to you.

5  The law is --

6          THE COURT:  Okay.  I'm not suggesting you're wrong.

7  But where is that here?  Where is that here, other than

8  something that was filed in June for the first time?

9          MR. CHALLY:  The complaint identifies --

10          THE COURT:  No, no.  The complaint, I ruled on the

11  complaint and I said it was source code.  Because you-all said

12  it was source code.  I mean, I'm not limiting your complaint.

13  I'm just limiting the complaint to what you said in opposition

14  to a motion for summary judgment.

15          Has that argument been put out or discussed before

16  June 23rd?

17          MR. CHALLY:  We think it has, Your Honor.  We think

18  it has.

19          THE COURT:  Where?

20          MR. CHALLY:  In the complaint, where we identify that

21  it's not only just the source code, but it's the software.  We

22  think it's identified in the briefing on the motion to

23  dismiss, where we -- where you describe that it's not outward

24  facing features.  And we readily acknowledge that we're not

25  talking about outward facing features.

```
 1            We think it's further described in the hearing where
 2     we were required to provide a trade secret identification.
 3     And then we think it's described in the trade secret
 4     identification that we provided in June.
 5            THE COURT:  Not in your first one.
 6            Okay.  So here's what I'm going to do.  I'm going to
 7     let you file your motion.
 8            MR. LANDES:  Thank you, Your Honor.
 9            THE COURT:  And I'm going to let them respond.  And
10     here's what the response has to say.  The response has to have
11     a representation from former counsel that they always thought
12     this was part of the case.
13            MR. CHALLY:  Fair enough.
14            THE COURT:  Okay?
15            And then I'm going to have a hearing with former
16     counsel to testify that they always thought that this was part
17     of the case.  And that the reason they didn't put it, why they
18     didn't put it in the first trade secret identification.
19            And why -- when I said in my order that it is limited
20     to source code, why they didn't file a motion for
21     reconsideration.
22            Because I don't think it's possible to read your
23     pleading in opposition to summary judgment and my ruling on it
24     as giving much room for anything beyond source code.
25            And so I would like to have a -- I would like to have
```

1    a declaration from I suppose Mr. Fox.  I think he was the one

2    who was here most of the time, wasn't he?

3              MR. LANDES:  Mr. Fox and Mr. Mooney.

4              THE COURT:  From them, I guess from both of them, as

5    to why they did not file a motion for reconsideration, even

6    though they knew or believed I was wrong to limit it to source

7    code.

8              Why it was not identified in the initial disclosure

9    of the trade secret information.

10             When, if ever, they talked with opposing counsel

11   about this theory.

12             Okay?

13             MR. CHALLY:  Did -- of course.  Just one thing, so

14   that we're clear on the record, we would -- we will -- we will

15   provide that information.

16             I want to be clear, though, that doing so won't waive

17   any work product or attorney/client privilege.

18             THE COURT:  No.  They're arguing that new counsel has

19   come in and you're looking to change.

20             That's what you're arguing, right?

21             MR. LANDES:  Yes.

22             THE COURT:  Okay.

23             MR. LANDES:  Although I -- and I predicted it in

24   January.  I think old counsel would have done the same thing.

25             THE COURT:  Okay.  Okay.  I'm not saying that new

1  counsel can't change or that old counsel couldn't have tried

2  to do this.  We can argue about that as well.

3       But I think we ought to be straightforward on the

4  facts.  It's possible that this is what prior counsel was

5  always going to do and they just sat quietly when this was

6  brought up by counsel for the defendant, maybe with a little

7  bit of a knowing look at each other or something like that.

8  It's possible.  And they can say that.

9       If this is a decision that new counsel has made,

10  let's just treat it as that.

11       But what I don't want is somebody suggesting that

12  there was room in what we'd all been believing before, unless

13  there really was, because I think that's hard to believe.

14       MR. LANDES:  And, Your Honor, I mean, I don't want to

15  preview our motion too much, but I think another data point

16  here, one is interrogatory responses.

17       THE COURT:  I agree with you.

18       MR. LANDES:  But I think another data point --

19       THE COURT:  And they have -- you're going to put all

20  of these data points in your motion.

21       MR. LANDES:  We'll put them all in.

22       THE COURT:  And they're going to have to address

23  them.  And they're going to have to address them factually and

24  legally.  Their argument may be none of that matters.  We said

25  it on June 23rd, and we're entitled to do it.  And then I'll

1  rule on that.

2          Or it may be, Judge, we always wanted this, we always

3  expected this, and here's why it took us until June 23rd.  And

4  I'll rule on that.

5          MR. LANDES:  And, Your Honor, just to bring it full

6  circle, back to RFP 93 and 94, think those are illustrative.

7  Because those are the ones that they're not asking for source

8  code.  They're asking for things like well, just give us the

9  design of your system, people talking about how to design it.

10          THE COURT:  I read the deposition excerpts about coda

11  and linear.

12          MR. LANDES:  Right.  Absolutely.  Absolutely,

13  Your Honor.  But I think what's notable there -- and they also

14  asked for, you know, just give us access to your software so

15  that we can play around with it.

16          Those requests were levied on June 13th, which was

17  the last day they were allowed to serve written discovery.  It

18  was also ten days before they served their trade secret ID,

19  right?

20          So if this case -- and this is, again, a preview, but

21  if Mr. Mooney or Mr. Fox is going to come in and say, oh,

22  features and functionality are always part of the case, that's

23  always something we wanted, why did we not get discovery --

24  discovery about that until the very end?

25          THE COURT:  So when he testifies --

1          MR. LANDES:  That's a good question.

2          THE COURT:  -- about this, those are great questions

3    to ask.

4          MR. LANDES:  Yeah.

5          THE COURT:  And they may very well bear on a

6    credibility determination I have to make.

7          MR. LANDES:  Understood, Your Honor.

8          THE COURT:  Because I think, I think what I will rule

9    is that it is either a change in tactic at the last second or

10   not a change in tactic at the last second.  And then I will

11   rule whether that matters.  It might not matter.  I haven't

12   looked at -- you can brief me on whether it matters.

13         MR. LANDES:  We think it does, Your Honor.

14         THE COURT:  Perhaps, you can get to the end of

15   discovery, and through discovery learn things that make you

16   want to add more.  Okay?  And we can address that.  That's not

17   unusual, if that's the case.

18         But we ought to at least have an understanding of how

19   we got there.  Because you allege it's a change of tactic.

20   And that might or might not make a difference.  I don't know.

21         But you're allowed to explore that, I think.

22         Does anybody think he shouldn't be allowed to explore

23   that?

24         MR. CHALLY:  No.

25         THE COURT:  Okay.

1       MR. CHALLY:  But, Your Honor, I want to make one

2  thing very clear, particularly taking the comments that you

3  made to us at the outset of this hearing.  We absolutely did

4  come onto this case with fresh eyes.  We did.

5       THE COURT:  I understand.

6       MR. CHALLY:  And now, at the same time, I believe

7  that prior discovery requests, in addition to 93 and 94, put

8  at issue some of the same things that we're seeking in this

9  particular -- we're seeking to be compelled and that we

10  believe is appropriate.

11       But I want to be upfront and clear with you.  I don't

12  believe that prior counsel is going to testify that they had

13  no concept that features and functions would be at issue in

14  this case.  But we absolutely did.  And we thought it

15  important for us to issue follow-up requests in June that we

16  thought could be duplicative of earlier requests, but

17  nevertheless, would precisely and clearly indicate exactly

18  what we want.  And we thought it important when we were

19  amending the trade secret disclosure to be as clear as we

20  could be as to what it is that we were after.

21       THE COURT:  Fine.  And lawyers are allowed to do

22  that.  Lawyers are allowed to get -- even within one law firm

23  are allowed to get smarter.  They're allowed to bring other

24  people in.  The other lawyers could have brought somebody in

25  and said, hey, man, we shouldn't give this up.  Let's argue

1   for this.  That's fine.

2         That's why I'm saying whether or not it's a new

3   thought or has always been part of a thought is maybe not

4   dispositive.  Maybe it is.  Maybe it is.  Maybe I can say that

5   there are things that so changed the scope of a case that in

6   the light of the road everybody has been traveling on with

7   eyes wide open, that the last second change is too much.

8   Maybe I can say that.

9         And maybe I don't need a declaration from them.

10   Maybe the simple fact that will be represented to me is that

11   this issue arose when new counsel became involved.  That's no

12   different than Mr. Fox getting a brilliant idea at the last

13   minute.

14         And then the question just becomes whether or not the

15   time matters.  I think it might.  I think it might.

16         MR. LANDES:  So absolutely, Your Honor.  And we'll --

17   we'll confer with counsel to see what position they want to

18   take.  Because I don't want to be ships passing in the night.

19   Because if they will stipulate that this was a brilliant new

20   idea that they had in late June to change the theory of the

21   case, then we'll -- we'll focus on that issue, because we

22   absolutely were prejudiced.

23         THE COURT:  That's my point.  My point is --

24         MR. LANDES:  We'll -- we'll get to the bottom of

25   that.

```
 1              THE COURT:  So if you want to have a hearing, if
 2    that's going to be a factual dispute, and you want to have a
 3    hearing ahead of that and brief it afterwards, we can do it.
 4    But I don't think -- see when you talk to each other --
 5              MR. LANDES:  Um-hmm.
 6              THE COURT:  -- whether or not prior counsel had this
 7    idea, and for some reason, sat on it.  Or whether this is a
 8    new idea that ought to be judged as a new idea.  And then you
 9    can brief that.  If you need to -- if you want to have a
10    hearing to resolve the factual issue, we can do that first or
11    after.
12              You can make your allegations.  If they don't give
13    you comfort, you can make your allegations and we can go from
14    there.  Okay?
15              MR. LANDES:  We'll see what we can get a stipulation
16    on to narrow the issues.
17              THE COURT:  It may, like I keep saying, whether it's
18    a last-second change may or may not matter.  But I think it's
19    relevant.
20              MR. LANDES:  So I'll say, Your Honor --
21              THE COURT:  So I want to know it, because I think
22    it's relevant.
23              MR. LANDES:  Just as one keystone, the revelation of
24    functions and features happened ten days after our deadline to
25    serve written discovery.
```

```
 1              THE COURT:  Of course.  That's why it might make a
 2     difference.
 3              MR. LANDES:  I think it makes a difference,
 4     Your Honor.
 5              THE COURT:  Okay.  Fair enough.  But my point is it's
 6     definitely relevant.  And it might be dispositive.  Okay.
 7              MR. LANDES:  Understood.
 8              THE COURT:  Anything else?
 9              So I'm going to hold the other two, I'm going to hold
10     175 -- I'm going to hold 175 until -- I'm going to grant that
11     letting you file your motion.
12              MR. LANDES:  Thank you.
13              THE COURT:  169 and 170, I'm going to hold in
14     abeyance, because plaintiff would like time to consider what
15     they need to do for Request 22.
16              And the other two at issue in that one, the other two
17     requests are directly relevant to your motion to strike.
18              MR. LANDES:  So just so I'm clear, Your Honor, I
19     understand why 93 and 94 are relevant to the motion to strike.
20              22, it's not clear to me what -- what is to happen
21     from here.
22              THE COURT:  I think he's going to reconsider what he
23     needs to do.
24              MR. CHALLY:  Yes, sir.
25              THE COURT:  Plaintiff's counsel is going to
```

 1   reconsider talking with his expert, whether he needs to do

 2   anything on that.

 3          MR. LANDES:  Okay.

 4          MR. CHALLY:  Yeah.  We have no objection to that.  We

 5   are simply just asking for the opportunity to do it.

 6          THE COURT:  Yes.

 7          MR. LANDES:  Understood.  And when he files something

 8   new, I can say that this new filing is untimely?

 9          THE COURT:  Yes.  Yes.

10          MR. LANDES:  Right.  I understand.  Thank you.  I

11   just wanted to make sure that I had that straight.

12          THE COURT:  Otherwise, the discovery that I have

13   allowed to proceed, I'd like that done in 45 days.

14          Is there any reason to think it can't be done in that

15   time?

16          MR. LANDES:  I -- Your Honor, I'd like it done much

17   more quickly.

18          THE COURT:  30 days.  You're the producer.

19          MR. LANDES:  Yeah.  Well, we will produce this as

20   fast as we possibly can.

21          THE COURT:  Okay.

22          MR. LANDES:  And then we would like to also have a

23   deadline at that point for the close of fact discovery.

24          THE COURT:  I think --

25          MR. LANDES:  A true, true close.

```
1              THE COURT:  I think the close of fact discovery, I
2    think the only thing left to be considered in discovery is
3    what's already been filed.  Those items that you have to --
4    that I've ordered you to produce and the outcome of the ones
5    I've just read, 22.
6              MR. LANDES:  93 and 94.
7              THE COURT:  93 and 94.
8              Does anybody think there is any avenue for more
9    discovery on that, fact discovery?
10             MR. CHALLY:  No.
11             THE COURT:  No?
12             MR. CHALLY:  Well, there were -- well, to be clear,
13   there are three witnesses that we need to depose.  We -- we
14   postponed those depositions because of these disputes as to
15   documents.
16             That is Barkoff, Droege and then completion of the
17   Relay 30(b)(6).  We're prepared to do that as quickly as
18   possible, following production of this information.  That's
19   it.
20             THE COURT:  Okay.
21             MR. CHALLY:  30, 45 days is more than fine.
22             THE COURT:  Are those the dates you want to set that?
23   Is there any reason to think there is any additional discovery
24   other than that to be done?
25             MR. CHALLY:  We have no intention of doing any
```

1 | further discovery.

2 |        MR. LANDES:  No.

3 |        THE COURT:  Okay.

4 |        MR. LANDES:  I mean, if the entire theory of the case

5 | changes, then we might want -- right?

6 |        THE COURT:  Right.

7 |        MR. LANDES:  But setting that aside --

8 |        THE COURT:  Right.

9 |        MR. LANDES:  We will produce these documents as

10 | quickly as possible.  I think we have, you know, dates for

11 | depositions, although we don't think it was proper for them to

12 | withdraw those notices, but if Your Honor is suggesting they

13 | should go forward, we'll have them go forward.

14 |        THE COURT:  I think you ought to do all of this in 45

15 | days.

16 |        MR. LANDES:  We will do it -- we'd like to do it in

17 | 30 days, probably less.

18 |        THE COURT:  Okay.  Fine.  30 days.  Any reason that

19 | can't be done?

20 |        MR. CHALLY:  We just simply want to know how many

21 | documents we're going to get.  That's all.

22 |        THE COURT:  Depositions 20 days after documents are

23 | produced.  So when you produce the documents, they have 20

24 | days to take the deposition.

25 |        MR. LANDES:  Got it.

1              THE COURT:  So I'm going to give you ten days to

2    produce the documents.

3              MR. LANDES:  There you go.  Thank you, Your Honor.

4              THE COURT:  And then the discovery for everything

5    that's on the table, other than 22, 93 and 94 will close at

6    the conclusion of those depositions.

7              Okay?  So we have to then resolve 22, 93 and 94, and

8    the motion to strike.

9              And at that time, when that is done, we'll decide

10   whether there's more discovery that's needed for the defense,

11   because of this functionality issue, and/or if not, we'll move

12   to expert discovery.

13             MR. LANDES:  And so, Your Honor, I just do want to

14   make a couple of points about discovery that we need.  We

15   still don't have a privilege log.  We believe that there are

16   thousands of documents that were improperly clawed back for

17   privilege.  We actually had a motion we were ready to file.

18   We were waiting for --

19             THE COURT:  Well, the privilege log ought to be

20   produced right now.

21             Is there any reason it's not being produced?

22             MR. CHALLY:  The reason it hasn't been produced is

23   the number of back ends that existed in the log and our

24   attempt to address and follow up requests that they made.

25             THE COURT:  Ten days.

1          MR. CHALLY:  We totally agree --

2          THE COURT:  That gives you 20 days to file

3  objections.  Okay?

4          MR. LANDES:  Understood, Your Honor.  And if there

5  are other materials, I'll try -- if it's a ten-day deadline

6  for them to produce other things that they agreed to produce

7  prior to the close of discovery, that -- I think that works

8  for us.

9          THE COURT:  That's fine, too.  Ten days, all the

10  documents that are due and/or privileged logs ought to be

11  produced back and forth.

12          And then you have 20 days to take the final three

13  depositions.

14          MR. CHALLY:  Your Honor, I --

15          MR. LANDES:  Understood.

16          MR. CHALLY:  I hate to say this.

17          THE COURT:  Yes.

18          MR. CHALLY:  There are -- I think there are some -- I

19  would like to work with defendant's counsel as to what they

20  believe has not been produced.  I don't believe that there are

21  significant materials that have not been produced, certainly

22  not that we have previously agreed to produce.

23          I have no problem completing -- exhausting those

24  discussions in the next ten days.

25          THE COURT:  No, no.  You have like a day to do that.

1          MR. CHALLY:  Oh, understood.

2          THE COURT:  Because you have to produce it in ten

3   days.

4          MR. CHALLY:  Understood.  Ultimately then producing

5   that material.  Fine.  But we don't want counsel's suggestion

6   that we had committed to do this to signify that we don't

7   believe that we either had or that we may not have appropriate

8   objections to it.

9          We'll work that through with them and hopefully not

10  present this to the --

11         THE COURT:  Any objection, shouldn't they already

12  have been raised.

13         MR. CHALLY:  And we believe they have.  That's the

14  point.  We believe they have.  These are issues that have been

15  discussed before.  These are some issues where we did reach

16  some accommodation.  And we believe we did do what we

17  accommodated.  In other words, what we agreed to do.

18         We can explore whether there was more or we can

19  explore whether our understanding of that agreement is somehow

20  differently and hopefully resolve all of their issues.  I'm

21  simply reserving that.

22         THE COURT:  Okay.

23         MR. CHALLY:  We'll have that discussion.

24         THE COURT:  Okay.

25         MR. LANDES:  And just one more housekeeping matter,

1  Your Honor, timing on our motion to strike?

2          THE COURT:  Well, talk with them about what the

3  factual basis is agreed to, or if it's not agreed, how long do

4  you want?

5          MR. LANDES:  I don't -- whatever to accommodate your

6  schedule, Your Honor.

7          THE COURT:  Two weeks.

8          MR. LANDES:  Should be sufficient.

9          THE COURT:  Okay.  If you need more time, let me

10 know.

11          But to be clear, I don't need a lot of fluff and

12 extra argument.  I'd like facts.  And I think the facts are

13 like, hey, the complaint said this, and we attacked it in the

14 motion to dismiss.

15          And the Judge said this.  And this is their reply.

16 And the Judge said this.  And here's any other reason to think

17 this was a part of it.  This discovery response, that

18 discovery response.  This statement.  You said that I said

19 something about functionality.

20          I think saying source code has functionality is not

21 the same as saying source code divorced from functionality

22 means functionality is the key.  But at any rate, I think it's

23 like that.

24          And then I think the next step is whether that

25 matters.  Whether or not they can -- if it's never been

1    uttered before, is it unfair to allow them to adopt that now

2    at 11:30 at night, or whenever it was.

3         MR. LANDES:  Yes, Your Honor.

4         THE COURT:  Okay?  But I don't need a lot of --

5    sometimes you-all write things and it's like, well, I'm glad

6    you agreed to limit your response in this way, because it was

7    previously so outrageous and da-da-da-da-da.  You've agreed to

8    do it.  Okay?

9         I just want the facts.  I don't want to read the

10   creationist or the commentary on the outrageousness of the

11   others.  Okay?

12        MR. LANDES:  Understood.

13        THE COURT:  Okay.  All right.  Anything else?

14        MR. CHALLY:  No, sir.  Thank you.

15        THE COURT:  Okay.  Thank you.

16

17        (Whereupon, the proceedings were adjourned at 3:41

18   p.m.)

19

20

21

22

23

24

25

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA

1                        REPORTERS CERTIFICATE

2

3

4          I, Jana B. Colter, Official Court Reporter for the

5    United States District Court for the Northern District of

6    Georgia, with offices at Atlanta, do hereby certify:

7          That I reported on the Stenograph machine the

8    proceedings held in open court on August 29, 2023, in the

9    matter of *RoadSync, Inc. v. Relay Payments, Inc*., Case Number

10   1:21-CV-03420-MLB; that said proceedings in connection with

11   the hearing were reduced to typewritten form by me; and that

12   the foregoing transcript is a true and accurate record of the

13   proceedings.

14         This the 31st day of August, 2023.

15

16

17

18                          _____
                            /s/ Jana B. Colter, FAPR, RDR, CRR, CRC
19                               Official Court Reporter

20

21

22

23

24

25

MR. CHALLY: [71]
3/103/205/97/209/4
15/1918/2419/519/9
24/1824/2024/2526/1
26/327/929/2530/8
30/1230/1431/1731/19
31/2237/237/2037/23
38/542/1844/744/13
44/1644/2445/545/10
45/1245/1847/1747/21
55/555/1255/1656/7
57/858/958/1758/20
59/1360/1363/2464/1
64/667/2468/469/10
69/1269/2169/2570/20
71/2272/172/1472/16
72/1873/173/473/13
73/2375/14
MR. LANDES: [172]
MS. STONE: [1] 3/17
THE COURT: [229]

-

-- 94 [1] 45/13
-- about [1] 63/2
-- and [1] 14/8
-- for [1] 25/17
-- I [1] 13/22
-- that [2] 10/2312/15
-- what [1] 11/2
-- whether [1] 66/6

/

/s [1] 76/18

1

10 [10] 6/2513/1319/20
19/2120/420/523/9
23/1028/2036/6
11 [1] 49/7
11:30 [1] 75/2
11th [2] 49/1452/21
13 [10] 6/2513/1317/10
23/1523/1823/2125/12
36/1136/1136/12
13th [3] 17/850/24
62/16
1456 [1] 1/21
153 [1] 12/2
156 [1] 5/14
159 [1] 5/15
159-3 [1] 6/5
15th [1] 51/24
16 [57] 6/237/37/77/10
8/128/179/179/2111/4
12/512/2313/113/16
14/114/1414/2115/17
16/2016/2117/1417/18
18/1018/1718/2221/2
22/1822/1823/223/16
23/2024/524/1225/4
25/826/728/428/728/9
28/2229/1832/1733/3
33/1033/1133/2135/3
35/2236/936/1636/24
37/738/1642/442/12

42/1642/1851/4
16 customer [3] 39/9
39/1940/18
160 [3] 5/1528/1928/19
160-10 [1] 28/20
160-9 [1] 28/19
161 [1] 28/25
161-1 [1] 28/20
161-2 [2] 28/2029/1
161-3 [1] 29/22
161-7 [1] 29/1
164-1 [6] 39/1839/22
40/1841/549/649/7
169 [4] 42/2143/1045/9
67/13
17 [1] 56/9
170 [2] 42/2267/13
175 [2] 67/1067/10
176 [6] 42/2443/245/15
52/354/254/8
176-1 [1] 42/24
176-2 [1] 54/24
19 [5] 6/2513/1337/12
37/2441/14
1949 [1] 1/19
19th [2] 5/1949/16
1:21-CV-03420-MLB
[2] 1/576/10
1st [1] 54/17

2

20 [5] 17/470/2270/23
72/272/12
2023 [4] 1/123/176/8
76/14
21 [4] 6/2513/1338/8
41/14
215-1456 [1] 1/21
22 [12] 43/1145/945/19
45/1949/553/2353/25
67/1567/2069/571/5
71/7
23 [1] 55/5
23rd [8] 33/749/22
54/1454/2055/658/16
61/2562/3
24 [4] 6/2513/1441/22
41/25
25 [1] 17/4
26 [4] 6/2513/1442/1
42/2
27 [2] 42/342/3
28 [2] 18/342/6
29 [7] 1/123/16/25
13/1418/442/776/8
2nd [3] 33/339/2049/11
2nd letter [1] 49/7

3

30 [6] 29/268/1869/17
69/2170/1770/18
30303 [1] 1/20
31 [2] 50/750/8
31st [1] 76/14
33 [1] 56/6
34 [4] 7/113/1416/6
42/8
3:41 [1] 75/17

3rd [2] 12/433/5

4

404 [1] 1/21
45 [3] 68/1369/2170/14

5

51 [1] 52/22
58 [1] 55/23

7

75 [1] 1/20

8

80,000 [3] 18/518/6
18/11

9

93 [10] 45/1148/15
53/2562/664/767/19
69/669/771/571/7
94 [11] 45/1245/13
48/1554/162/664/7
67/1969/669/771/571/7

A

abeyance [1] 67/14
ability [2] 46/1856/5
able [5] 4/1416/10
32/2432/2546/2
about [64] 4/84/104/11
4/255/85/187/78/2412/8
13/2018/1820/320/22
21/121/421/1321/14
21/1621/1821/2322/4
22/522/1322/1924/12
27/1127/1328/228/4
28/1628/2130/2332/1
32/132/432/532/935/24
36/2137/337/437/9
37/1543/743/1146/7
46/1849/1450/1150/19
50/2153/2253/2554/3
58/2560/1161/262/9
62/1062/2463/2271/14
74/274/19
above [1] 40/21
absolutely [12] 31/10
32/232/233/1435/18
47/2162/1262/1264/3
64/1465/1665/22
absurd [1] 27/7
accepted [1] 54/11
access [2] 46/262/14
accessed [1] 9/12
accommodate [1] 74/5
accommodated [1]
73/17
accommodation [1]
73/16
accurate [2] 24/20
76/12
acknowledge [3]
19/1357/2358/24
acquiesce [1] 6/17
acquiesced [3] 34/18
35/636/19
acquiescence [1] 6/8
act [1] 4/23

ACTION [1] 1/4
actual [3] 19/249/742/4
actually [1] 71/17
add [2] 30/1863/16
added [2] 55/355/4
adding [3] 29/733/21
35/2
addition [7] 7/178/22
41/1845/1754/1655/1
64/7
additional [6] 5/15
29/1830/1835/235/10
69/23
address [5] 43/861/22
61/2363/1671/24
addressed [1] 45/5
addressing [1] 34/11
adjourned [1] 75/17
adopt [1] 75/1
afraid [1] 53/4
after [7] 7/2232/10
54/1464/2066/1166/24
70/22
afternoon [2] 3/103/15
afterwards [1] 66/3
again [17] 7/118/420/6
21/1424/1426/1626/20
36/636/1238/938/15
38/1740/2441/144/17
47/2062/20
ago [1] 32/13
agree [12] 7/213/12
13/1914/1615/2019/1
24/834/1839/744/13
61/1772/1
agreed [28] 8/2020/15
24/1027/1931/531/8
31/1031/1331/2132/2
32/232/332/1533/14
34/1634/2535/935/10
38/438/2039/172/6
72/2273/1774/374/3
75/675/7
agreeing [1] 31/9
agreement [2] 31/15
73/19
ahead [1] 66/3
aided [1] 1/17
AL [1] 1/6
albeit [2] 29/2336/3
all [82]
allegations [4] 28/5
52/1066/1266/13
allege [2] 28/863/19
allow [3] 6/1551/15
75/1
allowed [9] 44/1262/17
63/2163/2264/2164/22
64/2364/2368/13
almost [2] 8/1934/12
along [1] 4/21
already [12] 5/175/22
12/1014/926/1634/8
42/850/2251/151/12
69/373/11
also [25] 6/217/158/11
11/913/113/1514/118/3
18/423/1924/2125/3

26/1832/1734/2536/9
39/739/1341/2442/22
48/1357/1962/1362/18
68/22
although [4] 13/2229/6
60/2370/11
always [9] 44/959/11
59/1661/562/262/2
62/2262/2365/3
am [3] 15/2522/2540/8
amazing [1] 4/20
Amazon [1] 27/6
amended [4] 8/511/10
33/754/24
amending [1] 64/19
amendments [1] 49/23
amongst [1] 22/25
amount [1] 50/6
analysis [1] 56/12
another [8] 3/63/254/1
38/1843/2347/1461/15
61/18
answer [7] 17/717/9
17/1125/730/930/10
47/1
answered [1] 13/22
any [35] 4/155/311/11
11/1711/1811/2112/8
13/413/1416/1518/13
25/2225/2327/1229/8
36/436/1837/1238/13
38/1343/1543/1947/23
57/360/1768/1469/8
69/2369/2369/2570/18
71/2173/1174/1674/22
anybody [5] 5/87/9
37/1563/2269/8
anything [5] 4/38/21
9/229/2210/211/17
18/2237/837/1543/19
57/759/2467/868/2
75/13
apart [1] 4/3
apparently [1] 14/9
appearances [2] 1/21
3/8
Appendices [1] 11/9
appendix [1] 11/13
appreciate [4] 23/4
46/446/646/17
appropriate [2] 64/10
73/7
are [99]
arguably [2] 23/1457/5
argue [3] 45/161/2
64/25
arguing [4] 8/2422/13
60/1860/20
argument [9] 6/187/11
53/1154/1155/756/20
58/1561/2474/12
arguments [2] 24/3
53/25
arose [1] 65/11
around [2] 4/1862/15
arranged [1] 53/2
as [60] 3/176/137/9
7/208/239/1514/2016/8

**A**

as... [52] 18/218/2
22/1726/1827/1929/18
30/431/2333/1134/21
35/1338/2540/2141/9
42/245/945/946/746/13
49/1949/2049/2349/23
49/2449/2451/751/7
52/1654/1055/1856/16
57/457/658/459/2460/4
61/261/1064/1964/19
64/2066/866/2368/19
68/2069/1469/1769/17
70/970/1072/1974/21
aside [1] 70/7
ask [8] 12/1718/2221/4
32/2144/1044/1046/18
63/3
asked [6] 5/1611/14
13/1913/2440/1362/14
asking [9] 14/2314/24
17/624/1524/2526/17
62/762/868/5
asks [1] 43/2
asserted [3] 29/345/20
50/24
assistance [1] 9/5
assume [1] 54/19
assuming [1] 37/16
ATLANTA [4] 1/21/20
3/176/6
attached [1] 28/19
attacked [1] 74/13
attempt [2] 42/1771/24
attempting [1] 57/14
attorney [1] 60/17
attorney/client [1]
60/17
Attorneys [2] 2/32/5
AUGUST [7] 1/123/1
50/554/1254/1776/8
76/14
August 1st [1] 54/17
automated [1] 27/22
available [3] 44/449/25
50/2
avenue [1] 69/8
awareness [1] 19/12

**B**

back [15] 6/66/187/13
28/2029/429/835/13
41/2351/2252/356/3
62/671/1671/2372/11
backdoor [1] 35/17
backed [1] 28/24
Barkoff [3] 12/1822/6
69/16
based [5] 4/1513/7
13/2522/1747/3
basis [4] 23/1625/3
44/1574/3
be [74] 4/67/169/20
12/413/113/1414/14
15/415/2118/118/2
18/1519/1220/1320/21
22/1922/2323/123/12
23/1923/2525/326/21

27/2528/1129/1629/25
31/631/2532/5347/1
35/1236/836/1737/25
39/1344/2446/246/15
47/2150/2551/1653/12
57/1057/1357/1857/21
58/158/360/1661/3
61/2462/263/2264/9
64/1164/1364/1664/19
64/2065/1065/1866/2
66/867/668/1469/2
69/1269/2470/1971/19
72/1074/874/11
bear [1] 63/5
became [1] 65/11
because [49] 4/67/58/3
8/188/198/229/29/22
15/1618/2420/2521/22
23/2324/1029/529/16
31/1434/1034/2535/19
36/1538/1138/2241/10
41/1142/344/1747/7
47/1251/1151/1352/6
52/1156/158/1159/22
61/1362/763/863/19
65/1865/1965/2166/21
67/1469/1471/1173/2
75/6
becomes [2] 20/25
65/14
been [37] 3/254/24/14
5/55/215/236/1913/5
14/1015/1217/618/9
18/1722/1635/1039/4
40/942/1642/1744/3
45/946/1651/1452/18
53/654/1758/1561/12
65/365/669/371/22
72/2072/2173/1273/14
74/25
before [12] 1/1121/14
34/641/949/650/21
50/2458/1561/1262/18
73/1575/1
began [1] 4/24
begin [1] 7/5
beginning [2] 4/930/4
begins [2] 40/1841/6
being [5] 4/1815/16
35/1541/2071/21
believe [25] 4/197/99/4
24/2029/545/245/20
47/447/547/647/2148/2
48/955/1661/1364/6
64/1064/1271/1572/20
72/2073/773/1373/14
73/16
believed [1] 60/6
believing [1] 61/12
Ben [1] 31/18
bench [1] 4/1
benefits [1] 20/9
bespoke [1] 48/5
best [2] 24/1143/7
better [2] 4/1246/12
between [7] 9/624/15
25/1525/2329/936/18
57/1

beyond [6] 10/711/19
21/242/157/755/24
bigger [1] 43/145/15
biggest [1] 27/17
bills [1] 5/4
bit [4] 7/430/2149/12
61/7
bite [1] 17/4
BLACKBURN [1] 2/5
blacked [1] 41/18
bleeding [1] 48/15
both [5] 21/627/947/11
52/1760/4
bottom [1] 65/24
bounds [1] 7/14
bowl [1] 15/12
bridge [1] 35/3
brief [3] 63/1266/366/9
briefing [3] 5/1549/13
58/22
briefly [1] 49/1
brilliant [2] 65/1265/19
bring [4] 8/1833/262/5
64/23
broad [3] 24/2125/12
25/13
broader [4] 8/199/21
31/245/2
brought [8] 14/1023/14
30/1034/436/354/261/6
64/24
BROWN [1] 1/11
burden [3] 57/2257/23
58/2
business [1] 44/18

**C**

call [3] 31/1531/23
31/24
called [2] 43/2343/24
calls [1] 35/15
can [54] 9/510/113/4
17/517/2118/218/18
18/2222/1727/2428/16
33/1233/1535/535/15
35/1836/1337/1038/19
42/1746/1147/1948/8
48/2248/2548/2552/17
53/1354/454/1956/7
57/1857/2158/361/2
61/862/1563/1263/14
63/1665/465/866/366/9
66/1066/1266/1366/13
66/1568/868/2073/18
73/1874/25
can't [10] 4/120/23
20/2421/730/1734/19
46/1561/168/1470/19
cannot [5] 3/2513/14
23/125/336/8
Caplan [1] 3/17
captured [1] 13/6
case [31] 3/133/254/1
4/214/224/245/2311/21
15/1120/1827/828/6
35/2444/944/1751/15
52/752/1955/1357/11
59/1259/1762/2062/22

63/1764/464/1465/5
65/2170/476/9
cases [6] 4/94/104/12
4/2358/358/4
categories [3] 43/17
44/256/10
category [2] 43/19
43/22
cellphone [1] 24/1
center [1] 35/16
certain [11] 7/238/19
12/412/1012/1112/12
15/2216/1233/1151/18
57/17
certainly [3] 42/14
53/2572/21
CERTIFICATE [1] 76/1
certify [1] 76/6
challenge [2] 32/7
38/10
CHALLY [3] 2/23/11
52/4
change [10] 31/14
52/1960/1961/163/9
63/1063/1965/765/20
66/18
changed [1] 65/5
changes [1] 70/5
checkout [13] 15/5
26/2326/2427/227/8
27/1227/1327/1727/23
38/1138/2138/2556/17
choice [1] 32/14
circle [1] 62/6
circles [1] 4/19
circumstances [3]
46/1747/2247/22
cite [1] 58/4
cited [3] 8/349/654/17
CIVIL [1] 1/4
claim [3] 45/1654/15
56/23
claimed [1] 54/9
claiming [3] 8/2357/12
57/13
claims [3] 47/847/10
56/24
clarification [2] 23/4
23/22
clarity [1] 29/7
clawed [1] 71/16
clear [21] 5/256/99/20
10/710/922/1929/630/1
37/2551/1355/957/9
60/1460/1664/264/11
64/1967/1867/2069/12
74/11
clearer [1] 20/25
clearly [2] 13/2364/17
client [6] 34/2435/7
35/735/946/160/17
clients [6] 3/244/16
4/174/175/354/4
close [10] 25/1033/2
43/950/2150/2568/23
68/2569/171/572/7
closing [1] 51/6
Cobb [1] 3/17

coda [1] 62/10
code [70] 43/1243/13
43/2044/144/644/15
44/1644/1644/2244/23
45/345/1745/1945/24
45/2345/2446/346/8
46/2146/2447/247/6
47/748/1048/1348/18
49/849/1049/2049/24
50/250/350/750/952/6
52/752/1152/1852/25
52/2553/1553/2653/654/9
54/1354/1655/255/9
55/1055/1855/2456/14
56/1656/2156/2557/1
57/457/757/1657/18
57/2058/1158/1258/21
59/2059/2460/762/8
74/2074/21
COLTER [1] 1/1876/4
76/18
come [11] 7/1324/11
30/632/639/239/345/15
53/1460/1962/2164/4
comes [5] 31/1334/6
34/951/1951/22
comfort [1] 66/13
comment [2] 5/852/3
commentary [1] 75/10
comments [2] 46/9
64/2
commerce [1] 26/25
committed [1] 73/6
communication [3]
24/1525/1525/22
communications [8]
11/1219/2220/620/20
23/629/437/1344/11
company [2] 18/956/17
company-issued [1]
56/17
compare [1] 44/12
compel [1] 5/16
compelled [1] 64/9
compiled [1] 55/2
complaint [14] 5/17
6/1128/545/252/1056/9
56/1558/958/1058/17
58/1258/1358/2074/13
complete [3] 15/23
43/1148/17
completely [1] 42/15
completing [1] 72/23
completion [1] 69/16
complex [1] 4/23
complicated [1] 19/15
components [2] 47/2
48/9
compromise [3] 27/20
36/1637/8
compromises [1] 31/1
computer [3] 1/178/2
12/21
computer-aided [1]
1/17
concept [1] 64/13
concern [6] 6/2321/14
21/2222/422/549/3

**C**

**concerning [7]** 8/9 10/2016/1519/2220/7 23/637/12
**concession [1]** 39/1
**conclude [1]** 35/6
**conclusion [1]** 71/6
**conclusively [1]** 52/15
**condition [1]** 35/3
**confer [5]** 7/2217/6 35/1438/765/17
**conferences [1]** 4/9
**confers [2]** 34/239/21
**confidential [14]** 8/9 8/2310/810/1110/18 10/2011/211/1511/20 11/2215/148/348/10 56/13
**confidentiality [2]** 57/2357/25
**confront [1]** 32/20
**confused [2]** 32/1 51/16
**confusing [1]** 29/11
**connection [1]** 76/10
**consider [1]** 67/14
**considered [1]** 69/2
**consistent [1]** 51/6
**consists [1]** 10/2
**constitute [1]** 56/11
**contending [1]** 57/17
**contention [5]** 6/147/2 45/2045/2148/7
**contentions [1]** 44/17
**context [3]** 30/2132/5 56/2
**continue [5]** 11/730/16 40/1550/2251/15
**contrary [2]** 6/1652/9
**contrast [1]** 6/13
**copied [1]** 12/20
**copy [2]** 54/454/6
**correct [3]** 14/230/14 38/5
**corresponded [1]** 50/3
**correspondence [2]** 6/46/5
**corresponding [3]** 43/2049/1049/20
**could [18]** 5/217/916/3 20/1820/1920/1920/22 23/1224/1147/2149/15 51/152/257/1058/4 64/1664/2064/24
**couldn't [1]** 61/1
**counsel [28]** 3/83/18 3/195/245/2412/330/2 31/531/832/1538/24 40/359/1159/1660/10 60/1860/2461/161/1 61/461/661/964/12 65/1165/1766/667/25 72/19
**counsel's [1]** 73/5
**County [1]** 3/1
**couple [3]** 8/114/13 71/14
**course [6]** 37/2046/1

48/857/1860/1367/1
**court [9]** 1/11/193/2 7/1254/1176/476/576/8 76/19
**Court's [2]** 30/346/9
**Courthouse [1]** 1/19
**coworkers [2]** 24/16 25/19
**CRC [2]** 1/1876/18
**created [4]** 12/1922/6 22/922/22
**creation [2]** 37/447/23
**creationist [1]** 75/10
**credibility [2]** 32/21 63/6
**critical [1]** 50/1
**cross [1]** 33/14
**cross-examine [1]** 33/14
**crossing [1]** 27/7
**CRR [2]** 1/1876/18
**current [3]** 5/2416/16 16/18
**customer [10]** 4/25 19/2539/139/539/19 40/1845/1756/1156/12 56/19
**customer-facing [1]** 56/19
**customers [62]** 6/24 7/37/87/107/178/129/17 9/2112/512/812/1113/8 13/1614/114/2116/15 16/1616/1916/2216/25 17/1918/518/518/10 18/1118/1218/1418/14 18/2319/319/919/10 19/1219/1422/1822/19 23/2223/1523/1623/20 24/1226/728/428/728/9 28/2229/1832/1733/3 33/1033/1133/2135/3 36/1636/2436/2537/7 39/1442/542/1642/19 51/4
**CV [2]** 1/576/10

**D**

**D'AMBROSIO [2]** 2/3 3/12
**da [5]** 75/775/775/7 75/775/7
**da-da-da-da-da [1]** 75/7
**data [3]** 61/1561/18 61/20
**dates [2]** 69/2270/10
**day [12]** 29/2330/6 30/1034/636/336/22 51/551/662/1772/5 72/2576/14
**days [19]** 46/546/6 62/1866/2468/1368/18 69/2170/1570/1770/18 70/2270/2471/171/25 72/272/972/1272/24 73/3
**deadline [4]** 54/14

66/2468/2372/5
**dealing [1]** 17/16
**December [1]** 39/21
**decide [2]** 27/2471/9
**deciding [1]** 46/23
**decision [1]** 61/9
**decisions [2]** 4/15 50/23
**declaration [4]** 31/17 31/2060/165/9
**defendant [12]** 6/76/10 6/1662/121/528/2329/1 31/543/243/1252/761/6
**defendant's [13]** 6/13 7/158/510/1411/1129/3 29/943/451/1253/2 53/1156/2072/19
**defendants [13]** 1/72/4 3/143/165/168/219/9 9/161/912/314/2353/4 53/12
**defense [4]** 7/1836/5 57/371/10
**deficient [1]** 49/23
**definitely [1]** 67/6
**delay [1]** 49/4
**denies [1]** 33/13
**departure [1]** 9/12
**depend [1]** 50/20
**depose [2]** 46/2269/13
**deposition [3]** 47/4 62/1070/24
**depositions [6]** 34/7 69/1470/1170/2271/6 72/13
**describe [2]** 43/15 58/23
**described [5]** 40/21 46/546/659/159/3
**describing [1]** 29/6
**description [1]** 11/16
**design [3]** 48/1462/9 62/9
**details [1]** 45/1
**determination [1]** 63/6
**determine [1]** 47/2
**detrimental [2]** 36/5 36/13
**developing [2]** 44/18 44/19
**did [27]** 6/178/1312/25 17/817/1026/429/23 30/230/232/639/944/21 46/1247/1952/952/10 54/1554/2155/2560/5 60/1362/2364/364/4 64/1473/1573/16
**didn't [16]** 8/2214/6 28/1330/632/934/17 36/2139/239/339/340/4 44/846/2459/1759/18 59/20
**difference [5]** 9/11 14/2263/2067/267/3
**different [11]** 14/24 32/1132/1236/2237/1 37/538/653/853/14 57/2065/12

**differently [1]** 73/20
**difficult [4]** 4/204/24 35/14
**difficulty [1]** 51/14
**diligence [1]** 5/23
**diligent [1]** 5/21
**directly [1]** 67/17
**disappointed [1]** 6/2
**disclosure [4]** 57/14 57/1660/864/19
**discovery [61]** 3/74/3 4/104/145/146/16/11 6/157/37/57/107/148/25 12/212/828/928/1829/5 29/1529/1929/2129/24 30/2334/434/644/10 45/650/1250/2150/22 50/2451/651/1452/12 52/1453/1354/854/15 58/162/1762/2362/24 63/1563/1564/766/25 68/1268/2369/169/2 69/969/969/2370/171/4 71/1071/1271/1472/7 74/1774/18
**discretion [2]** 51/11 51/15
**discuss [1]** 42/21
**discussed [5]** 14/442/8 52/2058/1573/15
**discusses [1]** 39/14
**discussing [1]** 36/1
**discussion [9]** 8/12 30/2230/2341/746/13 49/1355/2055/2273/23
**discussions [5]** 7/22 30/432/432/572/24
**dismiss [6]** 54/1155/10 55/1556/458/2374/14
**displayed [1]** 19/19
**dispositive [2]** 65/4 67/6
**disproven [1]** 52/15
**dispute [10]** 3/73/24 8/259/29/312/221/845/6 45/966/2
**disputes [3]** 21/134/4 69/14
**disputing [1]** 7/5
**distinction [5]** 9/69/10 14/1933/457/1
**DISTRICT [4]** 1/11/1 76/576/5
**DIVISION [1]** 1/2
**divorced [1]** 74/21
**do [76]** 4/34/54/126/24 9/2013/1213/1914/6 15/1616/217/618/8 18/1319/119/219/14 20/321/1421/2223/3 24/829/529/2031/23 32/1932/2434/1334/14 35/535/2136/1636/24 36/2437/1139/2440/22 41/1442/142/1342/17 45/145/146/2047/1949 47/1949/2051/1751/21 52/1153/553/2156/5

56/2259/661/261/5 61/2364/2166/366/10 67/1567/2368/168/5 69/1770/1470/1670/16 71/1372/2573/673/16 73/1774/375/876/6
**docket [2]** 39/1842/22
**document [10]** 10/10 10/2011/2114/2515/1 15/634/838/143/1756/6
**Document 33 [1]** 56/6
**documents [40]** 6/11 6/126/226/237/168/228/8 9/69/89/139/1710/411/3 11/1111/1711/1812/18 12/2313/413/2515/15 16/1418/1219/1619/17 22/524/425/126/537/12 37/1444/1069/1570/9 70/2170/2270/2371/2 71/1672/10
**does [19]** 5/75/816/7 25/525/826/1833/13 41/2142/948/1248/14 53/256/1956/2357/17 57/1963/1363/2269/8
**doesn't [6]** 13/1026/15 29/738/242/348/6
**doing [11]** 11/524/3 25/247/1550/2053/17 53/1853/2253/2360/16 69/25
**don't [72]** 4/245/226/16 6/176/238/138/1310/24 11/1911/2412/1513/10 14/2115/2216/1817/3 17/917/1118/418/15 20/2321/2021/2322/1 23/2424/2025/725/10 27/1231/733/133/12 33/1235/835/1136/4 37/1037/1838/1539/11 41/1144/844/1444/24 46/1748/948/1751/5 51/1252/2552/2554/6 55/1256/1559/2261/11 61/1463/2064/1165/9 65/1866/466/1270/11 71/1572/2073/573/6 74/574/1175/475/9
**done [13]** 14/925/10 32/1334/837/144/5 60/2468/1368/1468/16 69/2470/1971/9
**dot [3]** 22/622/622/6
**doubt [2]** 27/1433/16
**down [5]** 10/111/8 16/1041/1348/4
**downloads [1]** 56/10
**dozens [1]** 10/4
**draw [1]** 9/6
**Drive [1]** 1/20
**drives [1]** 10/5
**Droege [5]** 11/2312/18 20/722/669/16
**Droege's [1]** 56/17
**due [1]** 72/10
**duplicative [2]** 13/4

**D**

duplicative... [1] 64/16
during [1] 53/13

**E**

each [4] 21/923/2461/7
66/4
earlier [1] 64/16
early [1] 51/7
earnest [1] 23/11
egregious [1] 5/25
either [5] 28/2537/11
47/363/973/7
electronic [2] 12/20
12/21
electronic-stored [1]
12/20
element [1] 15/3
elephant [1] 17/5
else [5] 17/628/12
44/1267/875/13
email [7] 10/1410/15
10/1620/727/136/17
39/10
emails [10] 6/106/19
10/512/1913/422/10
27/2227/2231/735/14
Emanuel [2] 3/1640/2
embarrassment [1]
4/13
emblematic [1] 16/12
employed [2] 45/23
57/24
employee [1] 3/9
end [5] 28/1332/1050/5
62/2463/14
ends [1] 71/23
engage [1] 46/13
enormous [1] 38/22
enough [6] 5/256/14
16/1049/1759/1367/5
entire [3] 34/836/170/4
entirety [2] 47/647/7
entities [11] 8/1711/4
12/2313/114/1415/17
16/2224/525/425/836/9
entitled [7] 6/1120/20
47/447/647/748/17
61/25
entry [1] 42/22
established [1] 57/2
estoppel [1] 34/12
ET [1] 1/6
even [19] 6/186/227/4
7/1116/2117/1517/18
23/1425/539/239/3
45/2049/2352/753/5
57/557/1960/564/22
ever [3] 22/2251/23
60/10
every [10] 22/924/15
24/1725/1425/1925/22
26/2426/2434/136/17
everybody [4] 3/185/7
42/965/6
everything [8] 8/20
22/2228/228/1230/25
44/1250/2071/4

**F**

face [1] 18/19
facing [2] 56/1956/24
57/557/957/1258/24
58/25
fact [10] 16/2436/3
44/1448/248/354/8
65/1068/2369/169/9
factor [1] 5/23
facts [5] 48/1261/4
74/1274/1275/9
factual [3] 66/266/10
74/3
factually [1] 61/23
Fair [2] 59/1367/5
fairly [2] 9/1152/15
faith [1] 46/13
false [1] 38/23
familiar [1] 19/9
FAPR [2] 1/876/18
far [3] 14/1118/1035/4
fast [2] 16/1068/20
features [13] 54/9
54/1354/1655/155/8
56/2456/2557/2558/24
58/2562/2264/1366/24
February [5] 33/339/16
39/2049/749/11
February 2nd [3] 33/3
39/2049/11
February 2nd letter [1]
39/16
fed [1] 4/19

evidence [3] 32/2035/5
36/7
exactly [1] 52/2053/15
64/17
examine [1] 33/14
example [4] 13/1716/4
34/2543/22
examples [1] 10/13
excerpts [1] 62/10
exchange [1] 31/2
exclusively [1] 55/13
exhausting [1] 72/23
exist [1] 29/748/6
existed [1] 71/23
exists [1] 47/9
exit [1] 37/3
expand [3] 33/1742/11
42/18
expected [1] 62/3
expeditiously [1]
51/10
expert [13] 46/246/7
46/1046/1246/1346/21
46/2247/347/450/6
50/1268/171/12
explain [2] 7/1349/5
explanation [1] 29/10
explore [4] 63/2163/22
73/1873/19
extend [1] 33/2
extent [3] 24/1226/13
35/22
extra [1] 74/12
eyes [2] 64/465/7

feels [1] 34/12
felt [1] 35/20
few [3] 27/1246/546/5
fewer [1] 18/10
fight [1] 4/6
fighting [2] 13/1053/22
figure [3] 43/645/14
50/13
figuring [1] 48/4
file [8] 1/543/359/7
59/2060/567/1171/17
72/2
filed [5] 28/1942/25
45/958/869/3
files [4] 11/911/12
55/2468/7
filing [4] 53/2053/21
54/1768/8
final [1] 72/12
finally [1] 49/22
Financial [1] 56/12
find [6] 8/426/538/3
52/2553/153/2
fine [10] 32/2338/15
48/1048/2264/2165/1
69/2170/1872/973/5
finish [1] 5/13
finished [1] 34/7
firm [1] 64/22
first [18] 7/28/619/5
29/2134/534/1644/8
45/1849/650/2051/22
54/454/1955/358/859/5
59/1866/10
five [11] 18/923/23
24/1424/1525/1525/23
28/132/1335/1449/20
56/14
flows [1] 56/13
fluff [1] 74/11
focus [3] 24/2345/19
65/21
focused [2] 28/748/22
follow [2] 64/1571/24
follow-up [1] 64/15
following [3] 9/12
40/2069/18
footer [1] 27/23
foregoing [1] 76/12
foreshadowing [1] 7/4
form [3] 15/425/22
76/11
former [9] 12/316/16
16/1819/338/2440/2
42/459/1159/15
forth [3] 29/429/872/11
forths [2] 6/628/21
forward [4] 6/1520/18
70/1370/13
fought [2] 38/2138/22
found [4] 15/1215/14
43/2052/18
founders [1] 19/7
four [9] 22/722/10
30/2239/439/539/9
39/1139/1256/14
four-month [1] 30/22
four-year [1] 22/10

Fox [5] 31/1860/160/3
62/2165/12
frankly [3] 29/1141/19
47/9
freely [1] 19/13
frequently [1] 38/13
fresh [1] 64/4
friends [2] 24/1625/20
front [7] 4/1715/723/13
23/1328/1349/1356/5
full [2] 46/362/5
fully [1] 46/17
Fulton [3] 3/1
functionality [10] 53/9
55/2557/957/1262/22
71/1174/1974/2074/21
74/22
functions [8] 54/10
54/1354/1655/155/8
57/2564/1366/24
fundamentally [1]
53/12
funders [1] 37/14
funding [1] 37/13
further [6] 9/1546/19
48/255/2059/170/1

**G**

gave [2] 38/2546/8
GEORGIA [4] 1/11/20
3/176/6
get [26] 4/147/88/410/7
17/517/717/817/10
20/1821/1128/228/10
34/244/644/1547/11
48/2149/2156/662/23
63/1464/2264/2365/24
66/1570/21
gets [2] 34/155/4
getting [3] 4/2131/25
65/12
give [14] 13/1716/3
35/443/844/844/11
46/2446/2549/1962/8
62/1464/2566/1271/1
given [7] 6/415/12
17/1328/436/2244/15
46/9
gives [3] 5/521/572/2
giving [2] 32/1459/24
glad [1] 75/5
go [22] 6/156/1811/7
16/618/1121/930/16
35/1338/339/1840/17
40/1941/2341/2546/7
48/2150/1253/1066/13
70/1370/1371/3
goal [1] 3/2
goes [1] 10/15
going [56] 4/114/15
4/164/195/186/686/15
8/321/1123/2228/231/3
35/136/236/636/637/11
37/2440/1340/1540/20
40/2241/2242/142/1
42/1142/1247/1448/20
50/2050/2250/2551/17
53/453/559/659/659/9

59/1561/561/1961/22
61/2362/2164/1266/2
67/967/967/1067/10
67/1367/2267/2570/21
71/1
gone [3] 15/2451/1
51/14
good [10] 3/103/15
28/1330/1838/642/20
46/1349/1751/2563/1
got [11] 29/2130/15
35/845/845/849/2253/8
54/554/763/1970/25
grant [6] 5/1813/12
14/516/836/767/10
great [3] 3/1413/952/24
63/2
grocery [1] 27/3
grounds [1] 24/6
guess [2] 32/760/4
guide [1] 50/25
guides [1] 56/14
Gunneman [1] 3/11
GUNNEMANN [1] 2/2
guy [1] 47/13

**H**

had [28] 4/24/257/16
18/1019/1121/2526/9
28/2032/332/1032/11
35/1039/439/539/5
39/2140/746/750/251/7
51/864/1265/2066/6
68/1171/1773/673/7
hadn't [1] 52/18
hand [3] 9/731/1132/3
handing [1] 23/25
happen [1] 67/20
happened [5] 20/23
33/2443/1650/2166/24
happy [4] 34/2246/9
46/1047/11
hard [9] 7/97/247/25
10/529/1135/1135/13
41/1961/13
hardest [2] 38/2138/21
has [35] 4/25/55/23
6/2410/1010/1711/21
12/713/114/2515/518/5
25/3626/2128/1135/7
35/1343/1745/1546/5
50/651/1452/1454/25
58/1558/1758/1859/10
59/1060/1861/965/3
65/672/2074/20
hasn't [3] 20/2342/16
71/22
hate [1] 72/16
have [140]
haven't [5] 3/2513/22
15/1118/944/1563/11
having [8] 4/54/915/15
23/1930/2334/2446/15
47/18
he [23] 5/531/2133/13
34/1634/1734/1847/13
47/1747/2451/1951/20
51/2251/2352/452/5

**H**

**he... [8]** 52/860/160/2 62/2563/2267/2268/1 68/7

**he'll [1]** 39/12

**he's [7]** 45/2346/6 50/1151/1951/2051/20 67/22

**head [2]** 34/1935/12

**hear [8]** 5/232/936/21 37/839/147/1252/9 52/10

**heard [1]** 53/25

**hearing [12]** 31/12 31/2432/2038/746/10 59/159/564/366/166/3 66/1076/11

**heart [1]** 7/18

**held [1]** 76/8

**help [1]** 30/17

**her [1]** 47/18

**here [40]** 3/63/183/24 4/165/35/45/55/125/13 8/2511/713/314/1915/3 16/1417/1119/1820/25 23/2226/2130/2132/24 34/2136/1637/137/5 39/1940/1741/1841/20 43/243/945/2249/13 54/758/758/760/261/16 67/21

**here's [10]** 32/2532/25 35/2138/1740/2249/3 59/659/1062/374/16

**hereby [1]** 76/6

**hey [3]** 27/1364/25 74/13

**hiding [1]** 33/25

**him [6]** 31/2331/24 32/2032/2133/1434/21

**his [7]** 10/1510/15 34/1935/1247/1847/25 68/1

**historical [1]** 44/2

**hit [7]** 6/227/1725/1 33/1136/1837/1638/2

**hits [1]** 26/21

**hmm [7]** 10/2211/112/1 12/621/1741/2566/5

**hold [10]** 26/226/15 29/1732/1752/156/1 67/967/967/1067/13

**holding [1]** 23/16

**holistically [1]** 30/25

**Honor [94]**

**HONORABLE [1]** 1/11

**hopefully [2]** 73/9 73/20

**horribly [1]** 4/23

**horse [1]** 31/1

**housekeeping [1]** 73/25

**how [17]** 4/114/134/20 9/1818/2219/225/10 46/746/1748/451/13 56/1556/2262/963/18 70/2074/3

**hundreds [1]** 27/21

**hurt [2]** 35/735/7

**I**

**I'd [5]** 3/2443/768/13 68/1674/12

**I'll [14]** 18/1020/630/16 31/2432/1732/2134/13 35/439/139/1461/25 62/466/2072/5

**I'm [98]**

**I've [17]** 5/226/26/36/14 9/112/1013/1913/24 14/1315/2441/950/22 51/1254/554/769/469/5

**ID [9]** 43/1643/2349/9 49/1749/1949/2149/24 50/462/18

**idea [7]** 45/2251/17 65/1265/2066/766/8 66/8

**identification [8]** 43/4 54/154/554/2555/22 59/259/459/18

**identified [15]** 6/24 11/412/712/2413/16 14/1417/2225/942/4 43/1354/1356/957/3 58/2260/8

**identifies [2]** 56/15 58/9

**identify [9]** 19/1519/16 36/946/853/1455/24 56/857/1458/20

**identifying [1]** 57/15

**ignored [2]** 34/134/2

**illustrative [1]** 62/6

**imagine [2]** 7/247/25

**important [5]** 7/814/19 52/364/1564/18

**impose [1]** 41/14

**imposed [1]** 9/16

**imposing [1]** 22/12

**improperly [1]** 71/16

**INC [4]** 1/31/676/976/9

**include [4]** 38/2039/6 39/747/22

**included [4]** 6/738/19 41/1354/20

**included -- this [1]** 38/19

**includes [1]** 23/2

**including [6]** 8/108/11 10/2110/2412/1937/13

**indeed [1]** 27/21

**indefensible [4]** 20/2 21/321/621/7

**independent [1]** 55/2

**indicate [3]** 19/1155/17 64/17

**individual [3]** 10/14 13/747/23

**individuals [1]** 11/23

**informal [1]** 18/2

**information [26]** 8/10 8/239/79/810/810/12 10/1810/2111/1511/20 11/2212/2020/920/10 20/1244/2046/446/6

**J**

**JANA [3]** 1/1876/4

**47/2547/2554/2056/10 57/360/960/1565/18**

**initial [1]** 60/8

**insisted [1]** 38/25

**instance [1]** 50/21

**instead [1]** 36/17

**instructions [1]** 5/5

**insurance [1]** 20/10

**intended [3]** 24/23 25/1126/5

**intention [1]** 69/25

**interim [4]** 28/2341/10 41/1748/21

**internal [1]** 29/8

**interpose [1]** 41/11

**interpret [1]** 7/9

**interrogatories [1]** 11/11

**interrogatory [3]** 11/14 54/1261/16

**interrupt [1]** 12/16

**investment [1]** 37/13

**investor [3]** 5/176/12 38/2

**investors [1]** 37/14

**invoicing [1]** 43/23

**involved [1]** 65/11

**involves [1]** 32/17

**is [249]**

**is -- this [1]** 38/10

**isn't [7]** 17/1727/8 29/2444/948/455/9

**issue [27]** 5/1415/7 16/416/918/418/418/19 21/1127/828/2134/9 34/1134/1235/1636/14 64/864/1364/1565/11 65/2166/1067/1671/11

**issued [2]** 49/1656/17

**issues [8]** 26/1432/11 43/1051/966/1673/14 73/1573/20

**it [219]**

**it's [67]** 4/134/226/5 6/107/87/247/258/38/15 9/29/2010/1211/19 11/2015/416/1220/8 21/2424/2125/1428/1 28/228/628/2528/25 30/733/2233/2534/1 34/435/1135/1335/18 39/1539/1841/1944/22 44/2351/1452/2453/6 52/2453/2554/156/6 58/2158/2158/2258/23 59/159/359/2261/461/8 63/1965/266/1766/18 66/2267/567/2071/21 72/574/374/2274/25 75/5

**item [1]** 40/8

**items [2]** 28/1869/3

**its [1]** 54/15

**76/18**

**January [5]** 39/2949/14 52/2155/2160/24

**January 11th [1]** 52/21

**Jon [1]** 3/11

**JONATHAN [1]** 2/2

**Josh [1]** 3/11

**JOSHUA [1]** 2/2

**judge [5]** 6/1832/21 62/274/1574/16

**judged [1]** 66/8

**judgment [2]** 58/14 59/23

**JULIA [2]** 2/53/17

**July [5]** 5/1917/10 50/24

**July 13 [1]** 17/10

**July 13th [1]** 50/24

**July 19th [1]** 5/19

**June [18]** 17/849/22 50/250/251/2454/14 54/2055/556/656/22 58/858/1659/461/25 62/362/1664/1565/20

**June 13th [2]** 17/8 62/16

**June 15th [1]** 54/20

**June 23 [1]** 55/5

**June 23rd [5]** 49/22 54/1458/1661/2562/3

**just [46]** 4/77/87/108/1 8/159/2110/810/1213/2 14/815/516/316/11 16/2221/2523/2527/22 30/2030/2037/2538/15 42/1943/1545/247/18 48/449/453/1458/13 58/2160/1361/561/10 62/562/862/1465/14 66/2367/1868/568/11 69/570/2071/1373/25 75/9

**K**

**Kadie [1]** 3/12

**Kadie D'Ambrosio [1]** 3/12

**KATHERINE [1]** 2/3

**keep [2]** 41/2266/17

**kept [1]** 4/11

**key [4]** 9/1719/2542/18 74/22

**keystone [1]** 66/23

**kids [1]** 24/19

**kind [1]** 20/1

**knew [2]** 39/1260/6

**know [35]** 4/228/22 9/1310/2411/1913/10 16/1816/2018/518/15 19/219/620/2323/24 23/2425/725/1027/12 35/1135/2337/1844/8 44/1447/1948/1248/13 52/652/1153/1362/14 63/2066/2170/1070/20 74/10

**knowing [2]** 31/661/7

**knowledge [2]** 44/20

**51/13**

**known [1]** 32/11

**Kyle [2]** 31/1931/20

**L**

**LANDES [5]** 2/43/169/5 46/455/21

**language [3]** 14/13 54/2357/20

**laptop [1]** 56/18

**last [23]** 4/84/85/14 16/816/1129/2330/6 30/1034/636/336/22 38/2044/2546/546/5 51/1552/1962/1763/9 63/1065/765/1266/18

**last-second [1]** 66/18

**late [4]** 33/2250/250/2 65/20

**later [5]** 29/332/741/16 50/553/14

**law [5]** 2/32/54/1358/5 64/22

**lawyer [3]** 31/1331/16 51/9

**lawyer's [1]** 31/9

**lawyers [8]** 4/54/12 4/2220/1823/1164/21 64/2264/24

**lay [1]** 61/24

**lead [2]** 3/183/19

**leads [1]** 32/16

**learn [1]** 63/15

**least [3]** 29/1155/10 63/18

**leave [1]** 42/2

**leaving [1]** 57/6

**left [4]** 18/1019/1057/9 69/2

**legally [1]** 61/24

**legitimate [2]** 23/16 38/16

**less [1]** 70/17

**let [14]** 8/48/1812/17 13/1713/1718/239/17 41/2347/147/149/459/7 59/974/9

**let's [11]** 7/78/116/6 21/931/1250/1250/12 50/1250/1361/1064/25

**letter [12]** 11/433/334/1 39/1640/1340/2340/24 41/141/441/541/849/7

**letters [1]** 5/14

**letting [2]** 31/1467/11

**levied [1]** 62/16

**life [1]** 20/24

**light [2]** 46/1165/6

**like [29]** 3/244/164/23 10/1310/1355/527/2 27/1333/1334/534/12 43/643/759/2559/25 61/762/866/1767/14 68/1368/1668/2270/16 72/1972/2574/1274/13 74/2375/5

**Likewise [1]** 54/12

**limit [9]** 8/1112/2521/2

**L**

limit... [6] 22/1728/11 40/2045/2160/675/6
limitation [24] 7/17/13 7/259/1614/1714/20 15/2115/2319/1519/25 23/1528/928/2229/18 31/633/2535/136/17 38/1639/640/1941/8 42/1951/4
limitations [5] 12/24 21/1022/1133/839/19
limited [19] 7/37/23 8/1711/312/412/23 13/1514/1423/1223/19 24/526/628/136/837/21 39/1345/1655/1359/19
limiting [10] 7/109/17 12/1013/2431/333/10 37/1838/1658/1258/13
line [1] 27/13
linear [1] 62/11
list [19] 14/1516/11 17/217/417/718/318/4 21/1221/2021/2422/2 22/1825/939/142/12 43/1945/1756/1156/12
listen [4] 22/1334/22 35/139/14
lists [1] 4/25
little [4] 20/2530/21 31/2561/6
log [1] 71/1571/19 71/23
logs [3] 44/350/472/10
long [5] 4/124/1630/22 30/2374/3
look [14] 8/116/216/3 17/719/1927/2028/25 38/139/2452/553/854/7 56/261/7
looked [4] 6/218/25 56/363/12
looking [15] 6/38/59/1 11/2418/1523/2540/7 40/840/950/650/852/21 54/254/2460/19
lot [8] 6/38/218/19 25/2329/1341/2474/11 75/4
low [1] 49/5
luck [1] 53/3
Lunch [1] 24/17

**M**

machine [1] 76/7
made [9] 14/1231/1 47/2449/2450/2357/9 61/964/371/24
maintain [1] 57/24
majority [1] 27/16
make [18] 4/114/155/8 7/1214/1835/648/22 52/253/763/663/15 63/2064/166/1266/13 67/168/1171/14
makes [2] 29/767/3
man [2] 47/1564/25

**management [1]** 43/24
**many [3]** 5/18/370/20
**March [8]** 12/430/130/4 33/533/740/2441/151/8
**March 23rd [1]** 33/7
**March 23rd letter [1]** 41/1
**March 3rd [2]** 12/433/5
**March 3rd letter [1]** 40/24
**market [1]** 48/6
**marketing [2]** 10/13 10/13
**material [2]** 10/373/5
**materials [6]** 5/179/21 10/1310/1472/572/21
**matter [7]** 13/1026/15 42/363/1166/1873/25 76/9
**matters [5]** 61/2463/11 63/1265/1574/25
**may [13]** 3/89/1120/21 24/1830/449/1661/24 62/263/566/1766/18 66/1873/7
**May 19th [1]** 49/16
**maybe [12]** 7/320/25 27/2142/1461/665/3 65/465/465/465/865/9 65/10
**me [57]** 3/115/25/14 5/166/46/96/207/97/9 7/258/48/48/189/110/19 12/1712/2513/1713/23 14/1014/1615/815/12 20/2421/522/1323/13 23/1323/1426/1726/17 29/629/730/630/1031/4 31/531/731/832/2335/6 36/439/1739/2441/19 41/2343/846/2049/4 51/1951/2057/663/12 65/1067/2074/976/11
**mean [19]** 11/2312/15 16/720/1723/2325/13 27/230/2132/2338/9 41/1953/2155/755/9 55/1956/858/1261/14 70/4
**meaning [1]** 53/1
**means [4]** 10/2511/2 35/2374/22
**meant [1]** 10/8
**measures [1]** 57/24
**mechanical [1]** 1/16
**medical [1]** 10/1420/9
**meet [7]** 7/2117/634/2 35/1438/739/2058/1
**memorializing [1]** 39/20
**mention [2]** 9/719/11
**mentioned [4]** 8/21 9/1339/841/9
**mentions [3]** 9/2210/2 11/18
**mere [1]** 56/19
**MICHAEL [1]** 1/11
**might [14]** 19/1231/25

**36/1840/949/1253/7**
**13/183/2063/2065/15**
**65/1567/167/670/5**
**mince [1]** 4/17
**mind [1]** 47/18
**mine [1]** 56/23
**minute [3]** 8/452/19 65/13
**minutes [2]** 50/850/8
**misunderstood [1]** 21/21
**MLB [2]** 1/576/10
**modified [1]** 53/7
**moment [1]** 28/10
**money [1]** 4/18
**month [2]** 30/2230/22
**months [13]** 17/318/17 30/2232/1335/1439/4 39/539/939/1139/12 44/450/550/8
**Mooney [6]** 31/1931/20 33/1335/1260/362/21
**more [26]** 4/185/35/21 16/216/318/1718/22 19/1519/1828/1633/21 42/1746/1448/2249/4 50/1250/1951/963/16 68/1769/869/2171/10 73/1873/2574/9
**most [6]** 7/842/2242/22 42/2442/2560/2
**motion [18]** 36/755/10 55/1456/458/1458/22 59/759/2060/561/15 61/2067/1167/1767/19 71/871/1774/174/14
**motions [1]** 54/10
**move [3]** 20/1841/21 71/11
**moving [3]** 4/217/8 28/10
**Mr. [14]** 9/511/2320/7 33/1335/1246/452/4 55/2160/160/360/3 62/2162/2165/12
**Mr. Chally [1]** 52/4
**Mr. Droege [2]** 11/23 20/7
**Mr. Fox [4]** 60/160/3 62/2165/12
**Mr. Landes [3]** 9/546/4 55/21
**Mr. Mooney [4]** 33/13 35/1260/362/21
**Mrs. [1]** 38/19
**Mrs. Stone [1]** 38/19
**much [11]** 4/730/19 37/1048/654/1057/6 58/459/2461/1565/7 68/16
**must [1]** 29/17
**my [26]** 5/198/29/1 17/2020/128/328/12 30/730/940/941/2142/3 45/745/1849/351/11 51/1351/1555/1456/23 57/759/1959/2365/23 65/2367/5

**N**

**name [1]** 14/1
**names [1]** 43/24
**narrow [1]** 66/16
**natural [1]** 19/15
**nature [1]** 47/8
**necessarily [1]** 34/18
**need [17]** 9/1316/2 23/2227/2539/748/12 48/1352/552/1165/9 66/967/1569/1371/14 74/974/1175/4
**needed [2]** 49/1771/10
**needle [1]** 41/21
**needless [1]** 49/4
**needs [4]** 15/447/3 67/2368/1
**negligence [1]** 34/11
**negotiate [1]** 28/13
**negotiated [5]** 24/22 25/1130/2532/1032/12
**negotiating [1]** 33/9
**negotiations [1]** 33/24
**network [1]** 12/21
**never [17]** 6/197/312/7 17/733/433/533/834/4 37/839/639/840/14 40/2340/2541/257/3 74/25
**nevertheless [3]** 30/4 57/2164/17
**new [12]** 49/1749/19 60/1860/2561/965/2 65/1165/1966/866/8 68/868/8
**next [4]** 3/2342/21 72/2474/24
**night [2]** 65/1875/2
**no [37]** 1/55/99/1910/1 10/112/1713/1913/19 19/1120/820/1127/15 28/1931/2239/940/12 40/1241/642/1744/22 46/1855/1258/1058/10 60/1863/2464/1365/11 68/469/1069/1169/25 70/272/2372/2572/25 75/14
**none [1]** 61/24
**NORTHERN [2]** 1/1 76/5
**not [140]**
**notable [1]** 62/13
**notes [1]** 40/9
**notices [1]** 70/12
**notion [4]** 7/1510/10 13/1551/16
**now [25]** 3/223/254/16 11/2412/1213/218/22 20/2421/728/1129/6 34/1745/1545/2347/5 49/2549/2550/551/20 52/1653/1555/2064/6 71/2075/1
**number [25]** 5/1310/20 12/1816/2519/2019/21 21/1423/923/1824/6 25/1228/2329/236/6

**43/1743/1749/553/23**
**56/156/1256/1356/14**
**56/1471/2376/9**
**Number 10 [3]** 19/20 23/936/6
**Number 13 [2]** 23/18 25/12
**Number 22 [1]** 53/23
**Number 3 [2]** 12/18 21/14
**Numerous [1]** 58/4

**O**

**obfuscate [1]** 4/6
**object [1]** 15/15
**objected [1]** 24/6
**objecting [1]** 29/1
**objection [12]** 8/16 8/1613/314/1214/17 15/2522/1622/1741/12 51/468/473/11
**objections [8]** 10/24 11/1012/912/2214/10 22/2172/373/8
**obligations [1]** 47/23
**obtained [1]** 12/19
**occurred [1]** 55/13
**off [2]** 17/428/24
**offices [1]** 76/6
**Official [3]** 1/1976/4 76/19
**oh [10]** 4/238/1522/3 40/640/1741/2553/5 53/2462/2173/1
**okay [85]**
**old [2]** 60/2461/1
**once [2]** 47/1952/17
**one [68]** 6/26/56/96/14 6/237/178/129/79/10 11/2313/1615/1715/18 16/316/816/1116/12 17/2018/1318/1420/19 21/421/923/223/823/12 23/1523/1723/1823/18 23/1925/425/1226/23 27/827/1127/2528/1 28/429/1730/1832/17 36/1236/1338/1938/20 41/341/441/1342/21 42/2242/2543/1043/23 47/1449/1852/256/11 57/2059/560/160/13 61/1664/164/2266/23 67/1673/25
**one-year [1]** 27/11
**ones [11]** 12/1014/4 16/817/1317/2121/1 21/521/1129/262/769/4
**only [19]** 4/79/514/12 16/2417/1317/2017/21 22/1623/1323/1328/3 38/1842/446/554/9 54/1354/1458/2169/2
**open [4]** 3/141/2465/7 76/8
**opened [1]** 8/2
**opinion [2]** 20/128/12
**opportunity [4]** 43/3

**O**

**opportunity... [3]** 45/2546/2268/5
**opposed [1]** 57/4
**opposing [2]** 54/10 60/10
**opposition [3]** 56/4 58/1359/23
**order [8]** 14/934/3 49/1655/1455/1656/23 57/759/19
**ordered [1]** 69/4
**ordering [1]** 55/17
**orders [1]** 34/3
**other [35]** 4/910/512/8 16/819/1722/2123/24 23/2524/226/826/9 26/1026/1429/230/17 41/1344/148/551/252/2 57/2158/761/764/23 64/2466/467/967/16 67/1669/2471/572/5 72/673/1774/16
**others [4]** 16/1235/23 45/675/11
**otherwise [7]** 3/235/2 23/2324/1435/236/23 68/12
**ought [19]** 6/187/12 7/1213/1514/514/6 14/1615/2016/720/13 23/1251/951/2361/3 63/1866/870/1471/19 72/10
**our [36]** 7/229/1016/4 18/1418/1418/2519/6 19/1830/231/1132/3 32/533/234/836/15 36/1740/2441/146/1 46/246/1046/1346/20 47/347/848/749/849/20 57/857/1457/1561/15 66/2471/2373/1974/1
**out [10]** 38/340/18 41/1843/645/1448/4 50/1351/1753/358/15
**outcome [1]** 69/4
**outer [1]** 7/14
**output [1]** 57/1
**outrageous [1]** 75/7
**outrageousness [1]** 75/10
**outset [2]** 46/1064/3
**outward [6]** 56/2457/4 57/957/1258/2358/25
**over [3]** 13/1115/2 23/25
**overbroad [1]** 35/20
**overwhelming [1]** 27/16
**own [2]** 21/734/11

**P**

**p.m [1]** 75/18
**page [14]** 6/1039/24 39/2540/740/1740/18 41/541/849/752/2254/8 54/2555/2356/9

**Page 11 [1]** 49/7
**Page 2 [1]** 6/10
**Page 3 [2]** 54/854/25
**Page 51 [1]** 52/22
**Page 58 [1]** 55/23
**Page 6 [1]** 41/5
**Page 7 [3]** 40/1740/18 41/8
**pages [1]** 40/20
**part [17]** 8/158/259/2 9/313/317/424/427/19 30/2136/1553/2455/8 59/1259/1662/2265/3 74/17
**particular [5]** 12/8 19/2447/2348/964/9
**particularly [4]** 29/14 46/951/364/2
**parties [6]** 5/207/4 24/2229/930/2534/3
**parts [2]** 21/749/9
**party's [1]** 6/22
**passing [1]** 65/18
**passwords [1]** 43/25
**Pay [1]** 20/12
**paying [2]** 4/185/5
**Payment's [1]** 43/12
**PAYMENTS [1]** 1/63/7 76/9
**PDF [2]** 41/541/8
**people [14]** 23/2424/12 24/1424/1625/1525/23 27/1128/136/1844/18 44/1947/1062/964/24
**Perfect [1]** 26/12
**performed [1]** 4/21
**Perhaps [1]** 63/14
**period [3]** 22/1024/16 27/11
**person [4]** 45/2247/19 47/1952/6
**personal [2]** 10/15 22/10
**personally [1]** 23/24
**perspective [6]** 9/10 18/1419/619/1845/18 57/8
**physical [1]** 54/6
**pick [1]** 7/7
**picking [1]** 17/20
**piece [1]** 49/25
**pivot [2]** 26/2053/5
**place [5]** 28/1031/15 38/1847/1447/14
**places [1]** 47/11
**plaintiff [23]** 1/42/2 5/165/216/176/216/24 18/2221/529/1729/20 29/2332/1834/1136/3 36/751/353/154/854/10 54/1556/2367/14
**plaintiff's [10]** 6/77/2 8/643/445/1654/12 56/2057/457/467/25
**plaintiffs [2]** 3/126/1
**plans [1]** 24/17
**plausible [1]** 7/11
**play [2]** 32/1262/15

**pleading [2]** 43/359/23
**Please [1]** 18/1
**point [12]** 8/2217/20 18/1344/2522/261/15 61/1865/2365/2367/5 68/2373/14
**points [2]** 61/2071/14
**poorly [2]** 4/134/20
**portion [1]** 43/3
**portions [1]** 46/23
**pose [1]** 12/9
**posed [1]** 43/25
**position [9]** 7/1828/23 32/1841/1041/1141/21 41/2248/865/17
**positions [1]** 31/14
**positives [1]** 38/23
**possible [5]** 59/2261/4 61/869/1870/10
**possibly [1]** 68/20
**post [2]** 5/176/11
**postponed [1]** 69/14
**potential [1]** 37/14
**potentially [1]** 32/7
**practice [1]** 6/13
**precisely [1]** 64/17
**predecessor [1]** 30/2
**predicted [3]** 52/16 52/1760/23
**prefer [1]** 9/24
**prejudiced [2]** 34/24 65/22
**prepared [2]** 58/169/17
**present [1]** 73/10
**pretty [3]** 4/2229/655/9
**preview [2]** 61/1562/20
**previously [3]** 43/13 72/2275/7
**prior [10]** 5/2431/8 32/1550/451/2361/4 64/764/1266/672/7
**priority [2]** 6/2312/5
**privilege [4]** 60/17 71/1571/1771/19
**privileged [1]** 72/10
**probably [4]** 4/1829/21 70/17
**problem [3]** 27/17 34/1072/23
**procedures [1]** 30/3
**proceed [1]** 68/13
**proceedings [7]** 1/11 1/1633/275/1776/8 76/1076/13
**process [8]** 4/34/14 36/147/147/247/1149/4 50/11
**produce [36]** 5/176/21 8/168/2011/311/911/17 12/2214/2215/618/12 20/1624/424/1325/1 29/1029/1331/332/16 35/835/835/2238/3 46/1149/1049/1549/20 68/1969/470/970/23 71/272/672/672/2/23
**produced [21]** 1/17 10/310/511/613/515/16

**26/1426/2227/2543/13** 43/2144/250/750/9 70/2371/2071/2171/22 72/1172/2072/21
**producer [1]** 68/18
**producing [4]** 36/17 46/1649/873/4
**product [4]** 20/1448/5 56/1360/17
**production [10]** 8/78/8 12/413/119/1919/21 23/1930/2439/1369/18
**products [4]** 19/23 20/2123/736/24
**profits [1]** 16/15
**program [1]** 57/2
**projects [1]** 22/11
**prominently [1]** 19/19
**proper [1]** 70/11
**proprietary [3]** 8/9 10/2156/16
**prosecution [1]** 5/23
**prospective [2]** 19/4 19/1042/456/12
**protected [1]** 56/25
**prove [1]** 57/23
**provide [4]** 9/511/16 59/260/15
**provided [2]** 49/2459/4
**provider [1]** 10/15
**public [1]** 57/5
**Publix [1]** 27/14
**pull [1]** 56/7
**purely [1]** 4/5
**pursuant [1]** 30/3
**pursue [1]** 6/8
**pursuing [1]** 5/22
**pushing [1]** 21/2
**put [14]** 7/217/2218/24 28/1030/2135/537/10 39/858/1559/1759/18 61/1961/2164/7

**Q**

**question [9]** 19/1821/4 30/730/730/945/747/1 63/165/14
**questions [2]** 32/21 63/2
**quickly [3]** 68/1769/17 70/10
**quietly [1]** 61/5
**Quinn [2]** 3/1640/2
**quite [4]** 4/249/1252/5
**quoted [1]** 14/13

**R**

**raise [4]** 29/2330/248/8 51/9
**raised [9]** 22/1624/2 29/2042/1242/1542/15 51/551/2373/12
**random [1]** 36/18
**rate [2]** 29/874/22
**RDR [2]** 1/1876/18
**re [1]** 6/19
**re-read [1]** 6/19
**reach [1]** 73/15

**read [12]** 6/199/1811/7 12/1020/1928/1829/3 55/1459/2262/1069/5 75/9
**readily [1]** 58/24
**reading [1]** 21/12
**ready [3]** 50/751/20 71/17
**realistic [1]** 7/25
**really [8]** 4/204/206/18 7/511/525/1353/861/13 66/768/1469/2370/18 71/2171/2274/16
**reasonable [3]** 37/8 57/2457/24
**reasons [4]** 5/196/2 23/144/7
**recall [1]** 49/12
**receive [1]** 41/2
**received [7]** 9/1333/4 33/533/840/1440/23 40/25
**receives [1]** 20/7
**recent [3]** 42/2342/24 42/25
**recently [1]** 49/23
**Recognizing [1]** 53/11
**reconsider [2]** 67/22 68/1
**reconsideration [2]** 59/2160/5
**record [5]** 5/2529/24 52/260/1476/12
**recorded [1]** 1/16
**redacted [1]** 9/23
**reduced [1]** 76/11
**refer [43]** 13/1514/1 15/1629/17
**reference [9]** 9/149/21 11/1214/1224/355/18
**referenced [1]** 22/18
**referencing [1]** 11/13
**referring [5]** 23/1541/4 41/541/1655/21
**refers [1]** 23/2
**regarding [1]** 20/20
**regardless [1]** 17/2
**regards [1]** 51/3
**reiterated [1]** 33/5
**relate [10]** 13/1515/17 19/1423/1925/425/5 25/826/1829/1735/22 45/144/355/18
**related [5]** 18/1243/7 44/144/355/18
**relates [3]** 23/243/24 52/3
**relating [1]** 16/15
**relation [2]** 38/1338/13
**RELAY [16]** 1/63/7 16/1518/527/937/4 37/1343/1144/2145/23 45/2446/2348/652/8 69/1776/9
**Relay's [2]** 43/2043/25
**relevant [10]** 13/122/23 24/1326/549/966/19 66/2267/667/1767/19

**R**

reliance [3] 36/436/5 36/13
relief [1] 15/9
rely [1] 56/19
remarkable [1] 52/5
remove [1] 42/19
removing [2] 14/20 21/10
reply [1] 74/15
reported [1] 76/7
Reporter [3] 1/1976/4 76/19
REPORTERS [1] 75/20
represent [1] 3/12
representation [1] 59/11
represented [2] 6/20 65/10
request [28] 5/186/25 8/811/313/1313/13 16/1419/1919/2119/24 24/2135/239/1839/19 40/2040/2041/1241/12 41/1343/1145/945/11 45/1945/1948/2250/13 53/2367/15
requested [1] 12/8
requests [22] 6/87/16 8/613/2414/1015/16 15/1818/2519/1419/16 19/1728/2440/2245/8 53/2554/1562/1664/7 64/1564/1667/1771/24
require [1] 28/3
required [1] 59/2
requirement [2] 36/7 36/8
requires [1] 46/14
requiring [1] 33/11
reserve [1] 32/6
reserving [1] 73/21
resolution [1] 45/14
resolve [6] 21/723/12 34/366/1071/773/20
respond [6] 17/2140/5 40/1348/2551/959/9
response [30] 9/18 10/1911/811/2513/13 13/1413/2319/2420/16 29/329/1431/333/433/6 33/836/836/2240/11 40/1240/1240/1440/23 40/2541/256/359/10 59/1074/1774/1875/6
responses [22] 7/22 7/238/611/1014/14 18/1629/529/1529/19 29/2230/130/2331/11 32/332/633/734/235/18 51/851/1354/1361/16
responsible [4] 44/18 44/1945/2346/23
responsive [9] 7/16 11/312/1112/2315/15 19/1619/1724/426/14
responsiveness [3] 13/2515/422/17

**retained** [6] 8/208/21 9/889/2210/313/8
retrace [2] 35/1335/14
returning [1] 38/22
revelation [1] 66/23
revenue [1] 16/15
review [7] 15/430/24 34/845/2546/146/11 50/3
reviewed [1] 41/4
reviewing [2] 13/2 46/21
reviews [1] 5/4
rewarding [1] 34/10
rewriting [1] 47/15
RFP [14] 12/913/6 13/1816/618/318/420/4 31/1132/333/736/23 49/551/862/6
RFPs [7] 12/412/13 14/2015/2218/2035/20 49/6
right [48] 3/65/127/19 14/114/1720/1621/12 24/724/824/1024/24 26/1026/2326/2529/24 30/1330/1532/632/12 34/1036/1437/438/4 38/1039/339/1740/4 41/942/2042/2143/10 43/1444/1245/748/16 49/2551/1953/1554/3 60/2062/1262/1968/10 70/570/670/871/20 75/13
rights [1] 6/1
ripe [1] 51/20
road [2] 41/1365/6
roadmap [1] 56/13
ROADSYNC [43] 1/3 3/79/79/129/1410/8 10/1110/1110/1510/17 10/1811/1411/2011/21 11/2212/712/1912/20 13/514/2415/1016/16 16/1819/719/1019/22 20/722/622/723/625/6 26/1026/1827/933/25 37/438/1339/745/22 47/2448/552/876/9
RoadSync's [14] 8/9 11/1012/314/1519/22 19/2320/1320/2020/21 36/2443/2347/2447/25 56/16
room [4] 20/1857/6 59/2461/12
rule [5] 36/262/162/4 63/863/11
ruled [2] 51/158/10
ruling [3] 28/337/24 59/23
run [3] 4/1827/1932/16
RYAN [2] 2/43/16

**S**

said [53] 5/195/226/7 6/106/136/146/167/7

11/1412/1517/317/5 18/1621/2524/1532/15 34/535/2136/1536/23 37/337/539/439/639/11 41/1741/2049/649/7 49/1049/1950/2251/12 52/452/452/552/24 52/2455/2355/2456/22 58/1158/1158/1359/19 61/2464/2574/1374/15 74/1674/1874/1876/10
same [21] 7/118/418/14 23/1836/1137/2438/8 40/1641/2242/642/7 42/844/2145/2247/10 52/653/660/2464/664/8 74/21
sat [2] 61/566/7
saved [1] 56/17
say [44] 4/66/110/23 11/1612/2214/618/9 18/1020/320/620/19 28/1129/1131/133/1 33/1233/1533/1934/19 33/1337/1538/2539/9 39/1239/1940/2441/1 42/1551/2352/1753/5 53/1055/2056/856/9 56/2359/1061/862/21 65/465/866/2068/8 72/16
saying [16] 11/2018/17 22/2525/325/830/18 40/440/2049/1653/12 53/1860/2565/266/17 74/2074/21
says [4] 11/831/13 43/1254/8
schedule [1] 74/6
school [1] 24/19
scope [4] 18/2530/24 30/2465/5
scratch [1] 47/15
search [39] 6/2224/22 24/2224/2325/125/10 25/1126/426/826/9 26/1026/1026/1926/21 26/2327/2528/128/13 30/530/1730/2431/2 31/1032/132/432/10 32/1232/1633/1033/11 33/1433/1734/2535/9 36/1837/1637/1937/22 38/2
second [8] 8/543/8 54/1854/2463/963/10 65/766/18
secret [31] 15/138/12 43/1643/2348/349/9 49/1749/1949/2150/4 54/1544/454/955/355/18 55/2256/1656/2157/10 57/1357/1457/1557/18 57/2158/359/259/3 59/1860/962/1864/19
secrets [14] 43/13 10/2111/1519/2220/14 20/2123/728/643/5

54/1556/956/1156/24 see [12] 5/522/2035/18 39/1741/342/1745/8 54/456/1565/1766/4 66/15
seeing [1] 35/19
seeking [3] 15/1064/8 64/9
seeks [2] 19/2143/11
seems [2] 43/657/6
seen [2] 10/1235/13
selected [2] 46/16 46/16
selecting [1] 46/18
send [1] 34/1
senior [1] 5/4
sent [1] 33/3
series [7] 6/610/23 12/2212/2421/128/20 29/19
serve [4] 50/1354/14 62/1766/25
served [4] 30/133/7 49/2362/18
server [1] 12/21
services [4] 19/23 20/2123/736/25
set [5] 8/636/2546/3 49/669/22
setting [1] 10/7
seven [2] 17/318/17
shadow [2] 33/933/15
shared [2] 37/1438/1
she [1] 5/5
ships [1] 65/18
should [11] 6/1913/12 18/2123/1829/2044/6 51/1655/1855/2470/13 74/8
shouldn't [4] 42/14 63/2264/2573/11
show [2] 31/735/5
side [1] 22/11
significant [2] 14/21 72/21
signify [1] 73/6
silence [3] 33/2434/18 37/11
silly [1] 20/1
similar [1] 53/8
simple [4] 4/2230/7 30/965/10
simplest [2] 46/2047/5
simply [8] 18/2422/25 45/2548/748/1168/5 70/2073/21
since [2] 17/355/10
single [9] 22/924/15 24/1725/1425/1925/22 26/2426/2536/17
sir [3] 3/205/931/22 45/1055/1656/767/24 75/14
sit [1] 10/1
sitting [5] 4/817/9 17/1120/2432/24
situation [2] 46/15 52/16

six [31] 30/2230/22 32/17
six-month [1] 30/22
slightly [1] 57/20
small [1] 16/24
smarter [1] 64/23
sneaking [1] 35/17
so [99]
software [6] 55/19 56/1756/1957/558/21 62/14
Solely [1] 46/2
solicitation [1] 37/12
some [18] 5/1512/13 13/615/415/918/13 23/2227/2328/2434/12 35/343/946/464/866/7 72/1873/1573/16
somebody [4] 5/47/12 61/1164/24
somehow [1] 73/19
something [29] 4/19 7/710/914/2423/124/9 31/932/732/1535/635/8 35/1637/1357/538/3 39/1342/1445/546/14 46/1847/1351/753/14 57/1058/861/762/23 68/774/19
sometimes [1] 75/5
somewhat [1] 43/7
soon [3] 49/1949/23 49/24
sooner [1] 29/21
sorry [22] 9/2411/6 12/1513/2114/2317/10 17/2521/2122/123/8 23/2126/328/1428/17 30/830/1240/640/640/8 41/2341/2443/4
sort [34] 3/41241/741/10
sorts [2] 9/1622/11
source [47] 43/1243/13 43/2044/144/644/23 45/345/1745/1945/21 45/2345/2446/346/8 46/2146/2348/1852/24 52/2553/153/253/6 54/1655/255/855/9 55/1355/1855/2456/14 56/1656/2156/2557/1 57/457/757/1657/18 58/1158/1258/2159/20 59/2460/662/774/20 74/21
sources [1] 10/6
spaghetti [1] 15/12
speaking [1] 52/23
specific [2] 19/1356/10
specifically [2] 19/14 56/15
specifications [1] 48/14
specifics [2] 13/20 43/18
spent [3] 4/76/350/6
spoken [1] 21/13
stage [2] 35/1655/10

**S**

**stand** [1] 9/25
**stands** [1] 6/13
**start** [2] 17/428/7
**started** [1] 17/5
**starting** [3] 852/21
**starts** [1] 41/7
**stated** [1] 54/10
**statement** [3] 45/6 54/2574/18
**STATES** [2] 1/176/5
**Stenograph** [1] 76/7
**stenography** [1] 1/16
**step** [1] 74/24
**steps** [1] 48/21
**still** [6] 9/1215/319/17 42/1649/2271/15
**stipulate** [1] 65/19
**stipulation** [1] 66/15
**STONE** [3] 2/53/17 38/19
**storage** [1] 12/21
**store** [1] 27/3
**stored** [1] 12/20
**straight** [1] 68/11
**straightforward** [2] 29/1561/3
**streamline** [1] 47/11
**street** [1] 48/4
**strike** [7] 36/743/354/2 67/1767/1971/874/1
**striking** [1] 24/3
**subject** [2] 10/2312/24
**submitted** [2] 31/17 31/19
**substance** [1] 4/4
**substantive** [1] 7/5
**succeed** [1] 4/19
**sufficient** [1] 74/8
**suggesting** [11] 31/4 31/531/834/1534/16 34/1755/1758/458/6 61/1170/12
**suggestion** [1] 73/5
**summary** [2] 58/14 59/23
**supplemental** [5] 50/1354/1854/1954/24 55/3
**support** [1] 47/9
**suppose** [1] 60/1
**supposed** [5] 18/8 18/1523/2534/750/25
**sure** [9] 7/1113/21 14/1816/517/2424/21 27/434/1368/11
**suspect** [3] 27/1027/10 27/12
**sustain** [1] 14/16
**sustaining** [1] 15/25
**SW** [1] 1/20
**sweeping** [1] 47/8
**system** [15] 26/25 43/2043/2544/344/20 46/146/247/1048/12 53/153/255/257/17 57/1962/9
**systems** [2] 27/848/13

**T**

**table** [3] 39/439/871/5
**tactic** [3] 63/963/10 63/19
**take** [9] 8/318/1643/22 47/2548/150/1265/18 70/2472/12
**taken** [1] 52/18
**taking** [2] 47/1664/2
**talk** [8] 4/1018/1820/22 28/228/1643/766/474/2
**talked** [2] 5/1860/10
**talking** [14] 21/121/16 21/1821/2324/1227/11 28/432/149/1450/11 50/1958/2562/968/1
**target** [2] 25/1153/13
**Ted** [1] 1/20
**teleconference** [1] 5/19
**tell** [8] 3/2213/418/18 20/1735/1535/2349/9 51/20
**telling** [6] 9/110/19 12/2526/1727/1551/19
**ten** [8] 62/1866/2471/1 71/2572/572/972/24 73/2
**ten-day** [1] 72/5
**tens** [2] 10/327/21
**term** [11] 26/1026/19 26/2127/1627/1731/2 36/1838/238/1238/20 38/22
**terms** [32] 6/2224/22 24/2225/125/1025/11 26/426/826/1126/23 28/1228/228/1330/5 30/1730/2431/1032/1 32/432/1032/1232/16 33/1033/1133/1533/18 34/2535/735/937/16 37/1937/22
**testifies** [1] 62/25
**testify** [3] 38/1959/16 64/12
**than** [17] 4/128/199/21 18/1018/2219/1623/25 33/2142/1745/248/5 56/258/765/1269/21 69/2471/5
**Thank** [7] 48/2359/8 67/1268/1071/375/14 75/15
**that** [505]
**that's** [77]
**theft** [2] 28/656/21
**their** [45] 4/236/18/10 8/239/1210/2113/12 14/1715/2522/1022/10 23/723/723/2524/19 29/1834/1137/337/4 40/1143/1644/644/15 45/1946/746/1246/21 46/2247/247/347/4 48/1248/1348/1749/17 50/350/350/652/2553/1 54/161/2462/1873/20

74/11
**them** [35] 4/1067/481/9 12/1215/2516/2018/18 21/221/421/931/13 31/1433/1035/1939/3 43/844/1044/1046/16 47/1652/1153/1359/9 60/460/461/2161/23 61/2365/970/1170/13 72/673/974/275/1
**themselves** [4] 4/18
**then** [50] 5/158/249/13 12/2213/913/1220/13 21/421/521/2124/8 24/2525/126/1528/3 28/1131/1233/2334/5 35/137/839/140/1941/1 41/1344/2046/746/12 46/1247/148/1553/2 53/1054/1955/2559/3 59/1561/2563/1065/14 65/2166/868/2269/16 70/571/471/772/1273/4 74/24
**theory** [3] 60/1165/20 70/4
**there** [54] 6/178/49/15 10/31/1412/1213/7 14/1915/315/1419/5 20/2122/2226/926/10 26/2027/1227/2029/3 29/1329/2530/336/4 37/1640/1244/2147/1 47/1347/1549/1255/7 55/2255/2358/361/12 61/1362/1363/1965/5 66/1468/1469/869/12 69/1369/2369/2371/3 71/1571/2172/472/18 72/1872/2073/18
**there's** [8] 15/341/12 42/1642/1743/1043/22 52/1271/10
**therefore** [3] 10/1114/8 14/25
**these** [39] 4/75/39/17 11/1218/518/1618/19 19/619/1622/1123/23 24/1224/1525/1927/11 27/2028/730/1631/10 32/532/1733/834/25 35/335/1535/2036/18 39/1443/643/947/10 47/2248/956/1061/20 69/1470/973/1473/15
**they** [109]
**they're** [17] 6/2311/20 21/224/1428/333/17 33/2033/2034/1237/18 53/2260/1861/2261/23 62/762/864/23
**they've** [5] 17/1317/22 35/842/444/5
**thing** [18] 22/923/13 23/1323/1824/1735/10 36/1139/842/642/742/8 44/2144/2551/2260/13 60/2464/269/2

**things** [48] 45/5/13 34/1335/537/11 51/1151/1757/1757/25 62/863/1564/865/572/6 75/5
**think** [145]
**thinking** [3] 4/84/11 27/13
**thinks** [1] 51/20
**this** [173]
**those** [48] 4/126/87/1 7/37/169/1611/1711/18 13/113/614/514/614/10 14/2016/116/2116/22 16/2517/1818/1218/13 18/2519/1219/1322/14 24/1325/127/2532/21 33/1233/1433/2444/1 45/147/956/2557/25 57/2562/662/762/16 63/269/369/1469/22 70/1271/672/23
**though** [6] 45/253/5 54/1757/660/660/16
**thought** [14] 21/2529/9 34/1537/737/2152/4 57/1059/1159/1664/14 64/1664/1865/365/3
**thousands** [5] 10/4 10/427/2127/2271/16
**three** [3] 56/1369/13 72/12
**through** [21] 4/146/2 6/2511/1013/1415/25 18/1121/927/2028/18 30/430/1635/1740/19 47/1248/1348/1448/20 58/163/1573/9
**throughout** [1] 36/1
**throw** [1] 51/17
**time** [18] 3/234/76/39/1 19/1023/1434/550/6 50/1250/1958/860/2 64/665/1567/1468/15 71/974/9
**timeline** [1] 51/18
**timely** [4] 5/2242/12 42/1542/16
**times** [2] 14/1326/9
**timing** [1] 74/1
**today** [2] 17/1256/22
**told** [3] 12/313/2346/11
**too** [7] 30/1933/22 34/1435/461/1565/7 72/9
**took** [8] 43/1643/25 44/2044/2244/2349/20 52/1162/3
**top** [1] 54/8
**total** [1] 50/6
**totally** [1] 72/1
**trade** [44] 4/258/10 10/2111/1515/119/22 20/1320/2023/728/6 38/1243/543/1643/23 48/349/949/1749/19 49/2150/454/154/454/9 54/1555/255/1855/22

56/856/1156/1656/24 57/1057/1357/1457/15 57/1857/2158/359/2 59/359/1860/962/18 64/19
**tradeoffs** [1] 31/1
**trades** [1] 31/1
**transcript** [5] 1/111/17 52/2155/2376/12
**traveling** [2] 19/365/6
**treat** [1] 61/10
**tried** [1] 61/1
**true** [7] 10/1219/11 24/2155/1168/2568/25 76/12
**try** [3] 43/852/1872/5
**trying** [11] 4/109/6 33/1741/2542/1842/19 43/646/748/748/11 48/21
**turn** [1] 15/1
**Turner** [1] 1/20
**turns** [1] 45/15
**two** [16] 13/2013/24 15/2516/119/520/17 23/1144/444/750/550/8 56/1267/967/1667/16 74/7
**typewritten** [1] 76/11

**U**

**U.S** [1] 1/19
**ubiquitous** [2] 38/11 38/12
**ubiquitously** [1] 26/24
**ultimate** [1] 41/11
**ultimately** [3] 41/11 44/1973/4
**Um** [7] 10/2211/112/1 12/621/1741/2566/5
**Um-hmm** [7] 10/2211/1 12/112/621/1741/25 66/5
**unable** [1] 7/4
**unclear** [1] 7/2
**uncover** [2] 9/1148/8
**undefined** [1] 36/25
**under** [4] 19/330/15 47/2251/14
**underlying** [1] 56/25
**understand** [20] 5/7 5/107/209/1511/2419/8 20/2423/329/1241/19 42/944/2546/1248/11 52/1355/1957/2264/5 67/1968/10
**understanding** [4] 42/349/1463/1873/19
**understood** [14] 5/9 5/1136/1042/1045/18 46/2263/767/768/772/4 72/1573/173/475/12
**Unequivocally** [1] 36/15
**unfair** [3] 29/1653/12 75/1
**unique** [2] 44/1644/16
**UNITED** [2] 1/176/5

## U

**unless [3]** 3/225/2 61/12

**unnecessarily [1]** 33/1

**unreasonable [2]** 28/4 28/12

**unredacted [1]** 42/25

**until [7]** 30/632/10 36/2254/1262/362/24 67/10

**untimely [1]** 68/8

**unusual [1]** 63/17

**up [15]** 5/138/1824/11 34/434/939/239/343/9 45/1554/256/761/6 64/1564/2571/24

**upfront [1]** 64/11

**upon [3]** 4/1513/25 22/18

**us [21]** 10/917/718/18 34/1035/2344/846/5 46/646/846/1146/24 46/2549/949/1949/24 62/362/862/1464/3 64/1572/8

**use [1]** 7/15

**used [3]** 26/2438/12 44/23

**user [3]** 43/2443/24 56/14

**using [2]** 51/1151/15

**uttered [1]** 75/1

**utterly [4]** 21/221/3 21/621/6

## V

**version [3]** 42/2543/11 48/17

**versions [3]** 43/2144/2 50/4

**very [23]** 6/913/23 16/2425/1227/1228/7 29/1129/1529/1630/18 32/1034/644/2545/22 48/549/551/551/13 51/2557/962/2463/5 64/2

**visible [1]** 57/1

**volumes [1]** 38/22

## W

**waiting [1]** 71/18

**waive [1]** 60/16

**waived [1]** 6/1

**walk [1]** 48/4

**want [56]** 4/225/35/3 5/45/89/2014/1817/6 18/118/118/1120/18 22/1931/731/1531/23 31/2432/1932/1932/20 32/2133/134/1334/21 35/835/2337/2539/24 43/845/145/845/14 45/2145/2546/2460/16 61/1161/1463/1664/1 64/1164/1865/1765/18 66/166/266/966/21 69/2270/570/2071/13

**wanted [5]** 10/2646/21 62/262/2368/11

**wanting [1]** 4/5

**wants [2]** 6/2137/15

**was [116]**

**wasn't [5]** 16/1042/15 42/1549/1760/2

**wasted [1]** 9/1

**way [14]** 6/2017/21 29/638/2539/743/7 46/2051/252/753/653/7 57/1657/1975/6

**we'd [3]** 21/1361/12 70/16

**we'll [25]** 11/1611/17 18/1624/1329/1331/2 35/2135/2136/1636/24 38/149/2061/2165/16 65/1765/2165/2165/24 65/2466/1570/1371/9 71/1173/973/23

**we're [31]** 8/2513/10 14/2017/1618/1522/12 31/332/133/2134/25 40/1940/2040/2242/18 42/1947/447/547/748/7 48/1148/1550/2054/2 57/1258/2460/1461/25 64/864/969/1770/21

**we've [8]** 4/255/17 10/1218/1718/2534/7 42/853/25

**week [2]** 4/84/8

**weeks [2]** 49/2174/7

**well [45]** 3/178/15 10/1013/914/714/18 15/515/915/2416/21 17/1617/2018/918/13 21/1324/225/1026/15 26/1627/2428/1531/2 33/1933/2034/1334/15 34/2136/239/641/341/6 50/1153/1953/2456/1 57/261/262/863/568/19 69/1269/1271/1974/2 75/5

**went [5]** 16/1243/25 44/2146/1756/3

**were [69]** 6/66/117/4 7/58/239/810/411/5 11/1312/912/1313/7 18/1318/1419/619/9 22/722/2224/1224/16 26/526/826/926/10 26/1426/1427/1127/12 28/728/1928/2429/1 29/230/130/130/330/23 32/232/332/532/632/11 34/1635/1735/2035/20 36/137/1638/744/18 44/1947/347/2449/14 50/2350/2451/1359/2 62/1662/1764/1864/20 65/2269/1271/1671/17 71/1875/1776/11

**what [107]**

**what's [5]** 45/949/15 54/1762/1369/3

**whatever [1]** 74/5

**whatsoever [1]** 38/14

**when [30]** 4/810/7 10/2318/818/1022/22 27/2029/2132/332/15 34/734/734/941/17 49/2250/2451/751/8 51/1951/2259/1960/10 61/562/2564/1865/11 66/468/770/2371/9

**whenever [1]** 75/2

**where [28]** 15/321/1 21/530/2534/336/13 38/1038/1038/1841/7 43/245/845/1448/15 48/2253/1553/1753/18 53/2255/458/758/7 58/1958/2058/2358/23 59/173/15

**where's [1]** 40/11

**Whereupon [1]** 75/17

**whether [23]** 13/25 22/1723/123/1527/24 45/1646/1347/248/14 51/2363/1163/1265/2 65/1466/666/766/17 68/171/1073/1873/19 74/2474/25

**which [36]** 10/2013/17 14/914/2417/2118/3 20/120/423/823/825/12 26/126/2126/2427/19 28/2439/2442/2142/24 43/1143/1645/1648/16 49/351/852/452/953/20 53/2154/2455/2155/25 56/1757/1657/1962/16 66/1

**while [1]** 47/24

**who [25]** 5/411/23 16/1616/1817/618/5 18/1318/1518/1819/2 19/1220/1823/2424/16 31/1635/2340/140/1 44/1844/1945/2246/22 47/1052/660/2

**why [18]** 8/118/24 13/1014/817/318/21 20/2344/559/1759/19 59/2060/560/862/3 62/2365/267/167/19

**wide [1]** 65/7

**will [28]** 8/1611/914/14 14/2114/2219/1220/17 35/135/535/636/16 38/2446/2148/2149/10 51/2551/2558/160/14 60/1463/863/1065/10 65/1968/1970/970/16

**windows [2]** 41/2443/9

**wire [1]** 30/16

**withdraw [1]** 70/12

**withhold [1]** 23/1

**withholding [2]** 13/7 25/3

**within [2]** 23/1464/22

**without [5]** 9/1132/24 35/1337/1538/119

**witness [3]** 31/2434/22

**witnesses [1]** 69/13

**woman [1]** 47/15

**won't [3]** 36/2336/24 60/16

**woops [1]** 41/23

**word [10]** 10/1010/17 11/2114/2515/515/5 19/327/2238/1138/11

**words [2]** 4/1773/17

**work [5]** 32/1356/13 60/1772/1973/9

**worked [2]** 52/752/8

**works [1]** 72/7

**world [1]** 26/25

**would [32]** 4/168/11 9/2412/429/1029/10 29/1631/632/432/12 33/1335/935/1235/12 36/2236/2336/2537/3 37/539/1352/1853/12 55/2059/2559/2560/14 60/2464/1364/1767/14 68/2272/19

**wouldn't [1]** 14/8

**write [2]** 16/1075/5

**writing [2]** 45/2447/14

**written [5]** 29/2129/24 34/162/1766/25

**wrong [9]** 40/740/7 40/840/1047/1347/20 47/2258/660/6

**wrote [3]** 45/2247/10 47/14

## Y

**y'all [6]** 3/184/84/12 4/2138/454/7

**yeah [9]** 11/621/1922/3 41/750/1653/2463/4 68/468/19

**year [10]** 22/1024/16 25/1625/1725/1825/23 26/127/1128/155/21

**year-long [1]** 24/16

**years [3]** 18/922/7 22/23

**yes [35]** 3/203/217/20 14/415/1916/1317/15 17/1818/720/1922/8 23/425/1426/627/9 30/1130/1437/1039/23 40/1140/1742/1045/10 49/254/2255/555/16 56/760/2167/2468/6 68/968/972/1775/3

**you [211]**

**you'll [2]** 11/212/22

**you're [25]** 10/1917/20 20/1921/126/1726/17 27/729/631/834/15 34/1740/441/444/11 48/2153/353/453/554/3 58/660/1960/2061/19 63/2168/18

**you've [8]** 13/2314/9

**without [5]** 9/1132/24 35/1337/1538/119

**you-all [11]** 4/146/48/3 26/427/2428/1028/16 29/132/1658/1175/5

**your [137]**

**Your Honor [84]**