## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

ROADSYNC, INC.,

       Plaintiff,

v.

RELAY PAYMENTS, INC.,
SPENCER BARKOFF, and
JAMES RYAN DROEGE,

       Defendants.

Case No.: 1:21-CV-03420-MLB

## DEFENDANTS' MEMORANDUM OF LAW
## IN SUPPORT OF MOTION TO STRIKE AND EXCLUDE THE
## TESTIMONY OF PAUL DOPP

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ................................................................................ 1

BACKGROUND ................................................................................................... 2

      A.    RoadSync's Anticompetitive Lawsuit And Claim To Damages.......... 2

      B.    The Dopp Report ................................................................... 3

ARGUMENT ....................................................................................................... 5

I.    ROADSYNC'S   FAILURE   TO   MAKE   NECESSARY
    DISCLOSURES REQUIRES EXCLUSION UNDER RULE 37 ................. 5

II.   DOPP'S  TESTIMONY  IS  INDEPENDENTLY  SUBJECT  TO
    EXCLUSION UNDER RULE 702 .......................................................... 10

      A.    Dopp's Lost Profits Calculation Is Unreliable And Unhelpful
           Because It Fails To Account For RoadSync's Status As A New
           Business................................................................................. 11

      B.    Dopp's Unjust Enrichment Calculations Are Unreliable Because
           They Rest On Faulty Assumptions And Data ................................... 15

      C.    Dopp's Lost Profits And Unjust Enrichment Analysis Are
           Unreliable Because Dopp Double Counts and Fails To Attribute
           Damages To Allegedly Misappropriated Trade Secrets ................... 21

CONCLUSION .................................................................................................... 25

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*325 Goodrich Ave., LLC v. Sw. Water Co.*,
  891 F. Supp. 2d 1364 (M.D. Ga. 2012) .................................................. 12, 13, 14

*Alcatel USA, Inc. v. Cisco Sys., Inc.*,
  239 F. Supp. 2d 660 (E.D. Tex. 2002)......................................................... 22, 25

*ARCPE Bahamas LLC v. Neuman*,
  2021 WL 4973473 (S.D. Fla. May 10, 2021) ........................................................ 6

*Arevalo v. Coloplast Corp.*,
  2021 WL 2148770 (N.D. Fla. Apr. 5, 2021) ......................................................... 9

*Brooktree Corp. v. Advanced Micro Devices, Inc.*,
  977 F.2d 1555 (Fed. Cir. 1992) .......................................................... 14

*Browning v. Bay Radiology Assocs., P.L.*,
  2023 WL 7131838 (N.D. Fla. Aug. 1, 2023)....................................................... 8

*Buland v. NCL (Bahamas) Ltd*,
  992 F.3d 1143 (11th Cir. 2021) ................................................... 11, 16

*Circuitronix, LLC v. Kinwong Elec. (Hong Kong) Co.*,
  993 F.3d 1299 (11th Cir. 2021) .......................................................... 6

*Columbus Drywall & Insulation, Inc. v. Masco Corp.*,
  2012 WL 12541114 (N.D. Ga. July 16, 2012) ..................................................... 7

*Cook ex rel. Est. of Tessier v. Sheriff of Monroe Cnty., Fla.*,
  402 F.3d 1092 (11th Cir. 2005) .......................................................... 15

*Davis v. Little Giant Ladder Sys., LLC*,
  2022 WL 657062 (M.D. Fla. Mar. 4, 2022) ........................................................ 15

*Empire Shoe Co. v. NICO Indus., Inc.*,
   197 Ga. App. 411 (1990) ...................................................................... 13

*Envtl. Biotech, Inc. v. Sibbitt Enters., Inc.*,
   2008 WL 5070251 (M.D. Fla. Nov. 24, 2008) ................................... 20

*EZ Green Assocs., LLC v. Georgia-Pac. Corp.*,
   331 Ga. App. 183 (2015) ...................................................................... 12

*Falcone Glob. Sols., LLC v. Maurice Ward Networks, Ltd.*,
   2022 WL 3699169 (N.D. Ga. Feb. 23, 2022) ....................................... 8

*Ferguson v. Bombardier Services Corp.*,
   244 F. App'x 944 (11th Cir. 2007) ............................................... 16, 19

*First Premium Servs., Inc. v. Best W. Int'l, Inc.*,
   2004 WL 7203535 (S.D. Fla. Jan. 8, 2004) ........................................ 20

*Flowers Bakeries Brands, Inc. v. Interstate Bakeries Corp.*,
   2011 WL 1004657 (N.D. Ga. Mar. 17, 2011) ..................................... 23

*Goodrich v. Fisher-Price, Inc.*,
   2018 WL 11343390 (N.D. Ga. Nov. 14, 2018) ...................... 11, 15, 20

*Graff v. Baja Marine Corp.*,
   310 F. App'x 298 (11th Cir. 2009) ...................................................... 15

*Hendrix ex rel. G.P. v. Evenflo Co.*,
   609 F.3d 1183 (11th Cir. 2010) ........................................................... 10

*Hughes v. Kia Motors Corp.*,
   766 F.3d 1317 (11th Cir. 2014) ........................................................... 10

*In re Trasylol Prods. Liab. Litig.*,
   2010 WL 11470353 (S.D. Fla. Dec. 3, 2010) ............................... 19, 21

*Interra Int'l, LLC v. Al Khafaji*,
   2020 WL 10727982 (N.D. Ga. Sept. 18, 2020) .................................. 23

*Johnson Cnty. Sch. Dist. v. Greater Savannah Lawn Care,*
278 Ga. App. 110 (2006) ...................................................................... 13

*Kastner-Gandy v. Henn,*
2021 WL 9763367 (N.D. Ga. Mar. 8, 2021) ................................ 11, 12

*Keg Techs., Inc. v. Laimer,*
436 F. Supp. 2d 1364 (N.D. Ga. 2006) .............................................. 25

*KW Plastics v. U.S. Can Co.,*
131 F. Supp. 2d 1289 (M.D. Ala. 2001) ............................................. 22

*Lincoln Rock, LLC v. City of Tampa,*
2016 WL 6138653 (M.D. Fla. Oct. 21, 2016) .................................. 6, 9

*Mee Indus. v. Dow Chem. Co.,*
608 F.3d 1202 (11th Cir. 2010) ............................................................ 6

*Mitchell v. Ford Motor Co.,*
318 F. App'x 821 (11th Cir. 2009) ................................................... 6, 8

*Monroe v. United States,*
2014 WL 1315242 (M.D. Ga. Mar. 31, 2014) .................................... 14

*MSC Software Corp. v. Altair Eng'g, Inc.,*
2015 WL 13273227 (E.D. Mich. Nov. 9, 2015) ................................. 22

*Pierson v. Orlando Health,*
2010 WL 3447496 (M.D. Fla. Aug. 30, 2010) ............................ 20, 24

*Preju Smart Team Glob. LLC v. HumbleTech LLC,*
2022 WL 847301 (S.D.N.Y. Feb. 18, 2022)...................................... 12

*Republic of Ecuador v. Hinchee,*
741 F.3d 1185 (11th Cir. 2013) ............................................................ 3

*Rodriguez v. Walmart Stores E., L.P.,*
2021 WL 4750087 (M.D. Fla. Oct. 12, 2021) ..................................... 9

iv

*San Francisco Residence Club, Inc. v. Park Tower, LLC*,
    2011 WL 13233200 (N.D. Ala. Mar. 31, 2011) .................................................. 10

*Springwell Dispensers, Inc. v. Hall China Co.*,
    204 Ga. App. 245 (1992) ..................................................................................... 13

*Trimax Med. Mgmt., Inc. v. Hibernation Therapeutics USA, LLC*,
    2018 WL 2014080 (M.D. Ga. Apr. 30, 2018) ..................................................... 13

*United States for Use & Benefit of TSI Tri-State Painting, LLC v.*
    *Fed. Ins. Co.*,
    2022 WL 135311 (S.D. Ga. Jan. 13, 2022) ......................................................... 15

*United States v. Tree-Removal Rights with respect to*
    *Land in Gordon Cnty., Ga.*,
    283 F. Supp. 3d 1333 (N.D. Ga. 2017) ............................................. 14, 19, 20, 25

*US Iron Fla, LLC v. GMA Garnett (USA) Corp.*,
    2023 WL 3685819 (N.D. Fla. Apr. 24, 2023) ....................................................... 7

*Vital Pharms., Inc. v. Monster Energy Co.*,
    2022 WL 3083273 (11th Cir. Aug. 3, 2022) ...................................................... 5, 6

*Williamson Oil Co. v. Philip Morris USA*,
    346 F.3d 1287 (11th Cir. 2003) ..................................................................... 10, 14

*Wind Logistics Prof'l, LLC v. Universal Truckload, Inc.*,
    2019 WL 4600055 (N.D. Ga. Sept. 23, 2019) .................................................... 12

*Wind Logistics Prof'l, LLC v. Universal Truckload, Inc.*,
    2020 WL 3411037 (N.D. Ga. June 22, 2020) ..................................................... 22

*Woodbridge Structured Funding, LLC v. Pina*,
    2017 WL 11717908 (S.D. Fla. May 19, 2017) .................................................... 11

**Statutes**

18 U.S.C. § 1836 .................................................................................................. 22

O.C.G.A. § 10-1-763 ................................................................................................ 21

**Rules**

Fed. R. Civ. P. 26.................................................................................................... 3

Fed. R. Civ. P. 37.................................................................................................... 5

Fed. R. Evid. 702 .................................................................................................. 15

## PRELIMINARY STATEMENT

Defendants seek to strike and exclude the improper and inflated expert opinion of Plaintiff RoadSync Inc.'s damages expert, Paul Dopp, under Federal Rule of Civil Procedure 37 and Federal Rule of Evidence 702.

As a preliminary matter, Dopp includes in his opinion a "head start" unjust enrichment damages calculation that should be stricken because it was not disclosed until the last day of the extended fact discovery period. That belated disclosure—more than two years into this lawsuit—necessarily post-dated all depositions of RoadSync witnesses and deprived Defendants of the ability to test the assumptions upon which it rests. Nothing could justify such gamesmanship because RoadSync's damages theory was, and always has been, within RoadSync's purview.

Separately, Dopp's damages methodology is unreliable and should be excluded under Rule 702. The law does not allow lost profits recovery for a business like RoadSync that lacks any track record of profitability. Dopp's unjust enrichment calculation relies upon assumptions and projections that the evidence contradicts. And Dopp fails to apportion damages based on Defendants' alleged wrongdoing and instead unjustifiably assumes that the entirety of Relay's value as a company is attributable to the purportedly misappropriated trade secrets.

The Court should exclude Dopp's opinions.

# BACKGROUND

## A.    RoadSync's Anticompetitive Lawsuit And Claim To Damages

RoadSync filed this lawsuit against Defendants Relay Payments, Inc., Ryan Droege, and Spencer Barkoff in August 2021—three years after RoadSync terminated Droege and Barkoff. RoadSync alleges claims for misappropriation of trade secrets under the Defend Trade Secrets Act ("DTSA") and Georgia Trade Secrets Act ("GTSA"), breaches of various confidentiality agreements, violation of the Georgia Computer Systems Protection Act ("GCSPA"), and breach of Barkoff and Droege's fiduciary duties. Dkt. 1 ("Compl.") ¶¶ 66–127.

In its Complaint, RoadSync alleged that it had suffered "substantial damages to be proven at trial," in the form of its lost profits, its "expenditures relating to forensic data examination and restoration," and Defendants' unjust enrichment. Compl. ¶¶ 78, 79, 87, 88, 122 & p. 42. Its October 2022 initial disclosures under Rule 26(a) disclosed only the following categories of unjust enrichment damages:

(1) personal benefits obtained by defendants Droege and Barkoff, including through their involvement with Relay Payments, which was made possible by these Defendants' misconduct;

(2) Relay Payments' profits from misusing RoadSync's trade secrets and confidential information, including funds Relay Payments raised from investors on the back of the misappropriated information; and

(3) Defendants' development costs saved by using RoadSync's trade secrets and confidential information as a shortcut to market.

Ex. A, Pl.'s Initial Disclosures at 27.[1]  RoadSync did not disclose its intent to seek "head start" damages until nearly a year after serving those initial disclosures, on September 28, 2023—the close of the extended fact discovery period.  *See* Ex. B (disclosing, for the first time, "head start damages (i.e., time savings and ability to go to market faster)").  Even that disclosure made no reference to a "profits acceleration" approach.  *Id.*  Defendants were not notified of RoadSync's intent to use this methodology until they received the Dopp Report on January 3, 2024.[2]

## B.    The Dopp Report

During expert discovery, RoadSync served the report of expert Paul Dopp who, along with his team of "forensic accountants and damage experts," purported to evaluate the extent of the financial harm attributable to Defendants' alleged

---

[1]   Exhibits referenced herein are attached to the Declaration of Elisabeth B. Miller in Support of Motion to Strike and Exclude the Testimony of Paul Dopp, which is being filed contemporaneously with this Motion.

[2]   This was part of a larger pattern of RoadSync sandbagging and withholding key damages evidence.  As set forth in Defendants' earlier Motion to Exclude the Untimely Supplemental Expert Report of Paul Dopp, Dopp already has purported to change his opinions and prepare a new "supplemental" report following his deposition and following Relay's damages expert serving his rebuttal report.  *See* Dkt. 241.  And, despite its duty under Rule 26(a)(2)(B) to disclose all "facts or data considered by [an expert] witness in forming [their opinions]," RoadSync never produced in discovery—and even now refuses to disclose complete copies of—three emails that are expressly listed among Dopp's "Documents Considered and Relied Upon."  Ex. C, Dopp Report at App'x B nn.104–106.  Rule 26's disclosure obligation applies to anything "'*considered*' by the expert in forming the opinions to be expressed, not only those *relied* upon by the expert."  *Republic of Ecuador v. Hinchee*, 741 F.3d 1185, 1195 (11th Cir. 2013) (quotation marks omitted).

wrongdoing.  Ex. C, Dopp Report ("Dopp Rep.") at ¶ 1.

In his Report, Dopp opines that the damages attributable to the alleged wrongdoing in this case amount ███████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████ "head start" unjust enrichment damages using what he calls a "profits acceleration" approach, premised on the "assumption that . . . Relay was able to accelerate its generation of sales and profits that it otherwise would have generated in a later time period if it had not improperly obtained [RoadSync's] confidential information," and the additional "assum[ption]," based on "representations made by RoadSync management," that Relay benefitted from a three-year "head start."  *Id.* at ¶¶ 5, 118–19, 124 & n.149.

Dopp's calculations rest on the assumption that liability, including a causal link between the alleged wrongdoing and the damages RoadSync suffered, will be proven.  *Id.* at ¶¶ 22–23.  They also rely in substantial part upon projected, rather than actual Relay earnings data—data Relay had produced but that RoadSync's

counsel failed to give to its expert—which Dopp assumes are a reliable proxy for the company's post-October 2021 actual performance. *See id.* at ¶¶ 67, 72.

## ARGUMENT

## I.  ROADSYNC'S FAILURE TO MAKE NECESSARY DISCLOSURES REQUIRES EXCLUSION UNDER RULE 37

The Court should strike Dopp's opinion as to supposed "head start" damages—the entire basis for his unjust enrichment calculations—because RoadSync did not disclose this theory of damages until the last day of fact discovery, and *never* disclosed the methodology it would rely upon to compute those damages.

A party is required "to disclose a computation of each category of damages claimed by the disclosing party" as a part of its initial disclosures and, later, "to supplement its Rule 26(a) disclosures or its other discovery responses if it learns that in some material respect the disclosure or response is incomplete or incorrect." *Vital Pharms., Inc. v. Monster Energy Co.*, 2022 WL 3083273, at *3 (11th Cir. Aug. 3, 2022) (quotation marks omitted). Under Rule 37(c)(1), "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e)," that party is generally "not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial." Fed. R. Civ. P. 37(c)(1); *see Vital Pharms.*, 2022 WL 3083273, at *3. Exclusion of undisclosed or untimely disclosed materials is "automatic" under Rule 37 unless the non-disclosing party establishes "substantial justification" for the failure, or that the failure is "harmless." Fed. R. Civ. P. 37

advisory committee's note (1993); *see Mitchell v. Ford Motor Co.*, 318 F. App'x 821, 824 (11th Cir. 2009).  In this way, Rule 37 permits enforcement of the purpose of the disclosure requirements under Rule 26, which is to avoid the risk that a party will "sandbag" the other with "new information" at the last minute.  *Lincoln Rock, LLC v. City of Tampa*, 2016 WL 6138653, at \*11 (M.D. Fla. Oct. 21, 2016).

Among the types of evidence subject to exclusion is a "category of damages that was not properly disclosed." *Vital Pharms.*, 2022 WL 3083273, at \*3.  Under Rule 26, plaintiffs are obligated to put defendants on notice of their damages theory and damages calculation components.  *ARCPE Bahamas LLC v. Neuman*, 2021 WL 4973473, at \*2 n.3 (S.D. Fla. May 10, 2021).  Thus, exclusion of damages evidence is justified where a party fails to timely disclose its intention to seek a particular type of damages or its method for doing so.  *Circuitronix, LLC v. Kinwong Elec. (Hong Kong) Co.*, 993 F.3d 1299, 1308 (11th Cir. 2021) (lost-profits evidence excluded where proponent failed to timely disclose "how it would calculate its profit margin, an issue of importance in the calculation of lost-profit damages," which "hampered [other side's] damages expert from preparing his analysis"); *Mee Indus. v. Dow Chem. Co.*, 608 F.3d 1202, 1221 (11th Cir. 2010) (similar).

In this case, RoadSync is guilty of both.  Through Dopp, it now seeks "head start" unjust enrichment damages, calculated using a "profits acceleration" approach.  Dopp Rep. ¶ 5.  This theory does not measure "costs saved" through

misappropriation—the damages theory RoadSync initially disclosed under Rule 26(a)—but instead measures the "commercial advantage" gained by purportedly acquiring customers and generating "sales and profits" more quickly than would have happened absent misappropriation. *Id.* at ¶¶ 121, 124.

None of that was disclosed prior to the last day of fact discovery. Rather, RoadSync neglected to disclose an intent to seek "head start" damages in its Complaint, its initial disclosures under Rule 26(a), or anywhere else until September 28, 2023—the last day of the extended fact discovery period. *See* Ex. B, RoadSync's Supp. Responses and Objs. to Defs.' Interrogatory No. 9 at 7. It did not disclose that "head start" damages would be computed under a so-called "profits acceleration" approach until it served the Dopp Report itself. Absent a showing that the failure to disclose was either "substantially justified" or "harmless," both failures—to disclose both an entire theory of damages, and the animating methodology—independently require exclusion under Rule 37. *See, e.g.*, *US Iron Fla, LLC v. GMA Garnett (USA) Corp.*, 2023 WL 3685819, at *4 (N.D. Fla. Apr. 24, 2023) (benefit-of-the-bargain damages precluded when not properly disclosed); *Columbus Drywall & Insulation, Inc. v. Masco Corp.*, 2012 WL 12541114, at *4 (N.D. Ga. July 16, 2012) (striking "request for base-price increase damages" not properly disclosed).

Because RoadSync deprived Defendants of the opportunity to take discovery regarding the basis for this theory, RoadSync cannot carry its burden to show that

its action in withholding its key damages theory and methodology were "substantially justified" or "harmless." *See Mitchell*, 318 F. App'x at 824. For example, when conducting his "profits acceleration" calculations, Dopp "assum[es]" a three-year "head start" based solely on "representations made by RoadSync management," which Dopp claims are "consistent with" various facts concerning the amount of time it took ***RoadSync*** to take its product to market. Dopp Rep. ¶ 118 n.149. In other words, Dopp's calculations rely entirely upon information and knowledge in RoadSync's possession, and in the minds of RoadSync's leadership, that Defendants had no chance to probe during discovery because RoadSync did not disclose its intention to seek head start damages until September 28, 2023, the last day of fact discovery, following extension of the initial July 13, 2023 deadline for fact discovery. *See* dkts. 58, 60, 118, 179. That, alone, justifies exclusion. *Falcone Glob. Sols., LLC v. Maurice Ward Networks, Ltd.*, 2022 WL 3699169, at *11 (N.D. Ga. Feb. 23, 2022) (requiring party to disclose information supporting calculation during discovery so the adversary could conduct its own discovery); *Browning v. Bay Radiology Assocs., P.L.*, 2023 WL 7131838, at *3 (N.D. Fla. Aug. 1, 2023) ("[A]fter [defendant] spent the last year litigating based on other types of damages," belatedly allowing a new category of damages "would prejudice [defendant].").

Nor can RoadSync reasonably claim that the omissions were substantially justified. As Dopp himself acknowledges, both the "head start" category of damages

and the "profits acceleration" approach are referenced in academic literature published before this lawsuit was filed in 2021. Dopp Rep. ¶¶ 124–126 & nn.169, 171, 172 (citing study from 2018). Similarly, representations and information concerning how long it took RoadSync to launch in 2018—the only things Dopp cites when purporting to justify his assumption of a three-year "head start" period, *see id.* at ¶ 118 n.149—were available at the start of this litigation. Yet RoadSync failed to disclose any of this for years. And by the time it finally did so, Defendants' only chance to test and question the bases for Dopp's assumptions already had passed. Such disclosure is untimely and prejudicial. *See Lincoln Rock*, 2016 WL 6138653, at *11 (additional forms of monetary recovery disclosed by plaintiff "two weeks before the close of discovery, despite having the information available to it since before the time its Initial Damages Disclosure was served, was untimely").

All of this warrants exclusion of the improperly disclosed evidence. And such exclusion is the only way to prevent further prejudice to Defendants. An order to reopen discovery at this late stage would "necessarily increase ligation costs" and lead to delay. *E.g.*, *Arevalo v. Coloplast Corp.*, 2021 WL 2148770, at *5 (N.D. Fla. Apr. 5, 2021) (striking improperly disclosed evidence on these grounds), *aff'd sub nom. Arevalo v. Mentor Worldwide LLC*, 2022 WL 16753646 (11th Cir. Nov. 8, 2022); *Rodriguez v. Walmart Stores E., L.P.*, 2021 WL 4750087, at *7 (M.D. Fla. Oct. 12, 2021) (similar), *aff'd*, 2022 WL 16757097 (11th Cir. Nov. 8, 2022); *San*

*Francisco Residence Club, Inc. v. Park Tower, LLC*, 2011 WL 13233200, at *3 (N.D. Ala. Mar. 31, 2011) (similar).

For all of these reasons, the Court should strike Dopp's opinion on RoadSync's head start damages theory pursuant to Rule 37.

## II.  DOPP'S TESTIMONY IS INDEPENDENTLY SUBJECT TO EXCLUSION UNDER RULE 702

Separately, the Court should exclude Dopp's opinions under Rule 702 of the Federal Rules of Evidence because he calculates lost profits while ignoring RoadSync's status as a new business without a track record of profitability, calculates unjust enrichment based on disproven factual assumptions, and fails to apportion any of the damages he computes to the alleged wrongdoing in this case.

As "gatekeepers" for proffered expert evidence, courts must exclude such evidence "unless is it reliable and relevant." *Hughes v. Kia Motors Corp.*, 766 F.3d 1317, 1328 (11th Cir. 2014).  One key aspect of relevance "is whether expert testimony proffered in the case . . . will aid the jury in resolving" a live factual dispute. *Williamson Oil Co. v. Philip Morris USA*, 346 F.3d 1287, 1323 (11th Cir. 2003) (quotation marks omitted).  Under Rule 702, a court must ensure that "the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*." *Hendrix ex rel. G.P. v. Evenflo Co.*, 609 F.3d 1183, 1194 (11th Cir. 2010) (quotation marks omitted).  The proponent of the evidence must establish that its expert's opinion is "supported by

good grounds for each step in the analysis," *Buland v. NCL (Bahamas) Ltd*, 992 F.3d 1143, 1151 (11th Cir. 2021), reached using "a valid methodology based on reliable data," without relying upon assumptions that are "belied by the evidence," *Goodrich v. Fisher-Price, Inc.*, 2018 WL 11343390, at *2 (N.D. Ga. Nov. 14, 2018).

RoadSync has failed to carry its burden in several respects.

**A.      Dopp's Lost Profits Calculation Is Unreliable And Unhelpful Because It Fails To Account For RoadSync's Status As A New Business**

To start, Dopp's lost profits calculation should be excluded as unreliable because it ignores that RoadSync lacks a proven track record of profitability and therefore cannot obtain lost profits as a matter of law.

Under Georgia law, lost profits "are generally not recoverable as they are too speculative, remote, and uncertain." *Kastner-Gandy v. Henn*, 2021 WL 9763367, at *6 (N.D. Ga. Mar. 8, 2021); *accord Woodbridge Structured Funding, LLC v. Pina*, 2017 WL 11717908, at *11 (S.D. Fla. May 19, 2017) (similarly, "speculative" damages arising from trade secret misappropriation not available under federal law). "The exception is an established business with clearly defined business experience as to profit and loss that may allow a reasonably accurate computation of lost profits." *Kastner-Gandy*, 2021 WL 9763367, at *6 (quotation marks omitted).  In other words, lost profits are only available to plaintiffs with "a proven track record of profitability." *EZ Green Assocs., LLC v. Georgia-Pac. Corp.*, 331 Ga. App. 183,

188 (2015) (quotation marks omitted).  Courts have attributed this rule to the "many hazards and chances that can get in the way of a business making a profit."  *E.g.*, *Wind Logistics Prof'l, LLC v. Universal Truckload, Inc.*, 2019 WL 4600055, at *7 (N.D. Ga. Sept. 23, 2019) (quotation marks omitted) (Brown, J.).  Those obstacles are especially pronounced for new businesses, and for that reason, lost profits "are generally precluded for new businesses," and for new ventures within existing businesses.  *325 Goodrich Ave., LLC v. Sw. Water Co.*, 891 F. Supp. 2d 1364, 1374 (M.D. Ga. 2012); *accord Preju Smart Team Glob. LLC v. HumbleTech LLC*, 2022 WL 847301, at *8–10 (S.D.N.Y. Feb. 18, 2022) (precluding recovery under the DTSA of lost profits from "what would have been a new client" where established company made "no showing that it reasonably expected to obtain that business"), *report and recommendation adopted*, 2022 WL 846927 (S.D.N.Y. Mar. 22, 2022).

In his Report, Dopp altogether ignores these principles. ██████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

Under such circumstances, RoadSync "cannot demonstrate an operational track record . . . much less profitability, that would support the assertion of lost profits." *Kastner-Gandy*, 2021 WL 9763367, at *6 (plaintiff without track record of

profitability was barred from recovering lost profits); *Trimax Med. Mgmt., Inc. v. Hibernation Therapeutics USA, LLC*, 2018 WL 2014080, at *2 (M.D. Ga. Apr. 30, 2018) (similar).  It thus cannot recover lost profits as a matter of law.

As a matter of law, courts in Georgia do not award lost profits to such plaintiffs.  *E.g.*, *Johnson Cnty. Sch. Dist. v. Greater Savannah Lawn Care*, 278 Ga. App. 110, 113 (2006) (barring a "newly-established company [that] had been operating at a loss," and lacked a "proven track record of profitability" from recovering lost profits); *Springwell Dispensers, Inc. v. Hall China Co.*, 204 Ga. App. 245, 245 (1992) (same, where new business was "operating at a loss"); *Empire Shoe Co. v. NICO Indus., Inc.*, 197 Ga. App. 411, 414 (1990) (same, where company "had no corporate profits in prior years").

These failings render Dopp's opinions unreliable.  Absent an established track record of profitability, the entire endeavor of calculating lost profits is far "too speculative, remote, and uncertain" to be reliable.  *325 Goodrich Ave.*, 891 F. Supp. 2d at 1374 (quotation marks omitted).  To that end, Dopp fails to address not just that RoadSync individually was a new business, but also that the market it was attempting to capture—alternative payment methods in the commercial lumping space—was, as it has itself emphasized, new and untested.  *See, e.g.*, Compl. ¶¶ 20–

22 (characterizing RoadSync's Checkout platform as the "first automated solution directed to logistics payment transactions," aimed at "disrupt[ing]" an "archaic" status quo).  Courts have long underscored the "unknowns" that make it difficult to project, for damages purposes, industry-wide dynamics—*e.g.*, "the uncertainties of future pricing, future competition, and future markets"—especially in "fast-moving field[s]" like RoadSync's.  *E.g.*, *Brooktree Corp. v. Advanced Micro Devices, Inc.*, 977 F.2d 1555, 1581 (Fed. Cir. 1992).[3]  Dopp's failure to even attempt to account for these dynamics renders his lost profits calculation unreliable.

In this same vein, Dopp's lost profits calculations cannot be relevant or helpful to a jury tasked with calculating whatever damages it is actually permitted to award as a matter of law.  *Monroe v. United States*, 2014 WL 1315242, at *3 (M.D. Ga. Mar. 31, 2014); *see Williamson Oil*, 346 F.3d at 1323; *United States v. Tree-Removal Rights with respect to Land in Gordon Cnty., Ga.*, 283 F. Supp. 3d 1333, 1347 (N.D. Ga. 2017) (excluding damages expert whose assumptions were contrary to applicable law and regulations).

---

[3]  To the extent Dopp engages with the broader industry at all, it is through the use of cherrypicked industry-wide averages using "comparative" companies.  *See* Dopp Rep. ¶ 99 & n.132.  But "[a]n estimate grounded on prevailing industry standards is insufficient to prove [a party's] own anticipated lost profits." *325 Goodrich Ave.* 891 F. Supp. 2d at 1375.

Thus, because they are both unreliable and irrelevant to any fact legitimately at-issue in this case, Dopp's lost profits opinions should be excluded.

**B.    Dopp's Unjust Enrichment Calculations Are Unreliable Because They Rest On Faulty Assumptions And Data**

In addition to being stricken under Rule 37, *see supra* Part I, Dopp's unjust enrichment calculations should also be excluded as unreliable, because, by his own admission, he relied upon an assumption directly contradicted by the record.

As an expression of Rule 702's edict that expert testimony be "based on sufficient facts or data," courts have long held that to be admissible, expert testimony must "rest[] on a reliable foundation."  *Graff v. Baja Marine Corp.*, 310 F. App'x 298, 304 (11th Cir. 2009).  That foundation includes a "sufficient factual basis" to support the expert's opinions, *Cook ex rel. Est. of Tessier v. Sheriff of Monroe Cnty., Fla.*, 402 F.3d 1092, 1111 (11th Cir. 2005), consisting of information and data that is both "reliable" and supported by the evidentiary record, *Goodrich*, 2018 WL 11343390, at *2.  This applies not only to the expert's ultimate opinions, but also to the assumptions supporting those opinions.  In other words, while experts are "permitted to offer opinions that rely on assumptions, those assumptions must have some basis in the record" in order to qualify as sufficiently reliable.  *United States for Use & Benefit of TSI Tri-State Painting, LLC v. Fed. Ins. Co.*, 2022 WL 135311, at *4 (S.D. Ga. Jan. 13, 2022); *see Davis v. Little Giant Ladder Sys., LLC*, 2022 WL 657062, at *4 (M.D. Fla. Mar. 4, 2022).  Conversely, an "unsupported assumption"

renders expert testimony "unreliable." *Buland*, 992 F.3d at 1151. Certainly, where an expert relies on an assumption that is not just lacking evidentiary support, but directly "belied by the evidence," the expert's "testimony [is] properly excluded." *Ferguson v. Bombardier Services Corp.*, 244 F. App'x 944, 949 (11th Cir. 2007).

These principles require exclusion here. In his Report, Dopp explains that his unjust enrichment calculations relied upon Relay's actual earnings data only through October 31, 2021, and that, for all subsequent time periods, his calculations relied upon Relay's projected earnings data. Dopp Rep. ¶¶ 67, 72. Those ambitious projections imagined that Relay's revenues would grow from around ████████

████████████████████████████████████████████

████████████████████ *Id.* at 51 (Table 7-10). By calculating unjust enrichment damages using those projections, therefore, Dopp's damages opinions relied on *the assumption that Relay's actual performance in 2022 and 2023 in fact lived up to its projected ambitions for those years.*

Dopp offered no real justification for that assumption. To the contrary, even Dopp himself admitted that he was "wow[ed]" by just how "aggressive" the company's projections were. Dopp Tr. at 199:8, 205:1-3. He also admitted that he made no effort to evaluate whether that assumption was even remotely "realistic." *Id.* at 204:23–205:3. Instead, he forged ahead under the blind assumption that the amount Relay was *actually* unjustly enriched through its alleged wrongdoing could

16

be reliably computed using those "aggressive" *projections*.  To the extent he offered any rationale for that assumption, it was simply that he believed actual post-October 2021 data had not been produced in discovery, leaving him with no option but to trust the projections without question.  Dopp Rep. ¶ 72.

But that was not true.  Defendants *did* produce the key financial materials, including actual data for year-end 2021 and 2022, in discovery.  And they unambiguously demonstrate that Relay in fact fell far short of its ambitious projections.  In reality, as these disclosed actual data reflect, ████████████

████████████████████████████████████████████████████

████████████████████████  Ex. F, RELAY0264007.  And to be sure, these financial documents are far from the only evidence in the record indicating just how far behind its projections the company ultimately ran in 2022 and 2023.[4]  With the exception of the data for the year 2023,[5] all of this information was disclosed to RoadSync before RoadSync served Dopp's initial report on January

---

[4]  *See also, e.g.,* ████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████  *But see* Dopp Tr. at 245:19–247:1 (Dopp testifying that he did not "recall" reviewing any testimony concerning Relay's projections).

[5]  Relay's 2023 financial data did not exist before discovery closed, but was produced once it became available.  *See* dkt. 241-1 at 7, 10–11, 13, 20–21.

3, 2024 (and before RoadSync deposed all three Defendants).[6]

RoadSync, however, apparently chose not to share it with Dopp, even though Dopp testified repeatedly that he would have preferred to use actual data—and "***[t]hat's why I asked for it***." Dopp Tr. at 32:17–34:20; *id.* at 29:2–31:6 (chronicling Dopp's efforts to request Relay's actual earnings data); *see also* dkt. 241-1 at 14–17. Had he been given access to Relay's actual post-October 2021 data, Dopp, naturally, would have "relied upon the actual information" rather than the projections. *Id.* at 34:12-20. RoadSync never gave him that opportunity.

In his deposition, Dopp confirmed that RoadSync withholding information that directly belied his assumptions dramatically skewed his calculations:

> Q.    Had you received this document, would this document have impacted your calculation of unjust enrichment damages? . . .
>
> A.    It would have, ***I would have used different numbers, yes***. . . .



Dopp Tr. at 197:5-20, 201:21–202:8 (emphasis added); *see also id.* at 195:13-21 ("It

---

6    *See* Ex. H, Dopp Dep. Ex. 6 (email production of documents RELAY0206554 through RELAY0264008); Dopp Tr. at 200:25–201:3 (Dopp has "no reason to dispute" that these documents were produced to RoadSync in September 2023).

definitely would have been different numbers.").  Dopp has admitted that this belies

both his 2022 *and* 2023 calculations: not only (1) did Relay's actual 2022 earnings

data ███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████[7]

    All of this renders Dopp's unjust enrichment opinions unreliable.  Courts

routinely exclude expert testimony where, as here, an expert's opinion rests on

assumptions that are either inconsistent with, or directly contradicted by, the record.

*See, e.g.*, *Ferguson*, 244 F. App'x at 949 (affirming exclusion of testimony based on

assumption that was "belied by the evidence"); *In re Trasylol Prods. Liab. Litig.*,

2010 WL 11470353, at *6 (S.D. Fla. Dec. 3, 2010) (excluding expert whose

"assumptions are inconsistent with the evidence"); *see also Tree-Removal Rights*,

283 F. Supp. 3d at 1347 (excluding damages experts whose assumptions were

---

[7] ███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████

contradicted by his own report).

That is particularly true for damages experts who, like Dopp, have staked their opinions upon unreliable or inaccurate information. *See, e.g.*, *First Premium Servs., Inc. v. Best W. Int'l, Inc.*, 2004 WL 7203535, at *3 (S.D. Fla. Jan. 8, 2004) (excluding damages opinions founded upon "flawed" assumptions, including that lost profits could be reliably calculated based solely on a company's own documents, where the expert "did nothing to determine their accuracy"); *Envtl. Biotech, Inc. v. Sibbitt Enters., Inc.*, 2008 WL 5070251, at *7 (M.D. Fla. Nov. 24, 2008) (refusing, on reliability grounds, to "award any amount of damages based on an expert's opinion that . . . relies on admittedly inaccurate data"); *see also Goodrich*, 2018 WL 11343390, at *5 (excluding expert where plaintiff had failed to demonstrate that his opinions were "based on reliable data"). Courts look unkindly upon expert testimony that, as in this case, "selectively cho[oses]" data, "ignore[s] available data," or offers "no data . . . to support" its assumptions—particularly where the expert fails to explain "why he did not take into account" additional information. *Pierson v. Orlando Health*, 2010 WL 3447496, at *3 (M.D. Fla. Aug. 30, 2010) (excluding damages expert on these grounds); *see also Tree-Removal Rights*, 283 F. Supp. 3d at 1347 (excluding damages expert who "d[id] not appear to have adjusted his valuation to take into account" key distinctions at the heart of his analysis).

Here, Dopp's explanation for his reliance on flawed data and assumptions is

that RoadSync failed to provide him with the actual Relay data it had and that he admits he would have preferred to use.  Since he was "inadequately informed about the factual grounding of the subject [he] is called to address,"  his opinion "bears none of the hallmarks of reliability necessary for the opinion to be admissible under *Daubert*."  *Trasylol*, 2010 WL 11470353, at *6 (quotation marks omitted).  Allowing Dopp to testify based on assumptions that he admits are belied by the evidence would not only expose the jury to unreliable expert testimony—an abdication of the Court's gatekeeping function under *Daubert*—but would also reward RoadSync and its counsel for its (at a minimum) negligence or (at worst) gamesmanship.

Dopp's unreliable unjust enrichment calculations should be excluded.

### C. Dopp's Lost Profits And Unjust Enrichment Opinions Are Unreliable Because Dopp Double Counts and Fails To Attribute Damages To Allegedly Misappropriated Trade Secrets

Finally, Dopp's lost profits and unjust enrichment calculations are unreliable, and should be excluded because they neglect to attribute damages to the trade secrets purportedly misappropriated and double-count between the two approaches.

First, Dopp assumes that the total damages in this case should equal the sum of the unjust enrichment and lost profits he calculates, *see* Dopp Rep. ¶ 5, ignoring that both the GTSA and DTSA, among other authority, expressly limit recovery to "unjust enrichment caused by misappropriation *that is not taken into account in computing actual loss*."  O.C.G.A. § 10-1-763(a) (emphasis added); *accord* 18

21

U.S.C. § 1836(b)(3)(B)(i)(II). Accordingly, however else it rules, the Court should make clear that RoadSync is not entitled to the double recovery Dopp proposes.

In addition, while Dopp recites his view that, "when the misappropriated Trade Secret(s) is the key or lynchpin to the overall product/service, apportionment is not required," Dopp Rep. ¶ 7, that is not the law. Courts routinely exclude expert testimony for failure to apportion damages between misappropriated trade secrets and other legitimate activity/assets. *See, e.g.*, *KW Plastics v. U.S. Can Co.*, 131 F. Supp. 2d 1289, 1295 (M.D. Ala. 2001) (excluding testimony where expert "did not attempt to determine the value of the specific trade secrets" and instead assumed "that each and every penny that KW gained constitute[d] unjust enrichment"); *MSC Software Corp. v. Altair Eng'g, Inc.*, 2015 WL 13273227, at *13 (E.D. Mich. Nov. 9, 2015) (similar, where expert "simply concluded that apportionment was not 'required'"); *Alcatel USA, Inc. v. Cisco Sys., Inc.*, 239 F. Supp. 2d 660, 670-71 (E.D. Tex. 2002) (granting summary judgment where plaintiff "fail[ed] to present evidence of apportionment" to distinguish "misappropriated" trade secrets from company's other technology); *see also Wind Logistics Prof'l, LLC v. Universal Truckload, Inc.*, 2020 WL 3411037, at *4 (N.D. Ga. June 22, 2020) (Brown, J.) ("[T]o allow an expert to present testimony that ignores the difference between actionable conduct and nonactionable conduct would be to ignore the requirement that expert testimony must assist the trier of fact in deciding some relevant issue.").

Here, Dopp's lost profits and unjust enrichment calculations fail to apportion in any way—between permissible and impermissible conduct, between the harm attributable to the wrongful conduct and Relay's value as a whole, between particular counts in the Complaint, or between the various alleged trade secrets. That failure permeates his entire Report. For example, in his lost profits analysis, Dopp's use of the "Before and After" method relies on the assumption that RoadSync's "post event performance would have been the same or similar to the pre-loss event performance," Dopp Rep. ¶ 97 & n.125, which fails to consider the role that Relay's *lawful* actions may have played in RoadSync's downturn and that RoadSync experienced setbacks that had *nothing to do with Relay at all*. *See, e.g.*, Ex. J, Gregg 8/3/2023 Dep. Tr. at 257:20–258:4 (staff reductions due to "soften[ing]" venture capital market). That is impermissible. *See Flowers Bakeries Brands, Inc. v. Interstate Bakeries Corp.*, 2011 WL 1004657, at *3 (N.D. Ga. Mar. 17, 2011) (expert "cannot assume that *all* lost profits were attributable" to defendant). And Dopp himself has criticized others for that exact failure. *See Interra Int'l, LLC v. Al Khafaji*, 2020 WL 10727982, at *5 (N.D. Ga. Sept. 18, 2020) (quoting Dopp's criticism that other expert "should have considered 'the impact of other factors on the alleged lost revenues/profits of [plaintiff], such as increased competition[]'").

Similarly, for unjust enrichment purposes, Dopp admits that he "ha[s] not performed an apportionment of profits from specific infringing sales ascribed to the

23

intellectual property in question." Dopp Rep. ¶ 6 & n.2 . He instead asserts that, because Relay allegedly stole RoadSync's trade secrets and "created a competing business that generated . . financial performance," which "Relay could not have done" without the alleged misappropriation, "*all* Relay's revenue in our Head Start damage analysis" must be included. *Id.* at ¶ 129 (emphasis added). Setting aside its legal infirmities, that statement ignores important *facts*, including that the majority of Relay's business operates in an entirely separate market from RoadSync.[8]  *See Pierson*, 2010 WL 3447496, at *5 (excluding expert who "ignored available data" and "fail[ed] to account for the differences in . . . relevant . . . markets"). Dopp relies on no evidence for the idea that the allegedly misappropriated trade secrets are actually central to Relay's products or services—just his "understanding," based exclusively on his "review of the Complaint and discussions with Counsel" that RoadSync's trade secrets allowed Relay to launch its business, and that was the "key to *allow Relay to enter into other product lines*," regardless of whether those other product lines have any relationship, even allegedly, with the trade secrets.[9]  Dopp Rep. ¶ 8 & n.3 (emphasis added). This concession that Relay derives its value from product lines fully removed from the alleged trade secrets fatally undermines the

---

[8]   Relay competes with RoadSync only for "a small subsection" of its business; unlike RoadSync.  Ex. G, Droege 9/25/2023 Dep. Tr. at 68:21–69:5, 70:21–71:8.

[9]   Even Dopp has ultimately admitted that a proper assessment of damages would ideally involve attributing revenues to infringing products.  Dopp Tr. at 279:13–23.

"key or lynchpin" assumption at the heart of Dopp's unjust enrichment computation, requiring exclusion of that evidence. *See Tree-Removal Rights*, 283 F. Supp. 3d at 1347 (excluding expert whose assumption was contradicted by his own report).

It also raises another fundamental problem with Dopp's unjust enrichment analysis: his "understanding" that if one company's trade secrets are misappropriated as a part of another company's launch, the trade secret owner is forevermore entitled to 100% of the misappropriator's revenue (from *any* product). That assumption is simply wrong. Courts roundly view with extreme skepticism attempts to use a company's **entire** business as a basis to calculate damages. *See, e.g.*, *Keg Techs., Inc. v. Laimer*, 436 F. Supp. 2d 1364, 1373 (N.D. Ga. 2006) (rejecting argument that plaintiff was "entitled to recover the entirety of Defendants' profits since the inception of the competing enterprise" because resulting "extraordinary windfall" would represent a "gross disconnect between harm and recovery"); *Alcatel*, 239 F. Supp. 2d at 670-71 (granting summary judgment where plaintiff and its expert failed to "apportion the value of its alleged trade secrets from the approximately $550 million price for which [misappropriator] was purchased"). This Court should do the same and exclude Dopp's unjust enrichment and lost profits calculations, which rely on incorrect, assumptions about the law and facts.

## CONCLUSION

The Court should thus strike and exclude Dopp's testimony in its entirety.

DATED: March 22, 2024

*s/ Ryan Landes*

Ryan Landes (admitted *pro hac vice*)
**QUINN EMANUEL URQUHART
& SULLIVAN, LLP**
865 S. Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
ryanlandes@quinnemanuel.com

Andrew J. Rossman (admitted *pro hac vice*)
Ellyde R. Thompson (admitted *pro hac vice*)
Elisabeth B. Miller (admitted *pro hac vice*)
**QUINN EMANUEL URQUHART
& SULLIVAN, LLP**
51 Madison Avenue, 22nd Floor
New York, New York 10010
Tel: 212-849-7000
Fax: 212-849-7100
andrewrossman@quinnemanuel.com
ellydethompson@quinnemanuel.com
elisabethmiller@quinnemanuel.com

*/s/ Julia Blackburn Stone*

Michael A. Caplan
Georgia Bar No. 601039
Julia Blackburn Stone
Georgia Bar No. 200070
Jessica A. Caleb
Georgia Bar No. 141507
Jarred A. Klorfein
Georgia Bar No. 562965
**CAPLAN COBB LLP**
75 Fourteenth Street, NE, Suite 2750
Atlanta, Georgia 30309
Tel: (404) 596-5600
Fax: (404) 596-5604
mcaplan@caplancobb.com

26

jstone@caplancobb.com
jcaleb@caplancobb.com
jklorfein@caplancobb.com

*Counsel for Defendants Relay Payments, Inc., Spencer Barkoff, and James Ryan Droege*

## <u>LOCAL RULE 7.1(D) CERTIFICATION</u>

The undersigned counsel certifies that the foregoing document has been prepared with one of the font and point selections approved by the Court in LR 5.1(C).

Dated:  March 22, 2024

*/s/ Julia Blackburn Stone*

Julia Blackburn Stone
Georgia Bar No. 200070

*Counsel for Defendants Relay Payments, Inc., Spencer Barkoff, and James Ryan Droege*

## **CERTIFICATE OF SERVICE**

I hereby certify that, on this day, I caused a true and correct copy of the foregoing document to be filed with the clerk's office using this Court's CM/ECF system, which will automatically send notice of such filing to all counsel of record.

Dated:  March 22, 2024             */s/ Julia Blackburn Stone*
_____
Julia Blackburn Stone
Georgia Bar No. 200070

*Counsel for Defendants Relay Payments, Inc.,*
*Spencer Barkoff, and James Ryan Droege*